# EXHIBIT A

**Proposed Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| | (Jointly Administered) |
| Debtors. | |

**ORDER APPROVING (I) BIDDING PROCEDURES,**
**THE SALE TIMELINE, AND THE FORM AND MANNER**
**OF NOTICE THEREOF; (II) THE DEBTORS' ENTRY INTO AND**
**PERFORMANCE UNDER THE STALKING HORSE APA; (III) ASSUMPTION**
**AND ASSIGNMENT PROCEDURES; AND (IV) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Hartford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for, *inter alia*, the entry of an Order: (i) approving certain bidding procedures for the Sale (collectively, the "Bidding Procedures," a copy of which is attached as **Exhibit 1** to hereto), and the form and manner of notice thereof; (ii) authorizing the Debtors' entry into the Asset Purchase Agreement attached hereto as **Exhibit 4** (the "Stalking Horse APA") with a potential Stalking Horse Purchaser; (iii) approving the Bid Protections; (iv) scheduling an Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases (each, a "Assumed Contract" and collectively, the "Assumed Contracts"); and (vi) granting related relief; and upon consideration of the Motion; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as set forth herein; and it appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having reviewed the Motion; and the Court having reviewed the Declarations and the testimony set forth therein; and the Bidding Procedures Hearing having been held; and this Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and the evidence adduced at the Bidding Procedures Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

---

[2]   Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures (as defined below), or to the extent not defined therein, the Motion or the Stalking Horse APA.

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.  <u>Sale Notice</u>.  The Sale Notice (as defined below), substantially in the form attached

hereto as **Exhibit 2** and delivered in accordance with Motion, is appropriate and reasonably

calculated to provide all interested parties with timely and proper notice of (i) this Order, (ii) the

Bidding Procedures, (iii) the Auction, (iv) the Sale, (v) the Sale Hearing, (vi) any and all objection

deadlines related thereto, (vii) that the Sale shall be free and clear of Liens,[4] Claims (as defined in

section 101(5) of the Bankruptcy Code), with all such Liens, Claims and interests attaching with

the same validity and priority to the proceeds of the Sale, and, in each case, no other or further

notice is required of the foregoing.  Such notice is sufficient to cause all interested parties,

including all holders of Liens, Claims, and interests, and other encumbrances, whether holders of

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[4]  The term "<u>Lien</u>" as used in this Order shall include all liens, interests, rights encumbrances, rights of offset, restrictions, leases, option rights or claims, obligations, liabilities, indentures, loan agreements, guaranties, demands, contractual commitments or interests in respect of the Debtors or any property of the Debtors, equity interests, licenses, instruments, conditional sale rights or other title retention agreements, rights of first refusal, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, regulatory violations, judgments, decrees of any court or foreign or domestic governmental or quasi-governmental entity, debts arising in any way in connection with any agreements, acts or failures to act and reclamation rights whether choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected including the following: (1) any "Lien" as such term is used in the Stalking Horse APA; (2) employment or labor agreements; (3) all mortgages, deeds of trust, hypothecations, pledges, security interests or charges of any kind or nature; (4) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including any pension plan of the Debtors; (5) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including claims that might otherwise arise under or pursuant to (a) ERISA, Pub. L. No. 93-406, 88 Stat. 829 (1974); (b) the FLSA, 29 U.S.C. §§ 201 et seq., as amended; (c) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended; (d) the Federal Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., as amended; (e) the NLRA, 29 U.S.C. §§ 151 et seq., as amended; (f) the Worker Adjustment and Retraining Act of 1988, 28 U.S.C. §§ 2101 et seq.; (g) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., as amended; (h) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., as amended; (i) state discrimination laws; (j) state unemployment compensation laws or any other similar state laws; or (k) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (6) any bulk sales or similar laws; (7) any tax statutes or ordinances, including the Internal Revenue Code of 1986, as amended; (8) any theories of successor liability, including any theories on product liability grounds; and (9) any environmental or other liens, Claims, encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing Date.

such Liens, Claims, and interests are known or unknown, to be on notice that the proposed Sale shall be free and clear of such Liens, Claims, or interests with respect to the Debtors, their assets, and their estates.

B.     Bidding Procedures.   The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are: (i) fair, reasonable, and appropriate; and (ii) reasonably designed to maximize recovery with respect to the Sale.  The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate substantial interest in, and better value for, the Debtors' Assets.

C.     Stalking Horse APA.   The Stalking Horse APA is hereby approved and may be modified by the Debtors subject to consultation with the Consultation Parties.  The Stalking Horse APA provides the Debtors with the opportunity to sell such Assets in a manner designed to preserve and maximize their value and provides a floor for a further marketing and auction process.  Without the Stalking Horse APA, the Debtors are at a significant risk of realizing a lower price for the Assets.  If one is identified, the Stalking Horse Purchaser shall act as a "stalking horse purchaser" pursuant to the Stalking Horse APA and shall be subject to higher or otherwise better offers in accordance with the Stalking Horse APA and the Bidding Procedures.  Pursuit of a potential Stalking Horse Purchaser as a "stalking horse purchaser" and the Stalking Horse APA as a "stalking horse purchase agreement" is in the best interests of the Debtors and the Debtors' estates and their creditors, and it reflects a sound exercise of the Debtors' business judgment.

D.     Bid Protections.  The Bid Protections are approved and shall be paid to the Stalking Horse Purchaser (if any) pursuant to the terms of the Bidding Procedures and the Stalking Horse APA.  The Bid Protections are reasonable and appropriate under the circumstances and on the

terms set forth in the Bidding Procedures, including in light of the time, cost, and resources to be expended by the Stalking Horse Purchaser and the commitments that will be made by the Stalking Horse Purchaser.  Payment of the Bid Protections as set forth herein, if a Stalking Horse Bidder is declared, shall survive termination of the Stalking Horse APA and shall constitute an administrative expense of the Debtors' estates.

E.    Auction.  The Auction, if held, is necessary to determine whether any entity other than the potential Stalking Horse Purchaser is willing to enter into a definitive agreement on terms and conditions more favorable to the Debtors and their estates than the Stalking Horse APA.

F.    Assumption and Assignment Procedures.  The Assumption Notice, attached hereto as **Exhibit 3**, is reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts, any Cure Costs and the assumption and assignment procedures.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APA (subject to higher or otherwise better offers in accordance with this Order), (b) the Bidding Procedures, (c) the date and time of the Sale Hearing, (d) the Bid Protections, and (e) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the entry of this Order, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"), and the notice of the Debtors' potential assumption and assignment of the Assumed Contracts, substantially in the form attached hereto as **Exhibit 3** (the "Assumption Notice"), (subclauses (a) - (e) above, collectively, the "Sale Process"), are hereby GRANTED to the extent set forth herein.

2.      Any objections to the Motion as it pertains to the Sale Process or the relief granted

by this Order that have not been withdrawn, waived or settled, and all reservations of rights

included therein, are hereby overruled and denied on the merits with prejudice.

3.      The following Sale Timeline is hereby approved:

| Event | Proposed Deadline |
|---|---|
| Entry of the Bidding Procedures Order | On or before Monday, November 18, 2024 |
| Deadline to serve Bid Packages | Within three (3) business days after entry of the Bidding Procedures Order |
| Deadline to file initial list of potential Assumed Contracts and Cure Notice | Within ten (10) business days following entry of the Bidding Procedures Order |
| Deadline for Cure Objections and deadline for counterparties to request adequate assurance documentation from the Debtors | Within fourteen (14) days following service of the Cure Notice |
| Deadline to file Notice of Proposed Sale Order | Friday, December 6, 2024 at 4:00 p.m. (prevailing Central Time) |
| Qualifying Bid Deadline | Friday, December 13, 2024 at 4:00 p.m. (prevailing Central Time) |
| Auction Date (if necessary) | Wednesday, December 18, 2024 |
| Deadline to file Notice of Winning Bidder and for Debtors to provide adequate assurance documentation relating to Winning Bidder and the Back-Up Bidder to counterparties who have requested the same | One (1) day following the closing of the Auction, or as soon as reasonably practicable |
| Deadline to return deposits to non-Qualified Bidders | Within (5) business days following the Qualified Bid Deadline |
| Deadline to Object to the Sale | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Deadline to object to adequate assurance of future performance by the Stalking Horse Purchaser or other Winning Bidder | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Deadline to file schedule of Assumed Contracts | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Hearing to Consider the Sale Order | On or before Friday, December 20, 2024 (subject to the Court's availability) |
| Entry of the Sale Order | No later than Thursday, January 2, 2025 |
| Sale(s) Closing Date | Five (5) days after entry of the Sale Order |
| Deadline to return deposits to non-Winning Bidders or Back-Up Bidders | Within five (5) business days following the closing of the Sale(s) |

4.      Notwithstanding any of the foregoing, the Debtors, in consultation with the

Consultation Parties, may, upon consent of the DIP Lender, extend the deadlines set forth in this

Order or the Bidding Procedures, with notice of such extension being filed with the Court.  Any

such extension shall not itself modify any milestones related to debtor in possession financing

provided to the Debtors and approved by the Court.

