| | |
|---|---|
| **ROPES & GRAY LLP** | **FOLEY & LARDNER LLP** |
| Chris L. Dickerson (admitted *pro hac vice*) | Holland N. O'Neil (TX 14864700) |
| Rahmon J. Brown (admitted *pro hac vice*) | Mark C. Moore (TX 24074751) |
| 191 North Wacker Drive, 32nd Floor | Zachary C. Zahn (TX 24137675) |
| Chicago, Illinois 60606 | 2021 McKinney Avenue, Suite 1600 |
| Telephone: (312) 845-1200 | Dallas, TX 75201 |
| Facsimile: (312) 845-5500 | Telephone: (214) 999-3000 |
| chris.dickerson@ropesgray.com | Facsimile: (214) 999-4667 |
| rahmon.brown@ropesgray.com | honeil@foley.com |
| | mmoore@foley.com |
| | zzahn@foley.com |

*Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER
TO EXTEND THE EXCLUSIVITY PERIOD TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Harford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

> **HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

TGI Friday's Inc. ("TGIF") and its affiliated debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through their undersigned counsel, hereby submit this motion (this "Motion") for entry of an order granting the relief described below. In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over these cases, the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105 and 1121 of title 11 of the United States Code (the "Bankruptcy Code"), and rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 3016-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules"), and Section N of the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures").

## RELIEF REQUESTED

4. The Debtors hereby seek entry of an order, substantially in the form attached hereto (the "Order"), extending the Filing Exclusivity Period (as defined below) and the Solicitation Exclusivity Period (as defined below) through and including June 30, 2025, and August 29, 2025,

respectively. This requested extension is without prejudice to any parties' rights with respect to further modifications of the Exclusivity Periods (defined below).

5.    The Debtors have conferred with the official unsecured creditors' committee (the "Committee"), Texas Partners Bank, a Texas state bank doing business as The Bank of San Antonio (the "DIP Lender"), and the United States Trustee for the Northern District of Texas (the "Trustee"). None oppose the relief requested herein.

## BACKGROUND

6.    On November 2, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. On November 14, 2024, the Committee was appointed in the chapter 11 cases.

7.    Founded in 1965 in New York City, New York, TGIF and its affiliated Debtors and debtors in possession and non-Debtor affiliates (collectively with the Debtors, the "Company") are the owners of the original casual dining bar and grill, TGI Fridays, offering classic American food and beverages.

8.    The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Kyle Richter, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 30] (the "First Day Declaration")[2], which is fully incorporated herein by reference.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

3

9. Since the Petition Date, the Debtors have diligently pursued asset sales to maximize the value of their estates for all stakeholders. On November 11, 2024, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order Approving (I) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) The Debtors' Entry Into and Performance Under a Stalking Horse APA; (III) Assumption and Assignment Procedures; and (IV) Granting Related Relief* [Docket No. 138]. On November 20, 2024, the Court entered *Order Approving (I) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) The Debtors' Entry Into and Performance Under a Stalking Horse APA; (III) Assumption and Assignment Procedures; and (IV) Granting Related Relief* (the "Initial Bidding Procedures Order") [Docket No. 197].

10. Following entry of the Initial Bidding Procedures Order, the Debtors designated a stalking horse bidder, Sugarloaf Concessions, LLC ("Sugarloaf") to serve as a baseline bid for certain of the Debtors' assets. On December 3, 2024, the Debtors filed the *Notice of Filing of Supplemental Order Approving (I) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) The Debtors' Entry Into and Performance Under a Stalking Horse APA; (III) Assumption and Assignment Procedures; and (IV) Granting Related Relief* whereby the Debtors designated Sugarloaf as a stalking horse bidder and attached the agreed asset purchase agreement with Sugarloaf, and on December 6, 2024, the Court entered the *Supplemental Order Approving (I) Bidding Procedures, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) The Debtors' Entry Into and Performance Under a Stalking Horse APA; (III) Assumption and Assignment Procedures; and (IV) Granting Related Relief* (the "Supplemental Bidding Procedures Order," and together with the Initial Bidding Procedures Order, the "Bidding Procedures Orders") [Docket No. 308].

4

11. The Bidding Procedures Orders authorized the Debtors to conduct, and approved the terms of, an auction (the "Auction") to determine the highest bid for the Debtors' assets. The Bidding Procedures Orders also approved certain bidding procedures (the "Bidding Procedures") to be used in connection with the Auction. Thereafter, the Debtors and their advisors, pursuant to the Bidding Procedures, solicited bids from potential bidders and qualified potential bids and bidders for participation in the Auction.

