**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
mmoore@foley.com
sajones@foley.com
zzahn@foley.com

*Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>TGI Friday's Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-80069-sgj11<br><br>(Jointly Administered) |

# DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Harford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

**TABLE OF CONTENTS**

ARTICLE I INTRODUCTION ..... 1

ARTICLE II DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ..... 1

**A.** Defined Terms. ..... 1

**B.** Rules of Interpretation. ..... 8

**C.** Computation of Time. ..... 9

**D.** Governing Law. ..... 9

**E.** References to Monetary Figures. ..... 9

**F.** Controlling Document. ..... 9

ARTICLE III ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ..... 9

**A.** Administrative Claims. ..... 9

**B.** Professional Fee Claims. ..... 10

**C.** Priority Tax Claims. ..... 10

**D.** U.S. Trustee Fees. ..... 11

ARTICLE IV CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS ..... 11

**A.** Classes Entitled to Vote. ..... 12

**B.** Elimination of Classes. ..... 12

**C.** Controversy Concerning Impairment ..... 12

**D.** Class Acceptance Requirement. ..... 12

**E.** Cramdown. ..... 12

ARTICLE V TREATMENT OF CLAIMS AND EQUITY INTERESTS ..... 12

**A.** Class 1 – Other Secured Claims ..... 12

**B.** Class 2 – Prepetition Notes Claims. ..... 13

**C.** Class 3 – Other Priority Claims. ..... 13

**D.** Class 4 – General Unsecured Claims. ..... 13

**E.** Class 5 – Subordinated Claims. ..... 13

**F.** Class 6 – Intercompany Claims. ..... 13

**G.** Class 7 – Equity Interests. ..... 13

ARTICLE VI MEANS OF IMPLEMENTATION ..... 14

**A.** General Settlement of Claims and Equity Interests. ..... 14

**B.** Limited Substantive Consolidation. ..... 14

**C.** The Creditor Trust. ..... 14

**D.** Dissolution of Committee and Cessation of Fee and Expense Payments. ..... 19

**E.** Section 1145 Exemption. .......... 20

**F.** Cancellation of Existing Securities. .......... 20

**G.** Corporate Action. .......... 20

**H.** Directors and Executive Officers. .......... 20

**I.** Retained Causes of Action. .......... 20

**J.** Effectuating Documents; Further Transactions. .......... 21

**K.** Exemption from Certain Transfer Taxes. .......... 21

ARTICLE VII DISTRIBUTIONS .......... 21

**A.** Date of Distributions. .......... 21

**B.** Sources of Cash for Plan Distributions. .......... 21

**C.** Manner of Distributions. .......... 22

**D.** Record Date for Distributions. .......... 22

**E.** Delivery of Distributions; Unclaimed Property. .......... 22

**F.** Means of Payment. .......... 22

**G.** Distributions After Effective Date. .......... 22

**H.** Withholding and Reporting Requirements. .......... 22

**I.** No Postpetition Interest. .......... 23

**J.** Time Bar to Payments. .......... 23

**K.** De Minimis Distributions. .......... 23

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS .......... 24

**A.** Objections to Claims. .......... 24

**B.** No Distributions Pending Allowance. .......... 24

**C.** Distributions After Allowance. .......... 24

**D.** Automatic Disallowance of Duplicate, Amended, and Late Filed Claims. .......... 24

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 24

**A.** Rejection of Contracts and Leases. .......... 24

**B.** Inclusiveness. .......... 25

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN .......... 25

**A.** Conditions to Confirmation of the Plan. .......... 25

**B.** Conditions to the Effective Date of the Plan. .......... 25

**C.** Waiver of Conditions Precedent. .......... 25

**D.** Effect of Failure of Conditions. .......... 26

**E.** Reservation of Rights. .......... 26

ARTICLE XI EFFECT OF CONSUMMATION ........ 26

**A.** Revesting of Assets. ........ 26

**B.** Exculpation. ........ 26

**C.** Releases by the Debtors. ........ 27

**D.** Injunction and Stay. ........ 27

**E.** Gate Keeping. ........ 27

**F.** Setoffs and Recoupment. ........ 28

**G.** Compromise of Controversies. ........ 28

ARTICLE XII RETENTION OF JURISDICTION ........ 28

ARTICLE XIII MISCELLANEOUS ........ 29

**A.** Filing of Additional Documents. ........ 29

**B.** Schedules, Exhibits, and Plan Supplement Incorporated. ........ 29

**C.** Amendment or Modification of the Plan. ........ 30

**D.** Inconsistency. ........ 30

**E.** Expedited Tax Determination. ........ 30

**F.** Binding Effect. ........ 30

**G.** Severability. ........ 30

**H.** No Payment of Attorneys' Fees. ........ 30

**I.** Notices. ........ 30

# ARTICLE I
# INTRODUCTION

The above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") propose this first amended joint chapter 11 plan of liquidation (the "Plan") for the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for the other Debtor. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Equity Interests pursuant to the Bankruptcy Code. **Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.**

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties, and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

# ARTICLE II
# DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

## *A. Defined Terms.*

1. ***Administrative Claim*** means any Claim for the costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the business of the Debtors, other than Professional Fee Claims.

2. ***Administrative Claim Bar Date*** means the deadline to file all Administrative Claims, which shall be the first Business Day that is at least thirty (30) days after the Effective Date.

3. ***Affiliate*** has the meaning ascribed in section 101(2) of the Bankruptcy Code.

4. ***Allowed*** means, with respect to any Claim or Equity Interest, a Claim or an Equity Interest expressly allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

5. ***Avoidance Actions*** means any and all actual or potential avoidance, recovery, subordination, or other similar Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, or other similar related, local, state, federal statutes and common law.

6. ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time.

7. ***Bankruptcy Court*** means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Cases.

8. ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

9. ***Bar Date*** means the last date to file proofs of claim against the Debtors, which was March 12, 2025, for all creditors except Governmental Units, and May 1, 2025, for Governmental Units.

10. ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

11. ***Cash*** means legal tender of the United States of America.

12. ***Causes of Action*** means all of the Debtors' rights, remedies, and Claims that the Debtors have against any third party (including current and former directors and officers of the Debtors), including, without limitation and by way of example only, breach of contract, negligence, avoidance, among others, and Avoidance Actions.

13. ***Chapter 11 Cases*** means the above-captioned jointly administered chapter 11 cases of the Debtors.

14. ***Claim*** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

15. ***Class*** means any group of Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

16. ***Collateral*** means any interest in property of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

17. ***Committee*** means the official committee of unsecured creditors appointed by the Office of the United States Trustee for the Northern District of Texas in the Chapter 11 Cases on November 14, 2024 [Docket No. 148] as may be reconstituted from time to time by the U.S. Trustee.

18. ***Confirmation*** means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

19. ***Confirmation Date*** means the date upon which the Bankruptcy Court confirms the Plan and enters the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

20. ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

21. ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22. ***Consummation*** means the occurrence of the Effective Date.

23. ***Creditor Trust*** means the trust to be established on the Effective Date pursuant to the terms of a Creditor Trust Agreement and the Plan, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Creditor Trust Agreement.