5.      Any objection to the Sale, or the provision of adequate assurance of future performance by the potential Stalking Horse Purchaser or other Winning Bidder must be filed with the Court and served so as to be **actually received** by the Sale Notice Parties by the deadline set forth above.

6.      The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction, if applicable, pursuant to the terms of the Bidding Procedures and this Order.

7.      The Debtors shall have the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to a Potential Bidder.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders, *provided* that such Potential Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with the Bidding Procedures or the Sale, *provided* that the information was provided in accordance with this Order.

8.      For all purposes under the Bidding Procedures: (a) the potential Stalking Horse Purchaser shall be considered a Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid; (b) the Stalking Horse Purchaser will be deemed to be, a Qualifying

Bidder for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein or the Bidding Procedures and without any other or further action by the potential Stalking Horse Purchaser; and (c) in determining whether any Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

9.    The Debtors are authorized to enter into and perform all of their respective pre-closing obligations under the Stalking Horse APA, if applicable; *provided* that for the avoidance of doubt, approval and consummation of the transactions contemplated by the Stalking Horse APA shall be subject to the terms and conditions herein and the entry of an order approving the Sale of the Assets and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse APA.

10.    The Bid Protections payable to the potential Stalking Horse Purchaser are approved on the terms set forth in the Bidding Procedures, and the Debtors are authorized to incur and pay the Bid Protections without further action or order by the Court.  Payment of the Bid Protections as set forth herein, if a Stalking Horse Bidder is declared, shall survive termination of the Stalking Horse APA and shall constitute an administrative expense of the Debtors' estates.

11.    The Bidding Procedures shall apply to the Interested Bidders, Potential Bidders, the Qualifying Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

12.    The Debtors' decision to assume and assign the Assumed Contracts to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not identified as the Winning Bidder, then to the Winning Bidder, is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Assumed Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further

administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases.

13.    The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Purchaser or other Winning Bidder pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein.

14.    These Assumption Procedures shall govern the assumption and assignment of an Assumed Contract, subject to the payment of any payments necessary to cure any defaults arising under any Assumed Contract (the "Cure Payments"):

a.    Assumption Notice.  No later than ten business days following the entry of this Order (the "Assumption and Assignment Service Deadline"), the Debtors shall serve the Assumption Notice via first-class mail on all counterparties to all potential Assumed Contracts and provide a copy of the same to the Stalking Horse Purchaser, which copy may be provided via email.  The Assumption Notice shall inform each recipient of the timing and procedures relating to the potential assumption and assignment of the Assumed Contracts to the Stalking Horse Purchaser or other Winning Bidder upon Court approval of the Sale, and, to the extent applicable, (i) the Debtors' good-faith estimates of the Cure Costs (if any) required in connection with the executory contract or unexpired lease, as applicable, (ii) whether the potential Assumed Contract is then anticipated to be assumed and assigned to the Stalking Horse Purchaser in connection with the Stalking Horse APA; (iii) the deadline to object to the proposed cure amounts; and (iv) the Sale Transaction Objection Deadline; *provided*, *however*, that service of an Assumption Notice does not constitute an admission that any contract is an executory contract or that the stated Cure Cost related to any contract or unexpired lease constitutes a claim against the Debtors or a right against the Stalking Horse Purchase (all rights with respect thereto being expressly reserved). Further, the inclusion of a contract or unexpired lease, as applicable, on the Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will or will not ultimately be assumed and assigned.

b.    Cure Payments and Adequate Assurance of Future Performance.  The payment of the applicable Cure Costs by the Debtors or the Stalking Horse Purchaser or other Winning Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

c.       Additions.  The Debtors may also designate additional executory contracts or unexpired leases as agreements to be assumed by the Debtors and assigned to the Stalking Horse Purchaser or other Winning Bidder (the "Additional Assumed Contracts") until consummation of the Sale.  Following the addition of an Additional Assumed Contract, the Debtors shall as soon as reasonably practicable thereafter serve an Assumption Notice on each of the counterparties to such Additional Assumed Contracts and their counsel of record, if any, indicating (i) that the Debtors intend to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the Stalking Horse Purchaser or other Winning Bidder, and (ii) the corresponding Cure Cost.

d.       Eliminations.  The Debtors may remove any executory contract or unexpired lease, as applicable, to be assumed by the Debtors and assigned to the Stalking Horse Purchaser or other Winning Bidder (the "Eliminated Agreements") until consummation of the Sale.  Following the removal of an Eliminated Agreement, the Debtors shall as soon as reasonably practicable thereafter serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, if any, indicating that the Debtors no longer intend to assign the counterparty's contract or unexpired lease, as applicable, to the Stalking Horse Purchaser or other Winning Bidder in connection with the Sale.

e.       Supplemental Contract Assumption Notice.  Although the Debtors intend to make a good-faith effort to identify all Assumed Contracts that may be assumed and assigned in connection with the Sale transaction, the Debtors may discover certain executory contracts inadvertently omitted from the Assumed Contracts list or the Stalking Horse Purchaser or other Winning Bidder may identify other executory contracts or unexpired leases that it desires to assume and assign in connection with the Sale transaction.  Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse APA or an Alternative APA, as applicable, or as otherwise agreed by the Debtors and the Stalking Horse Purchaser or other Winning Bidder, at any time after the closing of the Sale transaction and before the deadline for designation of additional Assumed Contracts or removal of potentially Assumed Contracts set forth in the Stalking Horse APA or an Alternative APA, as applicable, to (i) supplement the list of Assumed Contracts with previously omitted executory contracts, (ii) remove Assumed Contracts from the list of executory contracts ultimately selected as Assumed Contracts that the Stalking Horse Purchaser or other Winning Bidder proposes be assumed and assigned to it in connection with the Sale transaction, or (iii) modify the previously stated Cure Cost associated with any Assumed Contract.  In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Assumed Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assumed Contracts as was included in the Assumption Notice, or in the event of a removal, the information required in a Removal Notice.

f.     Objections. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Cost, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by (a) (i) TGI Friday's Inc.; (ii) proposed counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Chris L. Dickerson (chris.dickerson@ropesgray.com) and Rahmon J. Brown (rahmon.brown@ropesgray.com)), and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Zachary C. Zahn (zzahn@foley.com)); and (iii) counsel to the DIP Lender, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201 (Attn: Toby L. Gerber (toby.gerber@nortonrosefulbright.com),           Kristian       W.      Gluck (kristian.gluck@nortonrosefulbright.com),           and      Jason      I.      Blanchard (jason.blanchard@nortonrosefulbright.com); and (iv) counsel to any official committee appointed in the chapter 11 Cases, **on or before the 14th day after service (or as reflected by the postmarked date) of the relevant Assumption Notice or Supplemental Assumption Notice** (the "Cure Objection Deadline"), or such deadline set forth in the applicable Supplemental Assumption Notice. The deadline for objections to the proposed assumption and assignment of an Assumed Contract solely with respect to (i) the identity of the Stalking Horse Purchaser or other Winning Bidder or (ii) adequate assurance of future performance provided by the Stalking Horse Purchaser or other Winning Bidder shall be the Sale Objection Deadline (as defined below).

15.    The Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all counterparties and any other affected parties of the Debtors' intent to assume and assign to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, some or all of the Assumed Contracts, and (ii) afford the counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006; and (b) hereby approved.

16.    Any party failing to timely file an objection to the proposed Cure Cost, the proposed assumption and assignment of an Assumed Contract or Additional Assumed Contract listed on an Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented

to (a) such Cure Cost, (b) the assumption and assignment of such Assumed Contract or Additional Assumed Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Costs, the assumption and assignment of the Assumed Contract, or Additional Assumed Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder,  for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then the Winning Bidder, as applicable, with respect to such party's Assumed Contract or Additional Assumed Contract.

17.    The Debtors shall have no liability or obligation with respect to defaults relating to the Assumed Contracts arising, accruing, or relating to the period from and after the effective date of assignment.