12. Pursuant to the Bidding Procedures Orders, the Debtors conducted the Auction on December 27, 2024. At the conclusion of thereof, Mera Global, LLC ("Mera") was designated as the winning bidder certain of the Debtors' assets and restaurant locations, and Liquor License Auctioneers Inc. (the "Auctioneers") was declared the winning bidder for certain liquor licenses (the "License Sales"). *Notice of Designation of Winning Bidder and Back-Up Bidder* [Docket No. 389]. The Court conducted a hearing (the "Sale Hearing") on January 2, 2025, to consider, among other things, the sale of assets to Mera (the "Mera Sale") and License Sales and subsequently approved and authorized the Mera Sale and the License Sales by order. *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* (the "Sale Order") [Docket No. 451].

13. Upon entry of the Sale Order, the Debtors worked diligently with the Winning Bidders to close the Mera Sale and License Sales and to transfer assets accordingly. On February 18, 2025, the Mera Sale was successfully closed. However, the closing of the License Sales has

5

been delayed, and the Debtors are unsure at this time whether the License Sales will close with the Auctioneers.

14. In conjunction with working to close the Mera and License Sales, the Debtors also continued to pursue value-maximizing asset sales for the remainder of their assets not sold at the Auction. The Debtors continued negotiations with two of the bidders at the Auction: Sugarloaf and Yadav Enterprises Inc. ("Yadav"). On January 26, 2025, the Debtors entered into an asset purchase agreement with Yadav and Table Turn Acquisitions, LLC, for the purchase of 15 restaurant locations (the "Yadav Sale") for a credit bid purchase price of $3,000,000 and payment of all associated cure amounts. *See Debtors' Emergency Motion for Entry of an Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* (the "Yadav and Sugarloaf Sales Motion") [Docket No. 478]. The Debtors also executed a letter of intent with Sugarloaf for the purchase of another 3 restaurant locations (the "Sugarloaf Sale") for a purchase price of $100,000 and payment of all lease and sales tax associated cure amounts. *Yadav and Sugarloaf Sales Motion* [Docket No. 478].

15. On January 31, 2025, the Court held a hearing to consider, among other things, the Yadav and Sugarloaf Sales Motion. The same day, the Court entered an order approving the Yadav Sale and Sugarloaf Sale. *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in*

6

*Connection Therewith, and (IV) Granting Related Relief* (the "Yadav and Sugarloaf Sale Order") [Docket No. 501]. The Sugarloaf Sale was successfully closed on February 12, 2025, and the Yadav Sale was successfully closed on February 18, 2025.

16. Finally, the Debtors actively continue to market and sell their remaining liquor licenses that hold value. To streamline this process the Debtors sought approval of procedures (the "License Sale Procedures"). *Debtors' Motion for Entry of an Order Approving (I) Sale Procedures for Certain of the Debtors' Liquor Licenses; and (II) Granting Related Relief* (the "License Sale Procedures Motion") [Docket 521]. On February 19, 2025, the Court held a hearing to consider, among other things, the relief requested in the License Sale Procedures Motion. Shortly thereafter, the Court entered an order authorizing the License Sale Procedures. *Order Approving (I) Sale Procedures for Certain of the Debtors' Liquor Licenses; and (II) Granting Related Relief* [Docket No. 552]. To date, the Debtors have submitted 7 liquor license sales, totaling approximately $2 million, to the Court for approval through the License Sale Procedures. This streamlined process preserved and will continue to preserve critical time and resources for the Debtors to redouble their efforts to file and solicit a plan.

17. On March 2, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order to Extend the Exclusivity Period to File a Chapter 11 Plan and Solicit Acceptance Thereof* [Docket No. 566] (the "Exclusivity Motion"). The Court subsequently entered the *Order Extending the Debtors' Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 612] on April 9, 2025. Since filing the Exclusivity Motion, the Debtors and their advisors have continued to work diligently toward a value-maximizing outcome to the chapter 11 cases. In the interim, the Debtors have submitted an additional 6 liquor license sales, totaling approximately $1.5 million, to the Court for approval through the License Sale Procedures. The Debtors have

also submitted a retention application for Lain, Faulkner & Co., PC, as liquidating consultant to assist the Debtors with critical tasks associated with the liquidation and winding down of the Debtors' operations and the facilitation of additional liquor license sales. *See Debtors' Application for Entry of an Order (I) Authorizing the Retention of LainFaulkner as Liquidating Consultant to the Debtors Effective as of February 21, 2025 and (II) Granting Related Relief* [Docket No. 618]. Additionally, the general bar date passed on March 12, 2025, and the Debtors have been analyzing the submitted claims.