24. ***Creditor Trust Agreement*** means the agreement governing the Creditor Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

25. ***Creditor Trust Assets*** means, in each case except as otherwise expressly excluded by the Plan or the Confirmation Order, (a) the Creditor Trust Funding Amount, (b) all Retained Causes of Action owned by the Debtors or their respective Estates on the Effective Date, including, without limitation, any Litigation Proceeds thereof, and (c) all property of the Debtors or their respective Estates on or after the Effective Date wherever located and by whomever held, including, without limitation, (i) Cash on hand as of the Effective Date (after giving effect to the funding of the Professional Fee Escrow Account) and Cash as may be received after the Effective Date; (ii) any and all receivables of the Debtors; (iii) the rights and interests that the Debtors have as insureds under any and all insurance policies, including, without limitation, insurance refunds and insurance policy proceeds; (iv) any and all proceeds (including Cash) from any and all sales or other dispositions of the property of the Debtors or their respective Estates occurring on or after the Effective Date; (v) any and all deposits, prepayments, and refunds, and (vi) any and all proceeds of the foregoing.

26. ***Creditor Trust Beneficiaries*** means, collectively, the Holders of Allowed Claims entitled to distributions from the Creditor Trust under the terms of the Plan, including, without limitation, Holders of Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims.

27. ***Creditor Trust Claims Reserve*** means the portion of the Creditor Trust Assets allocable to, or retained on account of, Disputed Claims, with respect to which the Creditor Trust, acting by and through the Creditor Trustee, may determine the appropriate method of United States tax reporting in its sole discretion.

28. ***Creditor Trust Fees and Expenses*** means the reasonable expenses (including any taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets and professional fees) incurred by the Creditor Trust, any professionals retained by the Creditor Trust, and any additional amount determined to be necessary by the Creditor Trustee to adequately reserve for the operating expenses of the Creditor Trust that shall be paid out of the Creditor Trust Assets. Any claims for indemnification by the Creditor Trust or its professionals shall also be Creditor Trust Fees and Expenses pursuant to the terms of the Plan and the Creditor Trust Agreement.

29. ***Creditor Trust Funding Amount*** means the amount of Cash transferred from the Debtors to the Creditor Trust on the Effective Date.

30. ***Creditor Trust Interests*** means the beneficial interests in the Creditor Trust issued to Creditor Trust Beneficiaries pursuant to the Plan and the Creditor Trust Agreement.

31. ***Creditor Trust Net Assets*** means Creditor Trust Assets less Creditor Trust Fees and Expenses.

32. ***Creditor Trustee*** means the trustee for the Creditor Trust to be selected by the Committee, which Person shall be reasonably acceptable to the Debtors.

33. ***Debtor*** and ***Debtors*** have the meanings given to them in the Introduction.

34. ***Disallowed*** means any Claim, or portion thereof, that is not an Allowed Claim or a Disputed Claim.

35. ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

36. ***Disputed*** means, when used with respect to a Claim, such Claim, as the case may be (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtors (if prior to the Effective Date) or the Creditor Trust (if after the Effective Date) have made a timely objection, including as a contested matter, adversary proceeding, or otherwise, or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

37. ***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

38. ***DOF Election*** means any tax election made by the Creditor Trust, acting by and through the Creditor Trustee at its option, to treat the Creditor Trust Claims Reserve as a "disputed ownership fund" or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for United States federal income tax purposes (and, to the extent permitted by applicable law, for United States federal, state, and local income tax purposes), rather than as part of the Creditor Trust Assets.

39. ***DOF*** means a disputed ownership fund or other separate entity established pursuant to a DOF Election.

40. ***Effective Date*** means the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan. For the avoidance of doubt, any action that must be taken on the Effective Date under the terms of the Plan may be taken on or as soon as reasonably practicable thereafter.

41. ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

42. ***Equity Interests*** means any "equity security" of the Debtors, as that term is defined in section 101(16) of the Bankruptcy Code, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

43. ***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

44. ***Exculpated Party*** or ***Exculpated Parties*** means, in each case solely in their capacity as such: (a) the Debtors, (b) any independent director or manager of the Debtors, and (c) the Committee and its members, each in their capacities as such.

45. ***Final Decree*** means the decree contemplated by Bankruptcy Rule 3022.

46. ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

47. ***First Day Declaration*** means the *Declaration of Kyle Richter, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Moti*ons [Docket Nos. 28, 30].

48. ***General Unsecured Claim*** means any Claim against a Debtor that is not a (a) Secured Claim or Other Secured Claim; (b) Prepetition Notes Claim; (c) Administrative Claim; (d) Priority Tax Claim; (e) Other Priority Claim; (f) Professional Fee Claim; (g) Subordinated Claim; (h) Intercompany Claim; or (i) Equity Interest; *provided, however*, for the avoidance of doubt, the definition of General Unsecured Claim includes the Securitization Entities' GUC Claim.

49. ***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

50. ***Holder*** means a Person holding a Claim against, or an Equity Interest in, any Debtor, as applicable.

51. ***Impaired*** means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

52. ***Indemnified Parties*** have the meaning set forth in Article VI.C.18 of the Plan.

53. ***Insider*** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

54. ***Intercompany Claim*** means a Claim held by one Debtor against another Debtor.

55. ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

56. ***Litigation Proceeds*** means any Cash proceeds received by the Creditor Trust on account of the prosecution, settlement, or other disposition of the Retained Causes of Action.

57. ***Local Rules*** means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

58. ***Objection Deadline*** means the later of (i) with respect to Secured, Administrative, or Priority Claims (a) one hundred eighty (180) days after the Effective Date or (b) such later date as may be

ordered by the Bankruptcy Court prior to the expiration of such one hundred eighty (180) day period, upon motion; and (ii) with respect to Unsecured Claims, (a) three hundred sixty five (365) days after the Effective Date or (b) such later date as may be ordered by the Bankruptcy Court prior to the expiration of such three hundred sixty-five (365) day period, upon motion.

59. ***Other Priority Claim*** means any Claim other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

60. ***Other Secured Claim*** means a Secured Claim against the Debtors that is not a Prepetition Notes Claim.

61. ***Person*** means an Entity, individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government, agency, or political subdivision thereof, or any other form of legal entity.

62. ***Petition Date*** means November 2, 2024.

63. ***Plan*** means this Plan, as the same may be amended, supplemented, or otherwise modified from time to time, including any exhibits and schedules hereto.

64. ***Plan Supplement*** means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed with the Bankruptcy Court on or before the Effective Date, including, but not limited to, the Creditor Trust Agreement and the disclosure of the Professional Fee Funding Amount, and any additional documents filed as amendments to the Plan Supplement. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full; *provided, however*, in the event of a conflict between the Plan and the Plan Supplement, the Plan shall control.

65. ***Prepetition Noteholder*** means a Holder of a Prepetition Notes Claim.

66. ***Prepetition Notes Claim*** means any Claim arising under, based upon, relating to, or in connection with the Debtors' funded principal debt and interest obligations evidenced by or arising from (i) that certain Yadav Kids Note, (ii) that certain Table Turn Note, and (iii) that certain Freebird Note, each as defined in the First Day Declaration.