18.    The Sale Notice, the Assumption Notice, any Supplemental Assumption Notice, the Bidding Procedures, the Auction, and the Sale Hearing, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder, of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notice and objection periods are hereby approved.

19.    The Sale Notice is approved.  Within three (3) business days of the entry of this

Order, the Debtors shall (i) serve the Sale Notice by electronic and first class U.S. mail on: (i) the

Office of the United States Trustee for the Northern District of Texas; (ii) counsel to any official

committee appointed in the Bankruptcy Case; (iii) all entities known to have expressed an interest

in a transaction with respect to the Assets during the past twelve (12) months; (iv) all counterparties

to any contracts or leases, whether executory or not; (v) all parties with Liens, Claims or

encumbrances on or against any of the Debtors' assets; (vi) all affected federal, state and local

governmental regulatory and taxing authorities, including the Internal Revenue Service and State

Attorney General in each State in which the Debtors conduct business; (vii) all known holders of

claims against and equity interests in the Debtors, (viii) all of the Debtors' insurers; (ix) counsel

to the DIP Lender; (x) Midland Loan Services, a Division of PNC Bank, National Association as

servicer and control party (the "Control Party"); (xi) all parties that have filed and not withdrawn

requests for notices pursuant to Bankruptcy Rule 2002; and (xii) all other parties that have filed a

notice of appearance and demand for service of papers in these chapter 11 cases as of the service

date; and (ii) provide on a confidential basis a copy of the Sale Notice, along with other marketing

materials deemed appropriate by the Debtors and their advisors to any parties who express, to the

Debtors or their advisors, an interest in acquiring some or all of the Assets (the parties in (i) and

(ii) collectively, the "Sale Notice Parties").  As part of the Sale Process, the Debtors (directly or

through their advisors) shall keep a log of the Sale Notice Parties that they provide materials to

pursuant to clause (ii) in the prior sentence.

20.    The Debtors shall post the Sale Notice, the Assumption Notice, any Supplemental

Assumption Notice, and this Order on the website of the Debtors' claims and noticing agent.

Within seven (7) business days of the entry of this Order, the Debtors shall cause the Sale Notice

to be published once in the national edition of *The Wall Street Journal* with any modifications necessary for ease of publication.  Publication of the Sale Notice as described in this Order, conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

21.     Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), including objections related to the adequate assurance of future performance by the Stalking Horse Purchaser or other Winning Bidder, as applicable, must: (1) be in writing; (2) comply with the Bankruptcy Rules and the Local Rules; (3) set forth the specific basis for the Sale Objection; (4) be filed with the Clerk of this Court, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242 **on or before 4:00 p.m. (CT) on Thursday, December 19, 2024** (the "Sale Objection Deadline"), and served upon (a) proposed counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn:  Chris L. Dickerson (chris.dickerson@ropesgray.com) and Rahmon J. Brown (rahmon.brown@ropesgray.com)), and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Zachary C. Zahn (zzahn@foley.com)); (b) counsel to the DIP Lender, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201 (Attn: Toby L. Gerber (toby.gerber@nortonrosefulbright.com), Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com), and Jason I. Blanchard (jason.blanchard@nortonrosefulbright.com); (c) counsel to any official committee appointed in the chapter 11 Cases; and (d) the United States Trustee for the  Northern District of Texas (collectively, the "Objection Notice Parties"); and (5) proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules.

If a Sale Objection is not filed and served on or before the Sale Objection Deadline in accordance with the foregoing requirements, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

22.    Failure to file a Sale Objection on or before the Sale Objection Deadline may forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Sale and consummation and performance of the Sale contemplated by the Stalking Horse APA or any Alternative APA with a Winning Bidder other than the Stalking Horse Purchaser.

23.    As part of its bid, each Potential Bidder must provide the Debtors, the other Bidding Procedures Notice Parties (as defined in the Bidding Procedures), and the Consultation Parties (each as defined in the Bidding Procedures) information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "Adequate Assurance Information"), including (a) the Potential Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to such Potential Bidder; and (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance.  In the event that a Potential Bidder (other than the Stalking Horse Purchaser) is a newly formed acquisition entity, the financial and other information supporting the Potential Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Potential Bidder's parent company or sponsor.

24.    Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose

the Adequate Assurance Information except as expressly provided in this Order and the Bidding

Procedures.  No party may use or disclose, except to representatives, attorneys, advisors and

financing sources (collectively, "Representatives"), any confidential Adequate Assurance

Information for any purpose other than: (a) evaluating whether adequate assurance of future

performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the

Bankruptcy Code has been provided; and (b) in support of any objection (the "Assignment

Objection") (subject to the limitations on disclosure set forth herein) by such party relating to

adequate assurance of future performance.  Any Assignment Objection that includes confidential,

non-public Adequate Assurance Information must be filed under seal unless disclosure of such

confidential, non-public information is authorized by the Debtors and the applicable assignee(s).

The party filing an Assignment Objection under seal shall follow the procedures for the same set

forth in Local Rule 9018-1(d).  The unredacted versions of such Assignment Objections shall be

served upon the Debtors, the other Bidding Procedures Notice Parties, the Consultation Parties,

and the U.S. Trustee; *provided further* that all rights of all parties in interest in these chapter 11

cases are reserved to oppose the filing under seal of any such information and to seek any other

relief from this Court with respect to such matter.  Any Representative receiving Adequate

Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in

this Order.

25.    If no timely Qualifying Bids are submitted on or before the Bid Deadline, the

Debtors shall (i) not hold an Auction and (ii) if a Stalking Horse Purchaser is designated, shall

request at the Sale Hearing that this Court approve the Stalking Horse APA with the Stalking Horse

Purchaser and the transactions contemplated thereunder.  If the Debtors timely receive one or more

Qualifying Bids other than the Stalking Horse APA, then the Debtors shall conduct the Auction

on **Wednesday, December 18, 2024 at [●] at [●] a.m. (CT)**, at [●].  Only the Debtors, the Auction

Bidders (including the Stalking Horse Purchaser), the Consultation Parties and any creditors of the

Debtors, together with the professional advisors to each of the foregoing parties, may attend the

Auction (collectively, the "Auction Participants"); *provided* that any such creditors provide

counsel for the Debtors written notice of their intent to attend the Auction no later than 5:00 p.m.

(CT) two days prior to the Auction.

26.     The Sale Hearing shall be held in this Court on or before **Friday, December 20,**

**2024 at [●] (CT)**, unless otherwise determined by this Court.  The Sale Hearing may be adjourned

by the Debtors, in consultation with the DIP Lender and the Stalking Horse Purchaser (if any) or,

in the event the Stalking Horse Purchaser is not the Winning Bidder, then in consultation with the

DIP Lender and the Winning Bidder, from time to time without further notice to creditors or other

parties in interest other than by announcement of the adjournment in open court on the date

scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these

chapter 11 cases.

27.     All persons and entities that participate in the Auction or bid for any Asset during

the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core

jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any

other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in

connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief

requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or

judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any

other relief requested in the Motion or granted in this Order, if it is determined that the Court would

lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

28.      The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

29.      Nothing in this Order, the Stalking Horse APA, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

30.      In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, the Stalking Horse APA, or an Alternative APA, on the other hand, this Order and the Bidding Procedures shall control and govern.  If there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern.  If there is a conflict between this Order or the Bidding Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bidding Procedures shall control and govern.

31.      Prior to mailing the Assumption Notice, any Supplemental Assumption Notice, and the Sale Notice, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

32.      This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order,

and may, in its sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

33.    The requirements set forth in Local Rules 6004-1 and 9006-1 are hereby satisfied or waived.

34.    The Debtors are authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

35.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**# # # END OF ORDER # # #**

# EXHIBIT 1

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| | (Jointly Administered) |
| Debtors. | |

## BIDDING PROCEDURES

On November 2, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2024, the United States Bankruptcy Court for the Northern District of Texas (the "Court") entered an order [Docket No. ●] (the "Bidding Procedures Order"), among other things, granting certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion"), including authorizing the Debtors to solicit bids and approving the procedures set forth herein (collectively, the "Bidding Procedures") to be employed by the Debtors in connection with the proposed sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets") through a chapter 11 process pursuant to sections 105, 363, and 365 of the Bankruptcy Code, free and clear of all Encumbrances[2] other than Assumed Liabilities and Permitted Encumbrances to a stalking horse purchaser (the "Stalking Horse Purchaser"), pursuant to an Asset Purchase Agreement (the "Stalking Horse APA") with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then an Alternative APA with the Winning Bidder. The Stalking Horse APA is attached to the Bidding Procedures Order as **Exhibit 4**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Hartford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

[2] Capitalized terms used but not yet defined herein shall have the meaning ascribed to such terms below. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order.