18. The Debtors and their advisors have worked diligently during the chapter 11 cases to maximize the value of their estates for all stakeholders and to reach a conclusion to the bankruptcy process. Although the Debtors have not yet filed a plan, the Debtors have, and will continue to, devote significant time, attention, and effort to the efficient progression of these chapter 11 cases.

**BASIS FOR RELIEF**

19. Congress codified a number of interwoven provisions that reflect the ultimate goal of rehabilitation for a troubled business through a considered and consensual chapter 11 plan, including a debtor's exclusive right to a fair amount of time in which only it may propose a plan. *See e.g., In re Perkins*, 71 B.R. 294, 297 (W.D. Tenn. 1987) (explaining that extensions of exclusivity periods further the purpose of chapter 11 by providing more time to negotiate a consensual plan "which would inure to the benefit of all"). At times, it is only by extended exclusivity that a debtor can bring all parties to the bargaining table in hopes of striking a balanced and successful plan.

20. Section 1121(b) of the Bankruptcy Code establishes an initial period of 120 days after the commencement of a chapter 11 case during which only a debtor may file a plan (the "Filing Exclusivity Period") and an additional 60-day period thereafter during which only the

debtor may solicit votes for a plan (the "Solicitation Exclusivity Period," and together with the Filing Exclusivity Period, the "Exclusivity Periods"). 11 U.S.C. §§ 1121(b)–(c). Currently, the Filing Exclusivity Period will expire on May 1, 2025, and the Solicitation Exclusivity Period will expire on June 30, 2025.

21. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause." 11 U.S.C. § 1121(d)(1). Although the Bankruptcy Code does not define "cause," bankruptcy courts have the discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in the context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor has shown substantial progress toward reorganization") (citation omitted); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (citing factors relevant to whether "cause" exists to extend exclusive periods) (citation omitted); *In re Weiss Multi-Strategy Advisers LLC*, 2024 Bankr. LEXIS 1907, *19 (Bankr. S.D.N.Y. 2024) (noting that consideration of the debtors' good-faith progress toward reorganization is "focused on a debtors' 'good faith efforts to achieve emergence,'" which includes pursuit of a plan of liquidation) (citation omitted).

22. Courts examine numerous factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. These factors include:

   a) "the size and complexity of the case;

   b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

9

    c) the existence of good faith progress toward reorganization;

    d) the fact that the debtor is paying its bills as they become due;

    e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f) whether the debtor has made progress in negotiations with its creditors;

    g) the amount of time which has elapsed in the case;

    h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    i) whether an unresolved contingency exists."

*In re New Millennium Mgmt., LLC*, No. 13-35719, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citation omitted); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (applying the above-listed factors and finding cause to extend the period for 60 days). Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *Express One Int'l, Inc.*, 194 B.R. at 100–01 (listing all nine factors later set forth in Adelphia but relying on only four as relevant in determining whether there was "cause" to extend exclusivity); *see also In re Excel Maritime Carriers Ltd.*, No. 13-23060, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (noting in an exclusivity termination context that "the ultimate consideration for the Court was what will best move the case forward in the best interest of all parties").

23. Courts within the Fifth Circuit and in other jurisdictions have held that the decision to extend exclusivity is left to the sound discretion of the court and should be based on the totality of circumstances in each case. *See, e.g.*, *Mirant*, No. 4-04-CV-476-A, 2004 WL 2250986, at * 2 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *Express One Int'l, Inc.*, 194 B.R. at 100–01 (extending exclusivity based on the totality of the

10

circumstances).

24. Courts in this and other districts in Texas have granted similar relief. *See, e.g.*, *In re Ebix, Inc., et al.*, No. 23-80004 (SWE) (Bankr. N.D. Tex. April 22, 2024) [Docket No. 536, 915]; *In re Sunland Medical Foundation, et al.,* No. 23-80000 (MVL) (Bankr. N.D. Tex. March 15, 2024) [Docket Nos. 335, 445]; *In re Wesco Aircraft Holdings, Inc. (d/b/a Incora)*, No. 23-90611 (MI) (Bankr. S.D. Tex. June 1, 2023) [Docket Nos. 911, 1455, 1847].