67. ***Priority Tax Claim*** means any Claim of a Governmental Unit against the Debtors entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code or as specified in section 502(i) of the Bankruptcy Code.

68. ***Pro Rata*** means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class or group of Claims bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class or group of Claims.

69. ***Professional*** means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

70. ***Professional Fee Claim*** means any Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

71. ***Professional Fee Escrow Account*** means the escrow account established by the Debtors and funded by the Debtors with Cash in an amount equal to the Professional Fee Funding Amount on or prior to the Effective Date on account of certain Professional Fee Claims incurred between the Petition Date and the Effective Date in connection with the Plan.

72. ***Professional Fee Funding Amount*** means the aggregate amount of Professional Fee Claims incurred by the Debtors, the Committee, and their Professionals in connection with the drafting, filing, solicitation, and Consummation of the Plan and related transactions, as agreed among the Debtors, the Committee, and their Professionals, and as set forth in the Plan Supplement, including the Wind-Down Budget; *provided, however*, such Professionals covered by the Professional Fee Funding Amount shall be limited to Foley & Lardner, LLP, Berkeley Research Group, LLC, Pachulski Stang Ziehl & Jones, LLP, and Province.

73. ***Professional Fee Remaining Balance*** means the aggregate total sum of all Allowed Professional Fee Claims incurred by the Professionals in rendering services to the Debtors, the Committee, and the Estates from the Petition Date through the Effective Date (less the Professional Fee Funding Amount and any amounts paid prior to the Effective Date).

74. ***Released Party*** or ***Released Parties*** has the meaning set forth in Article XI.C of the Plan.

75. ***Retained Causes of Action*** means all of the Debtors' Causes of Action, including, but not limited to, Avoidance Actions, which, as of the Effective Date have not been sold, transferred, settled, waived, or released pursuant to the Plan, upon order of the Bankruptcy Court or otherwise, all of which shall be reserved, retained, assigned, and transferred to the Creditor Trust.

76. ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

77. ***Secured Claim*** means a Claim, other than a Prepetition Notes Claim, secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the Holder of such Claim. To the extent a Claim exceeds the value of the Collateral securing such Claim, such deficiency shall constitute a General Unsecured Claim.

78. ***Securitization Entities*** means TGIF SPV Guarantor, LLC, TGIF Funding, LLC, and TGI Fridays Franchisor, LLC.

79. ***Securitization Entities' GUC Claim*** means the General Unsecured Claim of the Securitization Entities in the amount of $36,907,375.11, as reflected in Claim Nos. 522, 523, and 584, which, on the Effective Date, shall be Allowed in full, collectively, as an Allowed General Unsecured Claim.

80. ***Subordinated Claim*** means any Claim (i) arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim or (ii) subject to subordination in accordance with section 510(c) of the Bankruptcy Code or otherwise.

81. ***U.S. Trustee Fees*** means all fees payable under section 1930 of title 28 of the United States Code.

82. ***U.S. Trustee*** means the Office of the United States Trustee.

83. ***Unimpaired*** means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

84. ***Wind-Down Budget*** means the budget, schedule, or other summary to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time in accordance with the Plan, setting forth, among other things, (i) the amount of the Professional Fee Funding Amount, (ii) the projected amount of Cash on hand as of the Effective Date (after giving effect to all Effective Date payments and fundings required under the Plan), (iii) the anticipated funding amount of the Creditor Trust and the composition of the Creditor Trust Assets (to the extent applicable), and (iv) the projected distribution waterfall to Holders of Allowed Claims in accordance with the priorities established by the Plan.

### ***B. Rules of Interpretation.***

For purposes of the Plan, except as otherwise provided in the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtors or the Creditor Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Equity Interests," "Disputed Equity Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

### *C. Computation of Time.*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### *D. Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

### *E. References to Monetary Figures.*

All references in the Plan to monetary figures refer to the currency of the United States of America, unless otherwise expressly provided herein.

### *F. Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of any inconsistency between or among the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE III
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following Claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Article IV.

### *A. Administrative Claims.*

All Holders of Administrative Claims shall file with the Bankruptcy Court a request for payment of such Claims on or before the Administrative Claim Bar Date. Any such request must be served on the Debtors and their counsel, and must, at a minimum, set forth (i) the name of the Holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the legal and factual bases for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its Holder forever barred from asserting such Administrative Claim against the Debtors or any other Person.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment of such Claim or objects in writing to its treatment hereunder, each Holder of an Allowed Administrative Claim shall receive, on account of and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, an amount equal to the Allowed amount of such Administrative Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) the date that entry of an order by the Bankruptcy Court allowing such Administrative Claim becomes a Final Order. For the avoidance of doubt, the Creditor Trustee shall be tasked with making distributions to

Holders of Allowed Administrative Claims in accordance with the terms of the Plan and Creditor Trust Agreement from Creditor Trust Net Assets.

***B. Professional Fee Claims.***

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application shall file a final application for payment of fees and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

Professional Fee Claims covered by the Professional Fee Funding Amount shall be paid by the Creditor Trustee from the Professional Fee Escrow Account. To the extent there are insufficient funds on hand in the Professional Fee Escrow Account to pay in full all of the Professional Fee Claims covered by the Professional Fee Funding Amount, such Professional Fee Claims shall be paid in full in Cash by the Creditor Trust from Creditor Trust Net Assets.

Prior to the funding of the Creditor Trust as provided in the Plan, the Debtors shall establish the Professional Fee Escrow Account, which shall be funded by the Debtors in the Professional Fee Funding Amount from available Cash on or prior to the Effective Date, in accordance with the Wind-Down Budget. Following the Effective Date, the Creditor Trustee shall pay Allowed Professional Fee Claims covered by the Professional Fee Funding Amount from the Professional Fee Escrow Account as such Professional Fee Claims are Allowed, up to the amounts available in the Professional Fee Escrow Account, after application of any retainers.

Notwithstanding anything to the contrary in the Plan, any Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance shall be subordinate to, and shall only be paid after, all Allowed Administrative Claims and all Allowed Priority Tax Claims have been satisfied in full in accordance with the Plan. Following such satisfaction in full of all Allowed Administrative Claims and all Allowed Priority Tax Claims in accordance with the Plan, the Creditor Trustee shall distribute Pro Rata to Professionals holding Allowed Professional Fee Claims included in the Professional Fee Remaining Balance (i) all available Creditor Trust Net Assets and (ii) any other Cash designated for satisfying the Professional Fee Remaining Balance in the Plan or Plan Supplement, in each case, until all such Allowed Professional Fee Claims have been paid in full.

***C. Priority Tax Claims.***

Except to the extent that a Holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, at the Creditor Trustee's option and upon the payment in full of all other Allowed Administrative Claims: (i) Cash in an amount equal to the Allowed amount of such Allowed Priority Tax Claim; (ii) a lesser amount in one Cash payment as may be agreed in writing by such Holder; or (iii) regular installment payments of Cash (a) having a total value, as of the Effective Date, equal to the Allowed amount of the Allowed Priority Tax Claim, (b) over a period ending not later than five (5) years after the Petition Date and (c) in a manner not less favorable than the most favored nonpriority Allowed General Unsecured Claims provided for by the Plan. For the avoidance of doubt, Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance shall not be paid until all Allowed Priority Tax Claims have been satisfied in full in accordance with the Plan.