**ANY PARTY INTERESTED IN BIDDING ON ALL OR ANY COMBINATION OF THE ASSETS SHOULD CONTACT:**

**(A)    RICHARD    KLEIN    ((917)    520-3640;    RKLEIN@HILCOCF.COM)    OF HILCO, THE INVESTMENT BANKER FOR THE DEBTORS; AND**

**(B)    CHRIS    L.    DICKERSON    ((312)    845-1264; CHRIS.DICKERSON@ROPESGRAY.COM) AND RAHMON J. BROWN ((312) 845-1128; RAHMON.BROWN@ROPESGRAY.COM)) OF ROPES & GRAY LLP, COUNSEL FOR THE DEBTORS.**

### _Summary of Key Dates Established by Bidding Procedures_

| Event | Proposed Deadline |
|---|---|
| Entry of the Bidding Procedures Order | On or before Monday, November 18, 2024 |
| Deadline to serve Bid Packages | Within three (3) business days after entry of the Bidding Procedures Order |
| Deadline to file initial list of potential Assumed Contracts and Cure Notice | Within ten (10) business days following entry of the Bidding Procedures Order |
| Deadline for Cure Objections and deadline for counterparties to request adequate assurance documentation from the Debtors | Within fourteen (14) days following service of the Cure Notice |
| Deadline to file Notice of Proposed Sale Order | Friday, December 6, 2024 at 4:00 p.m. (prevailing Central Time) |
| Qualifying Bid Deadline | Friday, December 13, 2024 at 4:00 p.m. (prevailing Central Time) |
| Auction Date (if necessary) | Wednesday, December 18, 2024 |
| Deadline to file Notice of Winning Bidder and for Debtors to provide adequate assurance documentation relating to Winning Bidder and the Back-Up Bidder to counterparties who have requested the same | One (1) day following the closing of the Auction, or as soon as reasonably practicable |
| Deadline to return deposits to non-Qualified Bidders | Within (5) business days following the Qualified Bid Deadline |
| Deadline to Object to the Sale | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Deadline to object to adequate assurance of future performance by the Stalking Horse Purchaser or other Winning Bidder | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Deadline to file schedule of Assumed Contracts | Thursday, December 19, 2024 at 4:00 p.m. (prevailing Central time) |
| Hearing to Consider the Sale Order | On or before Friday, December 20, 2024 (subject to the Court's availability) |
| Entry of the Sale Order | No later than Thursday, January 2, 2025 |
| Sale(s) Closing Date | Five (5) days after entry of the Sale Order |
| Deadline to return deposits to non-Winning Bidders or Back-Up Bidders | Within five (5) business days following the closing of the Sale(s) |

The Debtors may adjourn any of the key dates or deadlines herein without further order of the Court; _provided_ that the Debtors shall promptly file a notice with the Court of any changes to the key dates or deadlines herein.  Any such adjournment shall not itself modify any milestones related to debtor in possession financing provided to the Debtors and approved by the Court.

1.    **Stalking Horse Purchaser and Bid Protections**

In the exercise of their business judgment and in their sole discretion, the Debtors may at any time prior to the Auction, without further order of the Bankruptcy Court, without any obligation to do so, and after consulting with the Consultation Parties, select one or more bidders to act as a stalking horse (each being a "Stalking Horse Purchaser" with the relevant bid being a "Stalking Horse Bid") for some or all of the Debtors' assets. The Debtors may, but are not required to, agree to provide (i) stalking horse expense reimbursement of up to $50,000 (the "Expense Reimbursement") and (ii) a break-up fee in an amount not to exceed 3% of the cash component of the Stalking Horse Bid (if any) (the "Break-Up Fee" and together with the Expense Reimbursement, the "Bid Protections"); *provided* that the Bid Protections shall only be paid pursuant to the terms of an order approving a Sale Transaction. The Bid Protections shall only be payable if (i) a Stalking Horse Bidder, being ready, willing, and able to close its Transaction is not the Winning Bidder at the Auction, (ii) the Bankruptcy Court authorizes the Debtors to enter into an Alternative APA, and (iii) if such Alternative APA is for a Sale, such Sale actually closes.

To the extent a determination is made to provide Bid Protections, the Debtors will file notice of the same with the Bankruptcy Court, and such Bid Protections may be paid without further action or order of the Bankruptcy Court.

Notwithstanding anything herein to the contrary, the Stalking Horse Purchaser will be deemed to be a Qualifying Bidder (as defined below), and the Stalking Horse Bid (including as it may be modified at the Auction (if any) in accordance with the terms therein and herein) will be deemed to be a Qualifying Bid (as defined below).

2.    **Assets to be Sold**

The Debtors shall offer for sale all of their assets, *provided* that the Debtors, in consultation with the Consultation Parties, may determine that the aggregate consideration offered by any bid, or combination of bids, for the Assets, satisfies the requirements set forth in these Bidding Procedures. Potential Bidders (as defined herein) may bid on all or any number or combination of the Assets.

3.    **Participation Requirements**

Any interested party that wishes to participate in the bidding process for the Assets other than in the case of the Stalking Horse Purchaser (each, an "Interested Bidder") must first become a potential bidder (a "Potential Bidder"). To become a Potential Bidder, an Interested Bidder must submit to the Debtors and their advisors the following documents (collectively, the "Preliminary Bid Documents"):

(a)    documentation identifying the Interested Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction, including the Auction, if any;

(b)    an executed confidentiality agreement ("Confidentiality Agreement") in form and substance satisfactory to the Debtors;

(c)      a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the Interested Bidder has a *bona fide* interest in consummating the Sale; and

(d)      sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors to determine that the Interested Bidder (x) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close the Sale, including, but not limited to, current audited financial statements of the Interested Bidder (or such other form of financial disclosure acceptable to the Debtors in their discretion), and (y) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Stalking Horse Purchaser or other Winning Bidder, as applicable, in connection with the Sale, pursuant to section 365 of the Bankruptcy Code, in connection with the Sale.

Each Interested Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Interested Bidder to consummate its contemplated transaction. The Debtors reserve the right to work with any Interested Bidder to cure any deficiencies in the Preliminary Bid Documents or, waive any of the foregoing requirements in the Debtors' reasonable business judgment. The Debtors reserve all rights to determine in their business judgment whether a party that has submitted Preliminary Bid Documents shall be deemed a Potential Bidder.

## 4.      Bankruptcy Court Jurisdiction

Any Interested Bidders, Potential Bidders, and Qualifying Bidders (as defined herein) shall: (a) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction, and the construction and enforcement of the contemplated transaction documents of such parties; (b) be deemed to have waived any right to bring any such action or proceeding in the Court; and (c) be deemed to have consented to (i) the Court entering a final order or judgment determining any such action or proceeding and (ii) such final order or judgment in any such action or proceeding, including all appeals, being conclusive and enforceable in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## 5.      Form of Agreement

Potential Bidders should reference the Stalking Horse APA in connection with their bids. As set forth below, Potential Bidders intending to submit bids must include with their bids:

(a)      a statement that such Potential Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse APA; and

(b)     a clean and duly executed asset purchase agreement (an "<u>Alternative APA</u>") and a marked copy of the Alternative APA and an alternative Sale order that reflects any variations from the Stalking Horse APA or the Sale Order, as applicable.

## 6.     Due Diligence

The Debtors will provide Potential Bidders with reasonable access to a data room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All due diligence requests shall be directed to: (a) the Debtors' proposed investment banker, Hilco Corporate Finance, LLC, Richard Klein ((917) 520-3640; rklain@hilcocf.com); or (b) the Debtors' proposed counsel, Ropes & Gray LLP, Chris L. Dickerson ((312) 845-1264; chris.dickerson@ropesgray.com) and Rahmon J. Brown ((312) 845-1128; rahmon.brown@ropesgray.com).