## I. "Cause" Exists to Extend the Exclusivity Periods in These Chapter 11 Cases.

25. Ample cause exists to grant the relief requested by this Motion in these chapter 11 cases. As set forth below, the relevant factors strongly weigh in favor of an extension of the Exclusivity Periods:

 a) ***The Debtors' chapter 11 cases are large and complex.*** As reflected by the Court's *Order Granting Chapter 11 Complex Case Treatment* [Docket No. 62], the Debtors' significant number of creditors and assets make these cases large and complex.

 b) ***The terms of a chapter 11 plan depended on the outcome of the sales process***. The Debtors marketed, held an auction, and obtained Court approval for sales of their assets pursuant to the results of the auction. *Sale Order* [Docket No. 451]. Thereafter, the Debtors continued to pursue asset sales, culminating in Court approval for the sales of certain assets to two additional parties. *Yadav and Sugarloaf Sale Order* [Docket No. 501]. The sale process has also led to the sale of numerous liquor licenses, and the Debtors continue to market and pursue sales of the remaining liquor licenses. The assets to be distributed and the unexpired contracts to be assumed or rejected through a plan depended on the outcome of the sales process. Given the length of time dedicated to pursuing such sales, the Debtors require additional time to negotiate with the Committee and all other stakeholders in an effort to propose a consensual plan.

 c) ***The Debtors have made significant progress in negotiating in good faith with all creditors and working towards a viable chapter 11 plan.*** Since the Petition Date, the Debtors have negotiated in good faith and worked collaboratively with their stakeholders. The Debtors' time and resources have been productively spent on (i) ensuring a smooth chapter 11 process with minimal disruption to the Debtors' operations, preserving the Debtors' assets to the benefit of all parties in interest; (ii) administering value-maximining sales processes; (iii) engaging the various stakeholders to ensure the closing of the various asset sales; (iv) filing procedures for the sale of the Debtors' remaining liquor licenses; (v) transitioning

11

      the Debtors' operations to the new owners pursuant to the asset sales; and (vi) negotiating support with the Debtors' other constituents, including the Committee and contract counter parties.

d) ***The Debtors are not seeking to extend exclusivity to pressure creditors, and an extension of the exclusivity periods will not prejudice creditors.*** The Debtors have not sought an extension of exclusivity to pressure creditors or other parties in interest. On the contrary, all creditor constituencies are benefitted by providing the Debtors with sufficient time to continue to negotiate the terms of a chapter 11 plan and determine what transaction or combination of transactions will provide the greatest value to their estates and the greatest recovery to their creditors. Extending exclusivity benefits all creditors by preventing the drain on time and resources that inevitably occurs when competing plans are filed. All stakeholders benefit from continued stability and predictability that a centralized process provides, which can only occur while the Debtors remain the sole plan proponent. Moreover, even if the Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later seeking to reduce or terminate exclusivity for cause.

e) ***The Debtors are paying their bills as they come due.*** The Debtors have paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order.

f) ***Significant time has not elapsed in these chapter 11 cases.*** This is the Debtors' second request for an extension of the Exclusivity Periods and will result in a total extension of the Exclusivity Periods of 120 days. As noted above, courts routinely grant a Debtors' additional requests for an exclusivity extension.

26. Because each of the factors above weigh in favor of finding cause to extend the Exclusivity Periods, the Debtors believe that the requested extension of the Exclusivity Periods is warranted and appropriate under the circumstances. Moreover, the requested extension is reasonable and necessary, will not prejudice the legitimate interests of creditors and other parties in interest, and will afford the Debtors a meaningful opportunity to pursue and confirm a feasible and consensual plan.

## NOTICE

27. The Debtors will provide notice of this Motion via electronic mail or first class mail to: (a) the Office of the United States Trustee for the Northern District of Texas; (b) the United States Attorney's Office for the Northern District of Texas; (c) the state attorneys general for all

12

states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the holders of the fifty (50) largest unsecured claims against the Debtors on a consolidated basis; (f) the DIP Lender; (g) the counsel to the Official Committee of Unsecured Creditors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

WHEREFORE the Debtors respectfully request entry of the Order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 30, 2025

Respectfully submitted by:

*/s/ Holland N. O'Neil*
**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
mmoore@foley.com
zzahn@foley.com

– and –

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

*Counsel to the Debtors*

## CERTIFICATE OF SERVICE

    I certify that on April 30, 2025, a true and correct copy of the foregoing document was served electronically by the Court's PACER system.

                                                                */s/ Zachary C. Zahn*
                                                                Zachary C. Zahn