To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law, as set forth in section 511 of the Bankruptcy Code. Notwithstanding the foregoing, any penalty arising with respect to or in connection with an Allowed Priority Tax Claim shall be treated as a General Unsecured Claim. The Debtors and the Creditor Trustee, as applicable, reserve the right to setoff against or recoup from any Allowed Priority Tax Claim any right to payment that any of the Debtors may have against the Holder of an Allowed Priority Tax Claim due to levies assessed against the Debtors, the Estates, or otherwise.

### *D. U.S. Trustee Fees.*

All U.S. Trustee Fees shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Creditor Trustee, *provided*, *however*, that the Creditor Trust shall not be required to pay U.S. Trustee Fees on account of the disbursement of Creditor Trust Assets on which U.S. Trustee Fees were already paid in connection with their transfer to the Creditor Trust.

## ARTICLE IV
## CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims and Equity Interests addressed elsewhere in the Plan, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or an Equity Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Equity Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors, each as applicable. All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and all Debtors will continue to exist as separate legal Entities after the Effective Date.

| Class | Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Prepetition Notes Claims | Impaired | Entitled to Vote |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

***A. Classes Entitled to Vote.***

The Holders of Claims in Classes 1 and 3 are Unimpaired, as they will be paid in full or, if applicable, entitled to retain their Collateral. As a result, all Holders of Claims in Classes 1 and 3 are conclusively deemed to have accepted the Plan. The Holders of Claims in Classes 2 and 4 are Impaired and are entitled to vote to accept or reject the Plan. The Holders of Claims and Equity Interests in Classes 5, 6, and 7 are Impaired and are conclusively deemed to reject the Plan and are therefore not entitled to vote to accept or reject the Plan.

***B. Elimination of Classes.***

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

***C. Controversy Concerning Impairment.***

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

***D. Class Acceptance Requirement.***

A Class of impaired Claims entitled to vote on the Plan shall have accepted the Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan.

***E. Cramdown.***

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE V
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

***A. Class 1 – Other Secured Claims.***

Except to the extent a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive: (i) Cash payment in full of its Allowed Other Secured Claims; (ii) the Collateral securing such Allowed Other Secured Claim and

payment of any interest required under section 506(b) of the Bankruptcy Code; or (iii) such other treatment that renders such Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

***B. Class 2 – Prepetition Notes Claims.***

Except to the extent a Holder of an Allowed Prepetition Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Notes Claim, each Holder of an Allowed Prepetition Notes Claim shall receive the amount of such Prepetition Notes Claim as an Allowed General Unsecured Claim to be paid Pro Rata with the other General Unsecured Claims from the Creditor Trust Net Assets.

***C. Class 3 – Other Priority Claims.***

Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive (a) Cash on (or as soon as reasonably practicable after) the Effective Date in an amount equal to such Allowed Other Priority Claim or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

***D. Class 4 – General Unsecured Claims.***

Except to the extent that a Holder of an Allowed General Unsecured Claim against a Debtor agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by the Debtors prior to the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive such Holder’s Pro Rata share of the Creditor Trust Net Assets remaining after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims (including, for the avoidance of doubt, all Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance), Allowed Other Secured Claims, and Allowed Other Priority Claims.

***E. Class 5 – Subordinated Claims.***

On the Effective Date, all Holders of Allowed Subordinated Claims shall be entitled to no recovery under the Plan.

**F. *Class 6 – Intercompany Claims*.**

On the Effective Date, all Intercompany Claims shall be settled, canceled, released, and discharged without payment or distribution of any Cash or other property. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan and are not entitled to vote.

***G. Class 7 – Equity Interests.***

On the Effective Date, all Equity Interests, other than Equity Interests in TGIF SPV Guarantor, LLC, shall be canceled, released, and extinguished and shall be of no further force and effect, and Holders of Equity Interests shall not receive any distribution on account thereof and no recovery under the Plan.

## ARTICLE VI
## MEANS OF IMPLEMENTATION

### *A. General Settlement of Claims and Equity Interests.*

Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and is within the range of reasonableness. Subject to the terms of the Plan, all distributions made to Holders of Allowed Claims and Allowed Equity Interests in any Class are intended to be and shall be final.

### *B. Limited Substantive Consolidation.*

The Plan provides for potential recoveries on account of Allowed Claims, regardless of the Debtor entity against which such Allowed Claims are asserted. For purposes of voting, distributions, and all other purposes under the Plan, all assets and liabilities of the Debtors shall be treated as if they were substantively consolidated, and all Claims against any Debtor or Debtors based upon any guarantee, joint and several liability, co-obligation, or other similar theory shall be treated as a single Claim against the consolidated Estates, and any duplicative Claims shall be disallowed. The Debtors shall not be consolidated for any other purpose. To the extent necessary, the Plan shall serve as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of such limited substantive consolidation for voting and distribution on account of Allowed Claims. The limited substantive consolidation provided for herein shall not (a) affect the legal or corporate structure of any of the Debtors, (b) cause the merger or consolidation of any legal entities, or (c) affect the mutuality requirement for purposes of setoff under section 553 of the Bankruptcy Code.

### *C. The Creditor Trust.*

#### 1. Establishment of the Creditor Trust.

The Creditor Trust shall be established on the Effective Date pursuant to the terms of the Creditor Trust Agreement and the Plan, and shall initially be funded with the Creditor Trust Assets.

#### 2. Purpose of the Creditor Trust.

The Creditor Trust shall be established for the primary purpose of (a) liquidating, holding, managing, and distributing the Creditor Trust Assets in accordance with the terms of the Plan and the Creditor Trust Agreement, (b) winding down and administering the Debtors' Estates, including, without limitation, objecting to, resolving, reconciling, and paying or otherwise treating Claims against the Debtors in the order of priority set forth in the Plan, (c) managing any remaining activities necessary to complete final transfer of sold assets, and (d) prosecuting, settling, abandoning, or otherwise resolving the Retained Causes of Action and distributing the Litigation Proceeds thereof in accordance with the Plan. For the avoidance of doubt, distributions of Creditor Trust Assets shall be made by the Creditor Trustee to Holders of Allowed

Claims in accordance with the priorities and other terms set forth in the Plan and the Creditor Trust Agreement.

**3. The Creditor Trustee.**

The Creditor Trustee shall be selected by the Committee, in consultation with the Debtors, subject only to Bankruptcy Court approval at the Confirmation Hearing. The Creditor Trust, acting by and through the Creditor Trustee, shall be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Creditor Trustee may prosecute, settle, liquidate, and otherwise administer the Creditor Trust Assets on behalf of the Creditor Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Creditor Trust Agreement, and shall also be responsible for, among other things, objecting to and otherwise resolving Claims. The Creditor Trust and the Creditor Trustee shall be exempt from giving any bond or other security in any jurisdiction.

**4. Execution of Creditor Trust Agreement.**

On the Effective Date, the Creditor Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Creditor Trust and the Creditor Trust Interests with respect thereto. The form of the Creditor Trust Agreement and related ancillary documents shall be mutually acceptable to the Debtors and the Committee, subject only to Bankruptcy Court approval at the Confirmation Hearing.