The due diligence period shall extend through and include the Bid Deadline.  The Debtors, in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is not appropriate for disclosure to a Potential Bidder (including its affiliates and any related persons) at any time and for any reason, including, without limitation, if (a) any due diligence information is determined to be business sensitive, proprietary, or otherwise not appropriate for disclosure to a Potential Bidder by the Debtors, including, but not limited to, Potential Bidders who are customers or competitors of the Debtors or affiliates thereof, and other industry participants, (b) the Potential Bidder does not become, or the Debtors determine that the Potential Bidder is not likely to become, a Qualifying Bidder (each as defined below), (c) the Potential Bidder violates the terms of its Confidentiality Agreement, (d) the Debtors become aware that the information set forth on the Potential Bidder's Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, (e) the Potential Bidder (including its affiliates and any related persons) uses information obtained from the Data Room or the diligence process in connection with, or related to, any litigation or other legal action related to any Debtor, any current or former directors and officers of the Debtors, the Debtors' non-Debtor affiliates, and the Debtors' primary creditors as identified by the Debtors, (f) such disclosure would jeopardize protections afforded any Debtor or primary creditor as identified by the Debtors under the attorney-client privilege or the attorney work product doctrine, or (g) the bidding process is terminated in accordance with its terms.  Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality, or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders; *provided* that such Potential Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors (a "<u>Confidentiality Agreement</u>").  Subject to the terms and conditions of each Confidentiality Agreement, the Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders in connection with the Bidding Procedures and the Sale.

7.    **Bid Requirements**

Other than in the case of the Stalking Horse Purchaser and the Stalking Horse APA, which shall be considered a Qualifying Bidder and a Qualifying Bid, respectively, for all purposes under the Bidding Procedures, without any regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser, to be deemed a "Qualifying Bid," a bid must be received from a Potential Bidder before the Bid Deadline and satisfy each of the following requirements (each, a "Bid Requirement"):

a.    be in writing;

b.    include a clean and duly executed asset purchase agreement (an "Alternative APA") and a marked copy of the Alternative APA and an alternative Sale order showing any variations from the Stalking Horse APA or the Sale Order, as applicable;

c.    fully disclose the identity of the Potential Bidder (and to the extent that the Potential Bidder is a newly formed acquisition entity or the like, the identity of the Potential Bidder's parent company or sponsor), and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtors or their advisors, any official committee appointed in these chapter 11 cases, or its advisors, the DIP Lender or its advisors, or any creditor or equity security interest holder of the Debtors and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Potential Bidder;

d.    set forth the purchase price to be paid by such Potential Bidder, which purchase price shall include an aggregate amount of cash sufficient to pay all DIP Obligations (as defined in the DIP Order) in cash in full at closing;

e.    identify separately any cash and non-cash components, which non-cash components shall be limited only to credit bids in accordance with section 363(k) of the Bankruptcy Code and assumed liabilities;

f.    state the liabilities proposed to be paid or assumed by such Potential Bidder;

g.    specify the Assets that are included in the bid and state that such Potential Bidder offers to (i) purchase the Assets, or a number or combination of the Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estate than, the terms set forth in the Stalking Horse APA;

h.    state that such Potential Bidder's offer is formal, binding and unconditional, and is irrevocable until two (2) business days after the closing of the Sale with respect to the applicable Assets;

i.    to the extent that a bid is not accompanied by evidence of a Potential Bidder's capacity to consummate the applicable Sale with cash on hand, the bid must include unconditional

committed financing from a reputable financing institution, documented to the satisfaction of the Debtors in consultation with the Consultation Parties, including appropriate contact information for such financing sources, that demonstrates that the Potential Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's purchase price and other obligations under its bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties;

j.      contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Potential Bidder's financial and other capabilities to close the transactions contemplated by the applicable Alternative APA, including, without limitation, such financial and other information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including the Potential Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to the Potential Bidder, in a form that allows the Debtors to serve such information on any counterparties to such contracts or leases in connection with the Sale within one (1) business day after the Debtors' receipt of such information. To the extent that the Potential Bidder (other than the Stalking Horse Purchaser) is a newly formed acquisition entity or the like, the financial and other information supporting the Potential Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Potential Bidder's parent company or sponsor;

k.      identify with particularity each and every executory contract and unexpired lease, the assumption and assignment of which is a condition to close the transactions contemplated by the Alternative APA;

l.      include closing conditions that are no less favorable to the Debtors than the closing conditions contained in the Stalking Horse APA (and specify such closing conditions in the applicable Alternative APA);

m.      include a statement that the bid does not request or entitle such Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement;

n.      not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval, or due diligence, other than Bankruptcy Court approval of the Sale;

o.      contain a written acknowledgement and representation that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation or inspection of any documents and other information in making its bid, and (iii) did not rely upon any written or oral

statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale;

p. set forth any regulatory and third-party approvals required for the Potential Bidder to close the transactions contemplated by the Alternative APA, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than five (5) days following execution and delivery of such Potential Bidder's Alternative APA, those actions the bidder will take to ensure receipt of such approval(s) as promptly as possible); *provided* that a Potential Bidder agrees that its legal counsel will coordinate in good faith with the Debtors' legal counsel to discuss and explain the Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Alternative APA; *provided*, *further* that the bid contains a covenant to cooperate with the Debtors to provide pertinent factual information regarding the bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements;

q. provide for a binding commitment of the Potential Bidder to serve as a backup bidder (the "Back-Up Bidder") if the Potential Bidder's bid is the next highest or otherwise best bid (the "Back-Up Bid") after the Winning Bid, with respect to the applicable Assets;

r. include written evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Alternative APA;

s. provide a good faith cash deposit (the "Deposit") in an amount equal to ten percent (10%) of the aggregate purchase price provided for in the Alternative APA (or such additional amount as may be determined by the Debtors in their reasonable discretion);

t. state or otherwise estimate the types of, and costs or charges for, transition services, if any, the Potential Bidder would require of or provide to the Debtors, including an estimate of the time any such transition services would be required of or provided to the Debtor; and

u. provide that in the event of the Potential Bidder's breach of, or failure to perform under, the Alternative APA, the Debtors and their estates shall be entitled to pursue all available legal and equitable remedies, including, without limitation, retention of the Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.

A bid from a Potential Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right, in their business judgment and in consultation with the Consultation

Parties, to waive any of the Bid Requirements or work with any Potential Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Potential Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, the Auction, or the Sale.

**8.    Bid Deadline**

A Potential Bidder, other than one designated as the Stalking Horse Purchaser, that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Bidding Procedures Notice Parties (as defined herein) and the Consultation Parties so as to be received on or before **Friday, December 13, 2024 at 4:00 p.m. (CT)** (the "Bid Deadline"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties and upon consent of the DIP Lender.  To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of their chapter 11 cases indicating the same.  **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any bids after the Bid Deadline or (b) participate in the Auction.**

**9.    Evaluation of Qualifying Bids**

The Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Potential Bidders to the Consultation Parties.

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Potential Bidder is a Qualifying Bid.  In determining whether any bids constitute Qualifying Bids, the Debtors may consider a combination of bids for various subsets of the Assets.

No later than **Monday, December 16, 2024**, the Debtors shall:  (i) notify all Potential Bidders whether their respective bids have been determined to be Qualifying Bids and those Potential Bidders that have submitted Qualifying Bids will be considered to be qualifying bidders (the "Qualifying Bidders") and (ii) determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest or best Qualifying Bid for purposes of constituting the opening bid of the Auction (which must be at least equal to the value of the Stalking Horse Bid, plus $100,000.00, for the applicable Assets the "Baseline Bid" and the Qualifying Bidder submitting the Baseline Bid, the "Baseline Bidder"), and shall promptly notify the Stalking Horse Purchaser and all Qualifying Bidders of the Baseline Bid for each subset of Assets, if applicable.  To the extent reasonably practicable, counsel for the Debtors shall provide summaries of the material terms of each Qualifying Bid to the Consultation Parties on a professionals' eyes-only basis subject to the terms of the applicable Confidentiality Agreement at least twenty-four (24) hours prior to the Auction (if any).

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures:  (i) the Stalking Horse Purchaser shall be considered a

Qualifying Bidder, and the Stalking Horse APA shall be considered a Qualifying Bid, for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser; and (ii) in determining whether the Potential Bidders constitute Qualifying Bidders, the Debtors may consider a combination of bids for the Assets.