**5. Creditor Trust Assets.**

The Creditor Trust shall consist of the Creditor Trust Assets. On the Effective Date, the Debtors shall, and shall be deemed to, irrevocably grant, assign, transfer, and convey to the Creditor Trust all rights, title, and interests in and to all of the Creditor Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Creditor Trust Assets shall automatically vest in the Creditor Trust, free and clear of all Liens, Claims, and encumbrances, except with respect to any proceeds to the extent that any valid prepetition liens attach to such proceeds or as otherwise provided in the Plan. The Creditor Trust, acting by and through the Creditor Trustee, may abandon or otherwise not accept any Creditor Trust Assets that the Creditor Trust believes, in good faith, to have no value to, or will be unduly burdensome to, the Creditor Trust. Any Creditor Trust Assets that the Creditor Trust abandons or otherwise does not accept shall not be property of the Creditor Trust.

**6. Governance and Powers and Duties of the Creditor Trust.**

The Creditor Trust shall be governed by the Creditor Trustee in accordance with the Creditor Trust Agreement and in a manner consistent with the Plan. The Creditor Trustee shall have the power and authority to perform the acts described in the Creditor Trust Agreement. The powers, rights, and responsibilities of the Creditor Trustee shall be specified in the Creditor Trust Agreement and shall include, among other things, the authority, power, and responsibility to cause the Creditor Trust to: (a) receive, manage, invest, supervise, and protect Creditor Trust Assets; (b) pay taxes or other obligations incurred by the Creditor Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, independent contractors, professionals, and consultants to advise and assist in the administration, prosecution and distribution of Creditor Trust Assets; (d) calculate and implement distributions of Creditor Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Creditor Trust Agreement and without further order of the Bankruptcy Court, except as otherwise provided therein, Retained Causes of Action; (f) resolve issues involving Claims in accordance with the Plan, including the power to object to, or settle, resolve, or compromise objections or disputes with respect to, Claims, and to subordinate and recharacterize Claims

by objection, motion, or adversary proceeding; (g) undertake all administrative functions of the Chapter 11 Cases, including the payment of statutory fees and the ultimate closing of the Chapter 11 Cases; (h) enter into contingency fee agreements or litigation funding agreements as may be necessary in order to pursue the Creditor Trust's interests in the prosecution of Retained Causes of Action; and (i) take action pursuant to such other powers as may be vested in or assumed by the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan.

**7. Books and Records.**

The Creditor Trust shall: (a) take possession of all copies of books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with any sale(s) during the pendency of the Chapter 11 Cases; and (b) provide for the retention and storage of such books, records, and files until such time as the Creditor Trust determines, in accordance with the Creditor Trust Agreement, that retention of same is no longer necessary or beneficial to the Creditor Trust. No further Order of the Court shall be required prior to destroying or abandoning such books and records. The Creditor Trust through the Creditor Trustee shall be deemed to stand in the shoes of the Debtors for purposes of accessing any books and records or information sold to any third-party buyer.

**8. Cash.**

The Creditor Trustee may invest Creditor Trust Assets only in Cash, money market funds, and government securities (as defined in section 2(a)(16) of the Investment Company Act of 1940, as amended); *provided, however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

**9. Costs and Expenses of the Creditor Trustee.**

The Creditor Trust Fees and Expenses shall be paid only out of the Creditor Trust Assets (or from proceeds of Creditor Trust Assets as set forth herein and in the Creditor Trust Agreement). All such costs and expenses must be satisfied or reserved for in full before distributions may be made to Creditor Trust Beneficiaries.

**10. Compensation of the Trustee.**

The Creditor Trustee shall be entitled to reasonable compensation paid exclusively from the Creditor Trust Assets.

**11. Retention of Professionals by the Creditor Trust.**

The Creditor Trust, acting by and through the Creditor Trustee, may retain and reasonably compensate counsel and other professionals out of the Creditor Trust Assets or proceeds of litigation recoveries to assist in its duties on such terms as the Creditor Trust deems appropriate without Bankruptcy Court approval. The Creditor Trust may retain any professional who represented parties in interest (including the Debtors or the Committee) in the Chapter 11 Cases.

**12. Distribution of Creditor Trust Assets.**

The Creditor Trust shall distribute Cash to the Creditor Trust Beneficiaries in accordance with the Plan and the Creditor Trust Agreement. The Creditor Trust shall not make any distributions to Holders of Disputed

Claims unless and until such Claims are Allowed. The Creditor Trust shall ensure that sufficient funds are reserved, as determined by the Creditor Trust in its sole discretion, to pay Disputed Claims upon Allowance. The Creditor Trust shall be permitted to reserve and satisfy amounts that (i) are reasonably necessary to meet contingent liabilities and to maintain the value of the Creditor Trust Assets, (ii) are necessary to pay reasonable expenses, including, but not limited to, any taxes imposed on the Creditor Trust or in respect of the Creditor Trust Assets, and (iii) are required to satisfy other liabilities incurred by the Creditor Trust in accordance with the Plan or the Creditor Trust Agreement.

**13. Creditor Trust Interests.**

Creditor Trust Interests in the Creditor Trust shall not be represented by certificates, receipts, or in any other form or manner, except as maintained in the books and records of the Creditor Trust by the Creditor Trustee, as set forth in the Creditor Trust Agreement. All of the Creditor Trust Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. All Creditor Trust Interests to be issued shall be deemed issued as of the Effective Date. For the avoidance of doubt, ownership of a Creditor Trust Interest will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except the book entry system maintained by the Creditor Trust. The Creditor Trust Interests shall be non-transferable and non-assignable during the term of the Creditor Trust Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof are submitted to the Creditor Trust, and the Creditor Trust may continue to pay all amounts to or for the benefit of the assigning Creditor Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Creditor Trust may rely upon such proof without the requirement of any further investigation.

**14. Federal Income Tax Treatment of the Creditor Trust.**

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee, and the Holders of Creditor Trust Interests in the Creditor Trust) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust Beneficiaries, whether Allowed on or after the Effective Date, as (A) a transfer of the Creditor Trust Assets directly to the Holders in satisfaction of General Unsecured Claims, followed by (B) the transfer by such Holders to the Creditor Trust of the Creditor Trust Assets in exchange for, Creditor Trust Interests in the Creditor Trust. Accordingly, the Holders of such Creditor Trust Interests in the Creditor Trust shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Creditor Trust Assets.

**15. Tax Reporting.**

The Creditor Trust, acting by and through the Creditor Trustee, shall file income tax returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulation section l.671-4(a) and in accordance with this section of the Plan. To the extent required, or if desired by the Creditor Trust, the Creditor Trust shall annually send to each record holder of a Creditor Trust Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Creditor Trust's taxable income, gain, loss, deduction, or credit will be allocated among the beneficial holders of a Creditor Trust Interest in accordance with each holder's relative beneficial Creditor Trust Interest.