**10.    No Qualifying Bids**

If no timely Qualifying Bids are submitted on or before the Bid Deadline, the Debtors shall (i) not hold an Auction and (ii) if a Stalking Horse Purchaser is designated, shall request at the Sale Hearing that this Court approve the Stalking Horse APA with the Stalking Horse Purchaser and the transactions contemplated thereunder

**11.    Auction**

If the Debtors timely receive one or more Qualifying Bids other than the Stalking Horse Bid, then the Debtors shall conduct an auction (the "Auction"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid or combination of Qualifying Bids is the highest or otherwise best bid for the Assets, which will be determined by considering, among other things, the following non-binding factors: (a) the number, type and nature of any changes to the Stalking Horse APA requested by each Qualifying Bidder; (b) the extent to which such modifications are likely to delay closing of the Sale and the cost to the Debtors and their estates of such modifications or delay; (c) the total consideration to be received by the Debtors and their estates (provided, for the avoidance of doubt, that a credit bid shall not be considered inferior to a comparable cash or other non-cash bid because it is a credit bid); (d) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (e) the net benefit to the Debtors' estates; and (f) any other factors the Debtors may reasonably deem relevant in their business judgment.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors. All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

The Auction shall be governed by the following procedures:

(a)    the Auction shall be held on **Wednesday, December 18, 2024 at [●] (CT)** or such other date as may be determined by the Debtors in consultation with the Consultation Parties (which information will be timely provided by the Debtors to the Auction Participants (as defined below)) at [●];

(b)    only the Stalking Horse Purchaser and the other Qualifying Bidders (together, the "Auction Bidders") shall be entitled to make any subsequent bids at the Auction;

(c)     the Auction Bidders shall appear at the Auction, or through a duly authorized representative;

(d)     only the Debtors, the Auction Bidders, the Consultation Parties and any creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction (collectively, the "Auction Participants"); *provided* that any such creditors provide counsel for the Debtors written notice of their intent to attend the Auction no later than 5:00 p.m. (CT) two days prior to the Auction;

(e)     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)     prior to the start of the Auction, each of the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction or the Sale;

(g)     the Auction shall be conducted in an open cry format (and not by way of sealed bids). Bidding shall commence at the amount of the Baseline Bid(s), and the Auction Bidders may submit successive bids in increments of at least $100,000.00, *provided* that: (i) each such successive bid must be a Qualifying Bid; and (ii) the Debtors shall retain the right to modify the bid increment requirements at the Auction;

(h)     the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)     all material terms of the bid that is deemed to be the highest or otherwise best bid for each subset of Assets, if applicable, for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding Debtors' announcement of the then-current highest or otherwise best bid(s);

(j)     except as specifically set forth herein, for the purpose of evaluating the value of the purchase price provided by each successive bid (including any successive bid by the Stalking Horse Purchaser), the Debtors, in consultation with the Consultation Parties, may give effect to any additional liabilities to be assumed by a Qualifying Bidder, and any additional costs which may be imposed on the Debtors;

(k)     each Auction Bidder shall (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents of the Auction Bidders, (ii) be deemed to have waived any right to bring any such action or proceeding relating to the Bidding Procedures, the Auction, or the Sale in the Court, and (iii) be deemed to have consented to (A) the Court entering a final order or judgment determining in any such action or proceeding and (B) a final order or judgment in any such action or

proceeding, including all appeals, being conclusive and enforceable in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(l)     the Auction Bidders shall have the right to make additional modifications to the Stalking Horse APA or any Alternative APA, as applicable, in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, *provided* that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse APA, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such Auction Bidder shall have submitted a subsequent Qualifying Bid at the Auction, unless such bid is selected as the Winning Bid or the Back-Up Bid, which shall remain binding as provided for herein;

(m)     the Debtors and the Consultation Parties shall have the right to request any additional financial information that will allow the Debtors and the Consultation Parties to make a reasonable determination as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Stalking Horse APA or any Alternative APA, as applicable, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(n)     upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets (or any subset thereof, if applicable) that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Winning Bid"). In making this decision, the Debtors shall consider, in consultation with the Consultation Parties, the amount of the purchase price, the assumption of liabilities, the likelihood of the bidder's ability to close the proposed transaction and the timing thereof, the number, type and nature of any changes to the Stalking Horse APA or the applicable Alternative APA(s), as applicable, requested by each bidder, and the net benefit to the Debtors' estates.  The bidder(s) submitting such Winning Bid at the Auction shall become the "Winning Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the Stalking Horse APA or any Alternative APA, as applicable.  The Debtors shall designate a Back-Up Bid (and the corresponding Back-Up Bidder) to purchase the Assets (or any subset thereof, if applicable) in the event that the Winning Bidder does not close the applicable Sale;

(o)     within one day after the conclusion of the Auction or as soon as reasonably practicable, the Debtors will file with the Court and serve on the Sale Notice Parties a notice setting forth the results of the Auction (the "Notice of Winning Bidder and Back-Up Bidder"), which will (a) identify the Winning Bidder and the Back-Up Bidder with respect to each subset of the Assets; (b) include a copy of the Winning

Bid(s) and the Back-Up Bid(s) or a summary of the material terms of such bids, including any proposed assumption and assignment of contracts and leases contemplated thereby; and (c) set forth the deadline to object to adequate assurance of future performance by the Stalking Horse Purchaser or other Winning Bidder, the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction;

(p)    within one (1) business day of the close of the Auction, in the event the Stalking Horse Purchaser is not the Winning Bidder, the Winning Bidder shall supplement the Winning Bidder's Deposit such that the Deposit shall be equal to an amount that is ten (10%) percent of the Winning Bid; and

(q)    prior to the Sale Hearing, the Winning Bidder(s) shall complete and execute all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which the Winning Bid was made.

**THE WINNING BID AND ANY BACK-UP BID AND THEIR RELATED PURCHASE AGREEMENTS SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE WINNING BIDDER(S) AND THE BACK-UP BIDDER(S), RESPECTIVELY, FROM THE TIME THE APPLICABLE BID IS SUBMITTED UNTIL TWO (2) BUSINESS DAYS AFTER THE SALE WITH RESPECT TO THE APPLICABLE ASSETS HAS CLOSED. EACH QUALIFYING BID THAT IS NOT THE WINNING BID OR THE BACK-UP BID SHALL BE DEEMED WITHDRAWN AND TERMINATED AT THE CONCLUSION OF THE SALE HEARING.**

## 12.    Sale Hearing

The Winning Bid(s) and any Back-Up Bid(s) (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA, which will be deemed to be the Winning Bid) will be subject to approval by the Court. The Sale Hearing to approve the Winning Bid(s) and any Back-Up Bid(s) (or if no Qualifying Bid other than that of the Stalking Horse Purchaser is received, then the Stalking Horse APA) shall take place on or before **Friday, December 20, 2024 at [●] (CT)**. The Sale Hearing may be adjourned by the Debtors, in consultation with the DIP Lender and the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then in consultation with the DIP Lender, and the Winning Bidder(s), from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of these chapter 11 cases.

At the Sale Hearing, the Debtors will seek entry of their forthcoming Sale Order that, among other things: (i) authorizes and approves the Sale to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then to the Winning Bidder(s), pursuant to the terms and conditions set forth in the Stalking Horse APA or Alternative APA submitted by the Winning Bidder, as applicable, free and clear of all liens, claims, interests, and encumbrances, except certain permitted encumbrances and assumed liabilities as determined by the Debtors and any Winning Bidder(s); (ii) finding that the Stalking Horse Purchaser or Winning

Bidder(s), as applicable, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code; (iii) authorizes the assumption and assignment of certain Contracts in connection with the Sale(s); and (iv) as appropriate, exempting the Sale(s) and conveyance(s) of the Assets from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.

**Any party who fails to file an objection to the Sale with the Court and serve it on the Bidding Procedures Notice Parties (as defined herein) on or before Thursday, December 19, 2024 at 4:00 p.m. (CT) will be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the consummation of the applicable Sale and any related relief requested by the Debtors.**

### 13.     Back-Up Bidder

Notwithstanding any of the foregoing, in the event that a Sale to the applicable Winning Bidder is terminated or fails to close by the outside date identified in the Winning Bid (or such date as may be extended by the Debtors in consultation with the Consultation Parties and upon consent of the DIP Lender), the applicable Back-Up Bid will be deemed to be the Winning Bid with respect to the Applicable Assets, the applicable Back-Up Bidder will be deemed to be the applicable Winning Bidder, and the Debtors shall be authorized to close the Sale of the applicable Assets to such Back-Up Bidder on the terms of its Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.     Return of Deposits

All Deposits shall be returned to the bidders not selected by the Debtors as the Winning Bidder or Back-Up Bidder no later than five (5) business days following the closing of the Sale(s). The deposit of the Winning Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price at the closing of the Sale.  If the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then, subject to the terms of the Stalking Horse APA or any Alternative APA, as applicable, the Debtors and their estates shall be entitled to retain the Deposit of the Winning Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages to the Debtors and their estates for such breach or failure to perform.  For the avoidance of doubt, the Debtors' retention of a Deposit shall not constitute a waiver or limitation of any of the Debtors' legal or equitable rights relating to a Winning Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

### 15.     No-Shop or No-Solicitation Provisions

The Bidding Procedures Order and Bidding Procedures do not limit the Debtors' ability or right to solicit higher or otherwise better bids for the Assets.  The Motion, the Bidding Procedures, and the Bidding Procedures Order call for a fair and open bidding and auction process.