The Creditor Trust, acting by and through the Creditor Trustee, shall have the authority, in its sole discretion, to determine and implement the appropriate method for reporting the Creditor Trust Claims Reserve for United States federal, state, and local income tax purposes, including whether to make a DOF Election. Any such determination, including any DOF Election, shall be binding on the Debtors, the

Creditor Trust Beneficiaries, and all Holders of Claims for all tax purposes, and such parties shall cooperate with the Creditor Trustee and shall not take any position inconsistent therewith, except as may be required by a Final Order or other applicable law. All taxes, costs, and expenses associated with the establishment, administration, and tax reporting of the Creditor Trust Claims Reserve, including any DOF established pursuant to a DOF Election, shall be paid from the Creditor Trust Claims Reserve (or, to the extent insufficient, from other Creditor Trust Assets), and the Creditor Trustee shall have no personal liability for any tax consequences to any party in interest arising from the implementation of this section of the Plan. If a DOF Election is made, the Creditor Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of federal and/or state income tax due.

The Creditor Trust shall be responsible for payments, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or the Creditor Trust Assets, including the Creditor Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Creditor Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Creditor Trustee as a result of the resolutions of such Disputed Claims.

The Creditor Trust may request an expedited determination of taxes of the Creditor Trust, including the Creditor Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

**16. Dissolution.**

The Creditor Trust shall be dissolved and the Creditor Trustee shall be discharged no later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, the Bankruptcy Court, upon motion by a party in interest, including the Creditor Trust, may extend the term of the Creditor Trust if it is necessary to the liquidation and/or distribution of the Creditor Trust Assets, without prejudice to further extensions, so long as Bankruptcy Court approval of such extension is obtained in conformity with IRS Revenue Procedure 94-45, 1994-2 C.B. 684; *provided, further*, that in no event shall the term of the Creditor Trust extend past the tenth (10th) anniversary of the Effective Date; *provided, further* that neither the Creditor Trust Agreement nor the continued existence of the Creditor Trust shall prevent the Debtors or the Creditor Trustee from closing the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code and obtaining a Final Decree pursuant to Bankruptcy Rule 3022. The Creditor Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing all of or the last of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code and (ii) the Creditor Trustee has administered all Creditor Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Creditor Trust Agreement and the Creditor Trust. The Creditor Trustee shall not unduly prolong the duration of the Creditor Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all Creditor Trust Assets and to affect the distribution of the Creditor Trust Assets to the Creditor Trust Beneficiaries in accordance with the terms of the Plan and Creditor Trust Agreement and terminate the Creditor Trust as soon as practicable. Prior to and upon termination of the Creditor Trust, the Creditor Trust Assets will be distributed to the Creditor Trust Beneficiaries, pursuant to the provisions set forth in the Plan and Creditor Trust Agreement.

If at any time the Creditor Trustee determines that the expense of administering the Creditor Trust is likely to exceed the value of the Creditor Trust Assets, the Creditor Trustee shall have the authority to (i) distribute to the Creditor Trust Beneficiaries any Cash remaining with the Creditor Trust in excess of necessary costs

to pay outstanding expenses of the Creditor Trust, including any fees and expenses of the Creditor Trustee and his/her professionals, (ii) donate any Creditor Trust Assets remaining in the Creditor Trust to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code that is unrelated to the Debtors and any Insider of the Debtors and (iii) dissolve the Creditor Trust.

**17. Preservation of Privileges.**

The actions taken by the Debtors or the Committee shall not be (or be deemed to be) a waiver of any privilege, including any attorney-client privilege or work-product privilege attaching to any document or communications (whether written or oral). Notwithstanding the Debtors or the Committee providing any privileged information to the Creditor Trust, Creditor Trustee, or any party or person associated with the Creditor Trust, such privileged information shall be without waiver of any privilege of the Debtors or the Committee, including any attorney-client privilege or work-product privilege. The transfer to and vesting in the Creditor Trust of the Creditor Trust Assets on the Effective Date shall not affect a waiver of any privilege of the Debtors or the Committee, and upon such transfer, the Creditor Trust, acting by and through the Creditor Trustee, shall hold all rights with respect to such privileges, including the right to waive such privileges in its discretion.

**18. Indemnification.**

The Creditor Trust shall indemnify the Creditor Trustee and professionals retained by the Creditor Trust (the "Indemnified Parties") from Creditor Trust Assets for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of the Creditor Trust's duties under the Plan, Confirmation Order, or the Creditor Trust Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence, or willful misconduct. In addition, the Creditor Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditor Trust or the implementation or administration of the Plan, if the Indemnified Parties acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Creditor Trust.

***D. Dissolution of Committee and Cessation of Fee and Expense Payments.***

The Committee shall be dissolved on the Effective Date and the members of the Committee (solely in their capacities as such) and the Committee's Professionals (solely in their capacity as such) shall be released from all their duties relating to the Chapter 11 Cases, except with respect to (a) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (b) any motions or other actions seeking enforcement or implementation of (i) the Plan or (ii) the Confirmation Order or (iii) appeal thereof. The Debtors shall not be responsible for paying any fees or expenses incurred by the Committee (or any other committee that may be appointed in these Chapter 11 Cases) after the Effective Date except if incurred in furtherance of the functions of the Committee set forth in (a) or (b) of this paragraph, subject to the rights of parties in interest to object thereto.

### *E. Section 1145 Exemption.*

Section 1145 of the Bankruptcy Code shall be applicable to the issuance of the Creditor Trust Interests, if any. To the maximum extent permitted by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, if appropriate, the Creditor Trust Interests, issued pursuant to the Plan and their transfer, will be exempt from registration under the Securities Act and all rules and regulations promulgated thereunder, and any and all applicable state and local laws, rules, and regulations.

### *F. Cancellation of Existing Securities.*

On the Effective Date, except as otherwise provided for herein or any other document incorporated in the Plan, all Equity Interests, including, but not limited to, any other certificate, security, share, note, bond, indenture, purchase right, option, warrant, certificates of designation or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest, to the extent not already canceled, shall be deemed canceled and of no further force or effect, without the requirement for any further action on the part of the Bankruptcy Court or any other Person.

### *G. Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any Equity Interest Holders, or directors or officers of the Debtors. The authorizations and approvals contemplated by this section shall be effective notwithstanding any requirements under non-bankruptcy law.

### *H. Directors and Executive Officers.*

On the Effective Date, the term of each member of each Debtor's current board of directors or board of managers, as applicable, shall automatically expire, and all officers of each Debtor shall be deemed to have resigned from their respective positions without any further action or order of the Bankruptcy Court being required. From and after the Effective Date, the Creditor Trustee may exercise all power and authority that may be exercised by any officer, director, or manager of, or Holder of an Equity Interest in, the Debtors with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors, managers or Holders of Equity Interests; *provided, however*, the Creditor Trustee shall have no duties other than as expressly set forth in the Confirmation Order, the Plan, and the Creditor Trust Agreement and shall have no personal liability for any pre-Effective Date actions, obligations, or omissions of the Debtors.

### *I. Retained Causes of Action.*

Except as otherwise provided in the Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to sections 363(b) and 1123(b)(3) of the Bankruptcy Code, the Debtors reserve and, as of the Effective Date, grant, release, assign, transfer, and convey to the Creditor Trust the Retained Causes of Action. The Creditor Trust, acting by and through the Creditor Trustee, shall be the exclusive representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code on account of such Retained Causes of Action. On and after the Effective Date, the Creditor Trustee, on behalf of the Creditor Trust, may pursue Retained Causes of Action for the benefit of the Holders of Creditor Trust Interests.