**16.**    **Notice and Consultation Parties**

(a)    The term "Bidding Procedures Notice Parties" as used in these Bidding Procedures shall mean: (a) proposed counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn:  Chris L. Dickerson (chris.dickerson@ropesgray.com) and Rahmon J. Brown (rahmon.brown@ropesgray.com), and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Zachary C. Zahn (zzahn@foley.com)); (b) counsel to the DIP Lender, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201 (Attn: Toby    L.    Gerber    (toby.gerber@nortonrosefulbright.com),    Kristian    W.    Gluck (kristian.gluck@nortonrosefulbright.com),    and    Jason    I.    Blanchard (jason.blanchard@nortonrosefulbright.com); (c) counsel to any official committee appointed in the chapter 11 Cases; (d) the United States Trustee for the  Northern District of Texas

(b)    The term "Consultation Parties" as used in these Bidding Procedures shall mean any official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee") and the DIP Lender.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

In the event that any Consultation Party or any member of any Creditors' Committee or an affiliate of any of the foregoing submits a bid that is a Qualifying Bid, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived without further action; *provided* that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

**17.**    **Sale Is As Is/Where is**

Except as may be set forth in the Stalking Horse APA or any Alternate APA, the Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing in their then-present condition, **"AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED."**

**18.**    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors, in consultation with the Consultation Parties, may (a) upon consent of the DIP Lender, extend the deadlines set forth in the Bidding Procedures Order or the Bidding Procedures, and (b) adopt, implement, and waive such other, additional or existing procedures or requirements that, in their business judgment, will encourage an orderly Auction and bid process, including, but not limited to, the imposition of a requirement that all Qualifying Bidders submit sealed Qualifying Bids during the Auction, all without further notice except to the Auction Participants, as appropriate; *provided*, however, that the prior written

consent of the DIP Lender is required to modify the minimum amount of consideration required for an Alternative APA to be the Baseline Bid pursuant to Section 9.

The Debtors, in consultation with the Consultation Parties, may (a) determine which Qualifying Bid(s), if any, is the Winning Bid(s) with respect to any subset of Assets, and (b) reject at any time before entry of the Sale Order approving the Winning Bid(s), any bid (other than the Stalking Horse Bid) that, in the discretion of the Debtors, in consultation with the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors.  At or before the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, may impose such other terms and conditions upon Qualifying Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these cases.

**19.    Fiduciary Out**

Nothing in these Bidding Procedures will require the Debtors to take any action, or refrain from taking any action, with respect to these Bidding Procedures to the extent the Debtors determine that taking such action, or refraining from taking such action, as applicable, is required or appropriate to comply with applicable law or their fiduciary obligations.

# **EXHIBIT 2**

## **Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| | (Jointly Administered) |
| Debtors. | |

## NOTICE OF PROPOSED SALE OF ASSETS, ENTRY INTO STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors-in-possession (the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on November 2, 2024, in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "Sale") of all or substantially all of their assets (the "Assets"). The Sale of the Assets will be free and clear of liens, claims, and encumbrances, to the maximum extent permissible under applicable law, including as set forth in the Stalking Horse APA (other purchase agreement with another successful bidder), and the Sale Order. In connection with the Sale, the Debtors are seeking to enter into an Asset Purchase Agreement (the "Stalking Horse APA") with one or more stalking horse purchasers (the "Stalking Horse Purchaser"). The Stalking Horse APA remains subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined herein).

**PLEASE TAKE FURTHER NOTICE** that by order, dated [●], 2024 [Docket No. ●] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion"), including the "Bidding Procedures" that govern the Sale of the Assets to the highest or otherwise best bidder(s). **All interested bidders should carefully read the Bidding Procedures.** Copies of the Bidding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Hartford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse APA are available for download at https://cases.stretto.com/TGIFridays (the "Case Website") or from the Debtors' claims and noticing agent, Stretto, Inc., via telephone by calling (833) 505-4418 (toll-free) or (714) 886-6213 (international) or via email at TeamTGIFridays@stretto.com. **Any interested bidder should contact Richard Klein ((917) 520-3640; rklain@hilcocf.com) of Hilco Corporate Finance, LLC, the Debtors' proposed investment banking advisor.**

A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale.

The Debtors' Sale Timeline is as follows:

- The deadline to submit a bid for any Assets is **Friday, December 13, 2024 at 4:00 p.m. (CT).**

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **Wednesday, December 18, 2024 at [●] a.m. (CT)** or such other date as may be determined by the Debtors in consultation with the Consultation Parties (which information will be timely provided by the Debtors to the Auction Participants) at [●].

- Any objections to the Sale or the relief requested in connection with the Sale, including objections related to adequate assurance of future performance or general objections to the assumption and assignment of the Assumed Contracts (a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242 on or before **Thursday, December 19, 2024 at 4:00 p.m. (CT)** (the "Sale Objection Deadline"), and served upon the Objection Notice Parties (as defined below); and (e) proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules. The "Objection Notice Parties" are as follows: (a) proposed counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Chris L. Dickerson (chris.dickerson@ropesgray.com) and Rahmon J. Brown (rahmon.brown@ropesgray.com)), and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Zachary C. Zahn (zzahn@foley.com)); (b) counsel to Texas Partners Bank, a Texas state bank doing business as The Bank of San Antonio; (c) counsel to any official committee appointed in the chapter 11 Cases; (d) the United States Trustee for the Northern District of Texas (collectively, the "Objection Notice Parties").

- Unless adjourned, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on or before **Friday, December 20, 2024 at [●] (CT)**, subject to the Bankruptcy Court's availability.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE BANKRUPTCY COURT ENTERED IN THE DEBTORS' CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED IN THE BANKRUPTCY COURT AND SERVED ON THE OBJECTION NOTICE PARTIES ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

*[Remainder of Page Intentionally Left Blank]*

Dated: November [●], 2024

Respectfully submitted by:

*/s/ Holland N. O'Neil*

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile:  (214) 999-4667
honeil@foley.com
mmoore@foley.com
zzahn@foley.com

- and -

**ROPES & GRAY LLP**
Chris L. Dickerson (*pro hac vice* pending)
Rahmon J. Brown (*pro hac vice* pending)
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

*Proposed Counsel to the Debtors*

## <u>EXHIBIT 3</u>

**Assumption Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| Debtors. | (Jointly Administered) |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT WITH RESPECT**
**TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

**PLEASE TAKE NOTICE THAT:**

The above-captioned debtors and debtors-in-possession (the "Debtors")[2] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on November 2, 2024, in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "Sale") of all or substantially all of their assets (the "Assets"). In connection with the Sale, the Debtors are seeking to enter into an Asset Purchase Agreement (the "Stalking Horse APA") with one or more stalking horse purchasers (the "Stalking Horse Purchaser"). The Stalking Horse APA remains subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

By order, dated [●], 2024 [Docket No. ●] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ●] (the "Bidding Procedures Motion"), including the "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidder(s). **All interested bidders should carefully read the Bidding Procedures**. The Bidding Procedures Order also approved certain procedures

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Hartford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

for the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (the "Assumption Procedures").

Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse APA are available for download at https://cases.stretto.com/TGIFridays (the "Case Website") or from the Debtors' claims and noticing agent, Stretto, Inc., via telephone by calling (833) 505-4418 (toll-free) or (714) 886-6213 (international) or via email at TeamTGIFridays@stretto.com.

Pursuant to the Bidding Procedures Order, the Debtors hereby provide notice that they are seeking to potentially assume and assign to the Stalking Horse Purchaser or other Winning Bidder, as applicable, the executory contracts or unexpired leases (each, an "Assumed Contract" and together, the "Assumed Contacts") listed on **Exhibit 3-A** attached hereto.