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Creditor Trustee will not pursue any and all available Retained Causes of Action. Unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Debtors expressly reserve all Retained Causes of Action for later adjudication by the Creditor Trust, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of Plan Confirmation or occurrence of the Effective Date.

***J. Effectuating Documents; Further Transactions.***

On and after the Effective Date, the Creditor Trust, acting by and through the Creditor Trustee, is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

***K. Exemption from Certain Transfer Taxes.***

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to the Plan; (b) the release or assignment of liens; (c) the transfer of any assets of the Debtors' Estates to the Creditor Trust or the issuance of Creditor Trust Interests; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, in connection with or pursuant to the Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing.

## ARTICLE VII
## DISTRIBUTIONS

***A. Date of Distributions.***

Distributions under the Plan shall be made as set forth herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

***B. Sources of Cash for Plan Distributions.***

Except as otherwise provided in the Plan or the Confirmation Order, all Cash required for the payments to be made under the Plan shall come from the Creditor Trust Assets.

### *C. Manner of Distributions.*

All distributions under the Plan shall be made by the Debtors, their designee, or by the Creditor Trustee. Neither the Debtors, their designee, the Creditor Trust, nor the Creditor Trustee shall be required to post any bond, surety, or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court.

### *D. Record Date for Distributions.*

At the close of business on the Distribution Record Date, the transfer ledgers or registers for Claims against the Debtors shall be closed, and there shall be no further changes in the record Holders of such Claims. Neither the Debtors nor the Creditor Trust shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record Holders stated on the transfer ledgers or registers maintained by the Debtors as of the close of business on the Distribution Record Date. All distributions to Holders of Allowed Claims under the Plan shall be made to the Holder of the Allowed Claim as of the Distribution Record Date.

### *E. Delivery of Distributions; Unclaimed Property.*

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each Holder of an Allowed Claim (1) at the address set forth in the underlying proof of claim, if filed, (2) at the address set forth on the Debtors' Schedules, if no proof of claim is filed, or (3) pursuant to a written change of address filed with the Bankruptcy Court and delivered to the Creditor Trust. If any distribution to the Holder of an Allowed Claim is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors or the Creditor Trust, as applicable, are notified of such Holder's then-current address, at which time all missed distributions shall be made to such Holder without interest. All such distributions, as well as any distributions by check or other means that have not been negotiated, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days after the date of the distribution in question. After such 60th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the Creditor Trust, and (ii) the Claim of any Holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

### *F. Means of Payment.*

All distributions made pursuant to the Plan shall be in Cash.

### *G. Distributions After Effective Date.*

The Creditor Trust, by and through the Creditor Trustee, shall make interim distributions to Holders of Allowed Claims in accordance with the priority set forth in the Plan and at such time as the Creditor Trust may deem appropriate, in accordance with the terms of the Plan and Creditor Trust Agreement.

### *H. Withholding and Reporting Requirements.*

Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is entitled to receive a distribution under

the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan to any Holder of any Allowed Claim has the right, but not the obligation, to not issue such instrument or make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

The Creditor Trust shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation, or certification as may be requested by the Creditor Trust as a condition precedent to being sent a distribution under the Plan. If a Holder of a Claim does not provide the Creditor Trust with an executed Form W-9, Form W-8 or other requested tax form within sixty (60) days after the date of the initial request, the Creditor Trust may, in its sole discretion: (1) make such distribution under the Plan net of applicable withholding; (2) reserve such distribution under the Plan, in which case (i) such Holder shall be deemed to have forfeited the right to receive any current, reserved or future distribution under the Plan, (ii) any such distribution under the Plan shall revert to the Creditor Trust for all purposes, including but not limited to, for distribution to other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such distribution under the Plan shall be irrevocably waived and forever barred without further order of the Bankruptcy Court, all notwithstanding any federal, state or provincial escheat, unclaimed or abandoned property law to the contrary; or (3) establish any other mechanisms it believes are reasonable and appropriate. The Creditor Trust reserves the right to allocate and distribute all distributions under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

### *I. No Postpetition Interest.*

Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### *J. Time Bar to Payments.*

Checks issued under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Requests for reissuance of any check shall be made in writing directly to the Creditor Trust by the Person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 60-day period referenced in this section. After such 60-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with the Plan, and all Claims in respect of such void checks shall be discharged and forever barred.

### *K. De Minimis Distributions.*

Neither the Debtors nor the Creditor Trust shall have any obligation to make a distribution that is less than One Hundred Dollars ($100) in Cash in the aggregate to any holder of an Allowed Claim. If an interim distribution to the Holder of an Allowed Claim is less than $100, such distribution shall be held for future distributions. If the final distribution to any Holder of an Allowed Claim is less than $100, such amount shall become and constitute unclaimed property and be treated in accordance with the Plan.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### *A. Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan or pursuant to a Final Order of the Bankruptcy Court, only the Debtors prior to the Effective Date and the Creditor Trust after the Effective Date shall be entitled to object to Claims. Any objections to Claims shall be served and filed by the Objection Deadline. Any Claim to which an objection is timely filed shall be a Disputed Claim.

### *B. No Distributions Pending Allowance.*

If a timely objection is made with respect to any Claim, no payment or distribution under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

### *C. Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtors shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest.

### *D. Automatic Disallowance of Duplicate, Amended, and Late Filed Claims.*

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim for which a proof of claim is (i) filed after the applicable Bar Date; (ii) duplicative of another Claim filed by the same creditor against the same or multiple Debtors, or (iii) amended and superseded by a subsequently filed Claim, shall be deemed automatically Disallowed. The Holder of a Claim that is Disallowed pursuant to this section shall not receive any distribution on account of such Claim, and neither the Debtors nor the Creditor Trust shall have any obligation to take any affirmative action for such Claim to be deemed Disallowed.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### *A. Rejection of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease rejections described above, as of the Effective Date. The rejections set forth in this section shall include rejecting any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, or other organizational documents and agreements to indemnify any officers or directors of the Debtors for any prepetition actions or failures to act.

Notwithstanding anything to the contrary contained herein, neither the Plan nor entry of the Confirmation Order shall reject, discharge, impair or otherwise modify (a) any insurance policies maintained by the Debtors as of the Confirmation Date or (b) any obligations owed to the Debtors or any other parties, including any additional insureds, by non-Debtor parties to any insurance policies maintained by the Debtors as of the Confirmation Date. For the avoidance of doubt, the Debtors reserve all rights, claims, offsets, setoffs, defenses, counterclaims, and all other interests relating to any and all of their insurance policies.

### *B. Inclusiveness.*

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

## ARTICLE X
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### *A. Conditions to Confirmation of the Plan.*

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent has been satisfied or waived: (i) an order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code, shall have been entered; and (ii) the Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtors and the Committee.