**You are receiving this Notice because you or one of your affiliates may be a party to an Assumed Contract that *may* be assumed and assigned in connection with the Sale.**

If the Debtors assume and assign to the Stalking Horse Purchaser or other Winning Bidder, as applicable, an Assumed Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, the Stalking Horse Purchaser or other Winning Bidder, as applicable, will pay you the amount the Debtors' records reflect is owing to you for prepetition arrearages as set forth on **Exhibit 3-A** attached hereto (the "Cure Cost"). The Debtors' records reflect that all postpetition amounts owing under your Assumed Contract have been paid and will continue to be paid until the assumption and assignment of the Assumed Contract, and that other than the Cure Cost, there are no other defaults under the Assumed Contract.

The Debtors' inclusion of an executory contract or unexpired lease as an Assumed Contract on **Exhibit 3-A** is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to the Stalking Horse Purchaser or other Winning Bidder. Should it be determined that an Assumed Contract will not be assumed and assigned, the Debtors shall notify such party to the Assumed Contract in writing of such decision.

Under the terms of the Bidding Procedures Order, the Debtors may modify the list of Assumed Contracts on **Exhibit 3-A** until consummation of the Sale, and the Debtors reserve the right, but only in accordance with the Stalking Horse APA or any Alternative APA, as applicable, or as otherwise agreed by the Debtors and the Stalking Horse Purchaser or other Winning Bidder, as applicable, at any time after the closing of the Sale and before the deadline for designation of additional Assumed Contracts or removal of potentially Assumed Contracts set forth in the Stalking Horse APA or any Alternative APA, as applicable, to (i) supplement the list of Assumed Contracts with previously omitted executory contracts, (ii) remove Assumed Contracts from the list of executory contracts ultimately selected as Assumed Contracts that the Stalking Horse Purchaser or other Winning Bidder, as applicable, proposes be assumed and assigned to it in connection with the Sale, or (iii) modify the previously stated Cure Cost associated with any Assumed Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Assumed Contracts

that has been previously rejected by the Debtors by order of the Bankruptcy Court. Each Supplemental Assumption Notice will include the same information with respect to listed Assumed Contracts as was included in the Assumption Notice, or in the event of a removal, the information required in a Removal Notice.

**Any objection to the Cure Cost or to assumption and assignment must be filed with the Bankruptcy Court on or before [_____(i.e., the 14th day after service)] of the relevant Assumption Notice or Supplemental Assumption Notice (the "<u>Cure Objection Deadline</u>"), or such deadline set forth in the applicable Supplemental Assumption Notice and served on the Objection Notice Parties (as defined herein).**

**Any objection to the Sale, including objections related to adequate assurance of future performance, must (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) filed in the Bankruptcy Court on or before <u>Thursday, December 19, 2024 at 4:00 p.m. (CT)</u>; (iv) state with specificity the grounds for such objection; and (v) be served on the Objection Notice Parties (as defined herein). Such objecting party must also file proof of service of such objection upon the Objection Notice Parties with the Bankruptcy Court as and when required by the Local Rules.**

The "<u>Objection Notice Parties</u>" are as follows: (a) proposed counsel to the Debtors, Ropes & Gray LLP, 191 North Wacker Drive, 32nd Floor, Chicago, IL 60606 (Attn: Chris L. Dickerson (chris.dickerson@ropesgray.com) and Rahmon J. Brown (rahmon.brown@ropesgray.com)), and Foley & Lardner LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201 (Attn: Holland N. O'Neil (honeil@foley.com), Mark C. Moore (mmoore@foley.com), and Zachary C. Zahn (zzahn@foley.com)); (b) counsel to the DIP Lender, Norton Rose Fulbright US LLP, 2200 Ross Avenue, Suite 3600, Dallas, TX 75201 (Attn: Toby L. Gerber (toby.gerber@nortonrosefulbright.com), Kristian W. Gluck (kristian.gluck@nortonrosefulbright.com), and Jason I. Blanchard (jason.blanchard@nortonrosefulbright.com); (c) counsel to any official committee appointed in the chapter 11 Cases; (d) the United States Trustee for the Northern District of Texas (collectively, the "<u>Objection Notice Parties</u>").

If an objection to the Cure Cost, assumption and assignment, adequate assurance of future performance, or the Sale is timely filed and not resolved by the parties, a hearing with respect to the objection will take place in the United States Bankruptcy Court for the Northern District of Texas, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242 at the Sale Hearing to be held at **[_____] [a/p].m. (prevailing Central Time) on December 20, 2024**, subject to the Bankruptcy Court's availability, or such other date as determined by the Debtors, in consultation with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Winning Bidder, then in consultation with the Winning Bidder, in accordance with the terms of the Bidding Procedures Order. A hearing regarding the Cure Cost, if any, may be continued at the discretion of the Debtors and the Stalking Horse Purchaser or other Winning Bidder, as applicable, until after the closing of the Sale.

**Any party failing to timely file an objection to the proposed Cure Cost, the proposed assumption and assignment of an Assumed Contract or Additional Assumed Contract listed on an Assumption Notice or the Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Cost, (b) the assumption and assignment of such Assumed**

**Contract or Additional Assumed Contract (including the adequate assurance of future payment), (c) the related relief requested in the Bidding Procedures Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Cost, the assumption and assignment of the Assumed Contract, or Additional Assumed Contract, adequate assurance of future performance, the relief requested herein, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to the Stalking Horse Purchaser or other Winning Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Purchaser or other Winning Bidder, as applicable, with respect to such party's Assumed Contract or Additional Assumed Contract.**

Subject to the terms of the Bidding Procedures Order, an auction (the "<u>Auction</u>") for the Assets, including the Contracts, will be conducted on **<u>December 18, 2024 at [●] (CT)</u>**  or such other date as may be determined by the Debtors in consultation with the Consultation Parties (which information will be timely provided by the Debtors to the Auction Participants), at [●].

After the Auction, the Debtors will file and serve a notice that identifies the Winning Bidder for the Assets, including any Assumed Contracts**.**  The Debtors or the Stalking Horse Purchaser or other Winning Bidder, as applicable, reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on **<u>Exhibit 3-A</u>** hereto.  Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assumed Contracts listed on **<u>Exhibit 3-A</u>** hereto (a) shall not be an admission as to whether any such Assumed Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of section 365 of the Bankruptcy Code; and (b) shall be subject to the Debtors' or the Stalking Horse Purchaser's or other Winning Bidder's, as applicable, right to conduct further confirmatory diligence with respect to the Cure Cost of each Assumed Contract and to modify such Cure Cost accordingly.  In the event that the Debtors or the Stalking Horse Purchaser or other Winning Bidder, as applicable, determine that your Cure Cost should be modified, you will receive a notice, which will provide for additional time to object to such modification.

**The Debtors will seek to assume and assign the Assumed Contracts that have been selected by the Stalking Horse Purchaser or other Winning Bidder, as applicable, (collectively, the "<u>Selected Assumed Contracts</u>") at the Sale Hearing**.

Nothing contained herein shall obligate the Debtors or the Stalking Horse Purchaser or other Winning Bidder to assume any Selected Assumed Contracts, and all rights of the Debtors and the Stalking Horse Purchaser or other Winning Bidder with respect to such Selected Assumed Contracts are reserved.  Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Selected Assumed Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors or the Stalking Horse Purchaser or other Winning Bidder, as applicable, to designate any Selected Assumed Contract as either rejected or assumed on a post-closing basis.

Dated: November [●], 2024                    Respectfully submitted by:

                                             */s/ Holland N. O'Neil*
                                             **FOLEY & LARDNER LLP**
                                             Holland N. O'Neil (TX 14864700)
                                             Mark C. Moore (TX 24074751)
                                             Zachary C. Zahn (TX 24137675)
                                             2021 McKinney Avenue, Suite 1600
                                             Dallas, TX 75201
                                             Telephone: (214) 999-3000
                                             Facsimile:  (214) 999-4667
                                             honeil@foley.com
                                             mmoore@foley.com
                                             zzahn@foley.com

                                             - and -

                                             **ROPES & GRAY LLP**
                                             Chris L. Dickerson (*pro hac vice* pending)
                                             Rahmon J. Brown (*pro hac vice* pending)
                                             191 North Wacker Drive, 32nd Floor
                                             Chicago, IL 60606
                                             Telephone: (312) 845-1200
                                             Facsimile: (312) 845-5500
                                             chris.dickerson@ropesgray.com
                                             rahmon.brown@ropesgray.com

                                             *Proposed Counsel to the Debtors*

**EXHIBIT 3-A TO THE ASSUMPTION NOTICE**

# **EXHIBIT 4**

**Stalking Horse APA**