### *B. Conditions to the Effective Date of the Plan.*

The Effective Date of the Plan shall not occur until each of the following conditions precedent has been satisfied or waived: (i) the clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto; (ii) the Confirmation Order shall have become a Final Order; (iii) the Creditor Trust Agreement shall have been fully executed, the Creditor Trust shall have been formed, the Creditor Trustee shall have been appointed and accepted such appointment, and the Creditor Trust Assets have been transferred to the Creditor Trust, and all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein; (iv) the Professional Fee Escrow Account shall have been established and funded in Cash in an amount equal to the Professional Fee Funding Amount; and (v) the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such alteration, or modification is prior to substantial Consummation and has been consented to by the Committee and meets the requirements of sections 1122, 1123, and 1127 of the Bankruptcy Code. Within five (5) Business Days of the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date and serve the same on all creditors and parties in interest.

### *C. Waiver of Conditions Precedent.*

Except as otherwise provided in the Plan, any of the foregoing conditions to the Effective Date may be waived by agreement of the Debtors and the Committee without notice to or order of the Bankruptcy Court. The failure to satisfy or waive any condition may be asserted by the Debtors and the Committee regardless

of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or the Committee). The failure of the Debtors and the Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

***D. Effect of Failure of Conditions.***

If the foregoing conditions have not been satisfied or waived, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan or Creditor Trust shall be made; (iii) the Debtors and all Holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (vi) the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the master service list maintained in the Chapter 11 Cases.

***E. Reservation of Rights.***

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI
## EFFECT OF CONSUMMATION

***A. Revesting of Assets.***

Upon the Confirmation Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan.

***B. Exculpation.***

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Equity Interest, or any other party in interest, for any Claim or Cause of Action arising from, relating to, or connected with the administration of the Chapter 11 Cases, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the occurrence of the Effective Date, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.**

*C. Releases by the Debtors.*

**On the Effective Date, unless expressly preserved by the Plan, the Debtors shall fully and forever release, acquit, discharge, and dismiss any and all Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity, or otherwise, including any Avoidance Actions or other applicable law solely to the extent arising after the Petition Date and prior to the Effective Date which they have or may have against any of the Exculpated Parties, and each of their Professionals (individually, a "Released Party" and collectively, the "Released Parties"). Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article XI.C of the Plan do not release any Released Party from any Causes of Action arising from or related to any act or omission by such Released Party that constitutes actual fraud, willful misconduct, criminal acts, or gross negligence.**

*D. Injunction and Stay.*

**Upon the Effective Date, and except as otherwise expressly provided in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtors, the Released Parties, or the Exculpated Parties, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Debtors' Estates with respect to any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, or against the property or interests in property of any of the Debtors, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Debtors, or against the property or interests in property of any of the Debtors with respect to any such Claim or Equity Interest, or (v) pursuing any Claim released or exculpated under the Plan.**

**Each Holder of a Claim or Equity Interest shall be bound by the injunction provisions set forth in this section. The Debtors, the Released Parties, or the Exculpated Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or the Plan, including the Exculpation, Injunction and Stay, and gate keeping provisions set forth in the Plan.**

**Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect at least until the Effective Date.**

*E. Gate Keeping.*

**No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors or the Exculpated Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor or Exculpated Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Exculpated Party, or other party in interest requests by motion (oral motion being sufficient), direct**

**that such Person or Entity seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law. Notwithstanding anything to the contrary herein, the Creditor Trustee is not subject to the requirements set forth in Article XI.E of the Plan.**

***F. Setoffs and Recoupment.***

The Debtors or the Creditor Trust, as appropriate, may, but shall not be required to, setoff against or recoup from any Claim any rights to payment that any of the Debtors may have against the Holder of such Claim. Neither the failure of the Debtors to setoff or recoup, nor the Allowance of any Claim, shall constitute a waiver or release by any of the Debtors or the Creditor Trust, as appropriate, of any right to payment, or right of setoff or recoupment.

***G. Compromise of Controversies.***

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i) To hear and determine pending applications for the assumption, assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(ii) To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Debtors herein;

(iii) To ensure that distributions to Holders of Allowed Claims are affected as provided in the Plan;

(iv) To hear and determine any timely objections to Administrative Claims or to proofs of Claim, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(v) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(vi) To take any action and issue such orders, after the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan or any prior order of the Bankruptcy Court, or to maintain the integrity of the Plan, or any prior order entered by the Bankruptcy Court during these Chapter 11 Cases;

(vii) To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(viii) To hear and determine all requests for payment of Professional Fee Claims;

(ix) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Creditor Trust Agreement, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(x) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(xi) To hear any other matter not inconsistent with the Bankruptcy Code;

(xii) To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder, including the matters set forth in Article XI hereof;

(xiii) To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the Consummation or implementation of the Plan;

(xiv) To hear and determine all requests to extend the Objection Deadline, the term of the Creditor Trust, or any other deadlines established by the Plan; and

(xv) To enter a Final Decree(s) closing the Chapter 11 Cases.

The Bankruptcy Court's jurisdiction to adjudicate, decide, or resolve any and all matters related to the Retained Causes of Action shall be non-exclusive.

## ARTICLE XIII
## MISCELLANEOUS

### ***A. Filing of Additional Documents.***

The Debtors or the Creditor Trust may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### ***B. Schedules, Exhibits, and Plan Supplement Incorporated.***

All exhibits and schedules to the Plan, if any, and the documents contained in the Plan Supplement, if any, are incorporated into and are a part of the Plan as if fully set forth herein.

### *C. Amendment or Modification of the Plan.*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time prior to or after the entry of the Confirmation Order, but prior to the Effective Date, upon the written consent of the Committee. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any Holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

### *D. Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement or the Plan, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### *E. Expedited Tax Determination.*

The Debtors or the Creditor Trust may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### *F. Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

### *G. Severability.*

If the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may modify the Plan in accordance with the terms of the Plan so that such provision shall not be applicable to the Holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of the Plan; or (ii) require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

### *H. No Payment of Attorneys' Fees.*

Except for Professional Fee Claims, no attorneys' fees shall be paid by the Debtors with respect to any Claim or Equity Interest unless otherwise specified in the Plan or a Final Order of the Bankruptcy Court.

### *I. Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly

given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**<u>COUNSEL FOR THE DEBTORS</u>:**

**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Attn: Chris L. Dickerson and Rahmon J. Brown
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
Email: chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

-and-

**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, TX 75201
Attn: Holland N. O'Neil, Mark C. Moore, Stephen A. Jones, and Zachary C. Zahn
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: honeil@foley.com
mmoore@foley.com
sajones@foley.com
zzahn@foley.com

**<u>COUNSEL FOR THE COMMITTEE</u>:**

**PACHULSKI STANG ZIEHL & JONES LLP**
Attn: Michael D. Warner, Esq. and Theodore S. Heckel, Esq. (admitted pro hac vice)
700 Louisiana Street, Suite 4500
Houston, Texas 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email: mwarner@pszjlaw.com
theckel@pszjlaw.com

- and –

**PACHULSKI STANG ZIEHL & JONES LLP**
Attn: Bradford J. Sandler, Esq. and Robert J. Feinstein, Esq.
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: bsandler@pszjlaw.com
rfeinstein@pszjlaw.com

Dated: July 17, 2026

*/s/ Kyle Richter*
Kyle Richter
Chief Restructuring Officer