

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 23, 2026**

_____
**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] Debtors. | Case No. 24-80069-sgj11 |
| | (Jointly Administered) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Harford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

Upon the filing by TGI Friday's Inc. ("TGIF") and its affiliated debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 930] (as amended, supplemented, or otherwise modified from time to time, the "Plan"), attached hereto as **Exhibit A**, and the *Disclosure Statement Regarding Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 788] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); and this Court having entered the *Order (I) Approving the Disclosure Statement; (II) Scheduling a Confirmation Hearing; (III) Establishing a Plan Objection Deadline and Related Procedures; (IV) Approving the Solicitation and Notice Procedures, and (V) Granting Related Relief* [Docket No. 823] (the "Disclosure Statement Order");[2] and the Debtors having caused the Disclosure Statement, the Plan, the Solicitation Packages, the Non-Voting Packages, the Confirmation Notice, the Ballots, and all other required documents to be distributed or made available to Holders of Claims, Equity Interests, and other parties in interest in accordance with the Disclosure Statement Order; and the Debtors having filed that certain Plan Supplement and related exhibits on April 14, 2026, April 21, 2026, and July 17, 2026 [Docket Nos. 844, 848, 933] (as amended, supplemented, or otherwise modified from time to time in accordance with the Plan, the "Plan Supplement"); and the Court having found that good and sufficient notice of the Disclosure Statement, Plan, the Plan Supplement, and the Confirmation Hearing were provided to Holders of Claims, Equity Interests, and other parties in interest in accordance with title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement Order, as applicable.

the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules") and the orders of this Court, including the Disclosure Statement Order, as established by the certificates of service filed on the docket in the Chapter 11 Cases [Docket Nos. 792, 797, 802, 834, 842, 845, 847, 850, 853, 857, 861, 874, 880, 884, 889, 891, 895, 911, 912, 920, 934, 940, 941] (collectively, the "Certificates of Service"); and the Court having found that such notice was sufficient under the circumstances and no other or further notice need be provided; and the Court having considered (i) the *Declaration of Kyle Richter in Support of Confirmation of the Debtors' First Amended Joint Chapter 11 Plan of Liquidation* [Docket No. 935] (the "Richter Declaration"), (ii) the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting the Debtors' Joint Chapter 11 Plan of Liquidation of TGI Friday's Inc. and Its Debtor Affiliates* [Docket No. 852] (the "Voting Report"), and (iii) all other evidence and testimony offered at the Confirmation Hearing; and upon the entire record of these Chapter 11 Cases, the record made at the Confirmation Hearing and the arguments of counsel and the evidence adduced thereat; and the Court having determined, based upon all of the foregoing, that the Plan should be confirmed; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

A.    **Findings and Conclusions.** The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by this

3

Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order and are essential, inextricable, and non-severable components and terms of this Confirmation Order and the treatment and distributions provided under the Plan. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

B. **Jurisdiction, Venue, Core Proceeding.** This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of whether the Plan complies with the applicable provisions of the Bankruptcy Code constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Eligibility for Relief.** The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

D. **Commencement of the Chapter 11 Cases.** On November 2, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the Court's *Order Directing Joint Administration of Debtors' Chapter 11 Cases* [Docket No. 58], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

E.    **Appointment of the Committee.** On November 14, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed the official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee"). [*See* Docket No. 148].

F.    **Judicial Notice.** The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.

G.    **Disclosure Statement Order.** On March 20, 2026, the Court entered the Disclosure Statement Order, among other things, (a) setting the Voting Deadline for voting to accept or reject the Plan, (b) approving certain procedures for soliciting, receiving, and tabulating votes to accept or reject the Plan (the "Solicitation Procedures"), and (c) the deadline and date by which objections to confirmation of the Plan must be filed (the "Confirmation Objection Deadline").

H.    **Solicitation and Notice.** As described in the Voting Report and shown by Certificates of Service, the solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act. As further described in the Voting Report and shown by Certificates of Service, the Disclosure Statement, Plan, Plan Supplement, the Solicitation Packages, the Non-Voting Packages, the Confirmation Notice, the Ballots, and all other materials

5

distributed by the Debtors in connection with solicitation of the Plan, as they may have been amended or supplemented from time to time, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, with the Local Rules, and with the Solicitation Procedures set forth in the Disclosure Statement Order. As further described in the Voting Report and shown by Certificates of Service, (a) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases and (b) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and matters described in the Disclosure Statement Order was timely provided in compliance with the Bankruptcy Rules and the Disclosure Statement Order.

I.       **Voting.** Votes on the Plan were solicited after disclosure to Holders of Claims of "adequate information" as defined in section 1125 of the Bankruptcy Code via the Disclosure Statement. As evidenced by the Voting Report and Certificates of Service, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

J.       **Plan Modifications.** Any Modifications to the Plan, as well as other settlements and resolutions announced on the record at the Confirmation Hearing, all of which are reflected herein (collectively, the "Plan Modifications"), do not materially or adversely affect or change the treatment of any Claim or Equity Interest and are hereby approved.

K.       **Burden of Proof.** The Debtors have met their burden of proving that the Plan satisfies or complies with all applicable provisions of sections 1122, 1123, 1125, 1126, and 1129 of the Bankruptcy Code by a preponderance of the evidence.

L.       **Principal Purpose.** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

M.    **Bankruptcy Rule 3016.** The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b). The injunction, release, and exculpation provisions in the Plan describe, with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

N.    **Plan Compliance with the Bankruptcy Code: 11 U.S.C. § 1129(a)(1).** The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 thereof, as required by section 1129(a)(1) of the Bankruptcy Code.

O.    **Proper Classification: 11 U.S.C. §§ 1122, 1123(a)(1).** The classification of Claims under the Plan is proper under the Bankruptcy Code. In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests into seven (7) Classes. Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests. The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Equity Interests. Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

P.    **Specified Unimpaired Classes: 11 U.S.C. § 1123(a)(2).** The Plan specifies that Classes 1 and 3 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code. Additionally, the Plan specifies that Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims will be paid in accordance with the

terms of the Plan, although these Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

Q.    **Specified Treatment of Impaired Classes: 11 U.S.C. § 1123(a)(3).** The Plan specifies that the Claims in Classes 2 and 4 (the "Voting Class" or "Voting Classes") are Impaired, and the Plan sets forth the treatment of such Impaired Voting Classes. Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

R.    **No Discrimination: 11 U.S.C. § 1123(a)(4).** The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

S.    **Implementation of the Plan: 11 U.S.C. § 1123(a)(5).** The Plan and the various documents included in the Plan Supplement provide for adequate and proper means for the Plan's implementation including, without limitation, (a) sources of consideration for Plan distribution, (b) the cancellation of Equity Interests, (c) authorizing the transfer of certain of the Creditor Trust Assets to the Creditor Trust, (d) the reservation, and transfer to the Creditor Trust, of the Retained Causes of Action, and (e) the execution, delivery, filing, or recording of all contracts, securities, instruments, releases, and other agreements or documents related to the foregoing. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

T.    **Non-Voting Equity Securities: 11 U.S.C. § 1123(a)(6).** Because the Debtors are liquidating, the prohibition on the issuance of nonvoting equity securities contained in section 1123(a)(6) of the Bankruptcy Code is not applicable.

8

U.      **Designation of Directors and Officers: 11 U.S.C. § 1123(a)(7).** The Plan provides for the establishment of the Creditor Trust and the appointment of the Creditor Trustee. These provisions are consistent with the interests of Holders of Claims and public policy. Accordingly, the Plan satisfies the requirement of section 1123(a)(7) of the Bankruptcy Code.

V.      **Additional Plan Provisions: 11 U.S.C. § 1123(b).** The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.

W.      **Impairment or Unimpairment of Any Class of Claims or Interests: 11 U.S.C. § 1123(b)(1).** Pursuant to the Plan, Classes 1 and 3 are Unimpaired, and Classes 2, 4, 5, 6, and 7 are Impaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

X.      **Rejection of Executory Contracts and Unexpired Leases: 11 U.S.C. § 1123(b)(2).** The Plan provides for the rejection of the Debtors' remaining executory contracts and unexpired leases (if any), effective as of the Effective Date, except for any executory contract or unexpired lease that (a) was previously assumed, assumed and assigned, or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, or (c) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date.

Y.      **Settlement of Claims and Causes of Action: 11 U.S.C. § 1123(b)(3).** In consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, the provisions of the Plan constitute a good-faith compromise of all Claims, Equity Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.

9

Those settlements and compromises are fair, equitable, and reasonable, and approved as being in the best interests of the Debtors and their Estates.

Z. **Modification of the Rights of Holders of Claims: 11 U.S.C. § 1123(b)(5).** The Plan modifies or leaves unaffected, as the case may be, the right of Holders of each Class of Claims and Equity Interests.

AA. **Other Appropriate Provisions: 11 U.S.C. § 1123(b)(6).** The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to Holders of Claims, (b) releases by Debtors of certain parties, and (c) exculpation of certain parties.

BB. **Cure of Defaults: 11 U.S.C. § 1123(d).** The Plan does not contemplate the cure of any defaults. Thus, section 1123(d) of the Bankruptcy Code is not applicable.

CC. **The Debtors' Compliance with the Bankruptcy Code: 11 U.S.C. § 1129(a)(2).** The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor: (a) is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code; (b) has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and (c) has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

DD.    **Plan Proposed in Good Faith: 11 U.S.C. § 1129(a)(3).** The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the record made at the Confirmation Hearing, and the other proceedings in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of creditors. The Plan was negotiated among the case constituents in good faith and at arm's-length. Further, the Plan's classification, distribution, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length. Such provisions are consistent with the Bankruptcy Code, are each necessary for the success of the Plan, and were not included in the Plan for any improper purpose.

EE.    **Payment for Services or Costs and Expenses: 11 U.S.C. § 1129(a)(4).** Any payment to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, is subject to the approval of the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

FF.    **Directors, Officers, and Insiders: 11 U.S.C. § 1129(a)(5).** The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Debtors have disclosed the identity and nature of compensation of the Creditor Trustee, whose appointment is consistent with the interests of Holders of Claims and with public policy.

GG.    **No Rate Changes: 11 U.S.C. § 1129(a)(6).** Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Debtors.

HH.    **Best Interest of Creditors: 11 U.S.C. § 1129(a)(7).** The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis set forth in Exhibit B to the

Disclosure Statement [Docket No. 932-1] (as amended, supplemented, or otherwise modified from time to time, the "Liquidation Analysis"), and other evidence proffered or adduced at the Confirmation Hearing establishes that each Holder of Claims and Equity Interests in an Impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Allowed Claim or Allowed Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

II.     **Acceptance by or Unimpairment of Certain Classes: 11 U.S.C. § 1129(a)(8).** Classes 1 and 3 are Unimpaired by the Plan, and Holders of Claims in such Classes are thus conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 5, 6, and 7 are Impaired by the Plan and are conclusively deemed to have rejected the Plan. Classes 2 and 4 Claims are Impaired, and the Holders of such Claims were entitled to vote on the Plan. As established by the Voting Report, the Holders of Claims in Class 4 voted to accept the Plan in accordance with section 1126(d) of the Bankruptcy Code. Therefore, section 1129(a)(8) of the Bankruptcy Code has been satisfied. As discussed below, the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code, and the Plan may be confirmed notwithstanding the deemed rejection by Classes 5, 6, and 7.

JJ.     **Treatment of Administrative Expense Claims and Priority Tax Claims: 11 U.S.C. § 1129(a)(9).** The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims under the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

KK.     **Acceptance by at Least One Impaired Class of Claims: 11 U.S.C. § 1129(a)(10).** As evidenced by the Voting Report, the Holders of Claims in Class 4, which are Impaired, voted

to accept the Plan by the requisite numbers and amounts of Claims, as determined without including any acceptance of the Plan by any Insider, as specified under the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

LL.   **Feasibility: 11 U.S.C. § 1129(a)(11).** The Debtors are liquidating pursuant to the Plan in a manner that complies with the priority scheme and other provisions of the Bankruptcy Code and other applicable law. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

MM.   **Payment of Fees: 11 U.S.C. § 1129(a)(12).** All fees due and payable pursuant to section 1930 of chapter 123 of title 28, United States Code, as determined by the Court, have been or will be paid by the Debtors on the Effective Date pursuant to Article III of the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

NN.   **Continuation of Retiree Benefits: 11 U.S.C. § 1129(a)(13).** The Debtors do not pay any "retiree benefits," as defined in section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

OO.   **Non-Applicability of Certain Sections: 11 U.S.C. § 1129(a)(14)-(16).** Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

PP.   **Confirmation Over Nonacceptance of Impaired Classes: 11 U.S.C. § 1129(b).** Notwithstanding the fact that certain Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because (a) Class 4, a Class comprised of creditors whose Claims are Impaired, voted to accept the Plan; (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Claims and Equity Interests in

the rejecting Classes; (c) the Plan has been proposed in good faith and is reasonable; (d) the Plan meets the requirements that (i) no Holder of any Claim or Equity Interest that is junior to each of the rejecting Classes will receive or retain any property under the Plan on account of such junior Claim or Equity Interest and (ii) no Holder of a Claim or Equity Interest in a Class senior to such rejecting Classes is receiving more than 100% on account of its Claim. Accordingly, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

QQ.   **Only One Plan: 11 U.S.C. § 1129(c).** The Plan is the only plan subject to confirmation. Section 1129(c) of the Bankruptcy Code has been satisfied.

RR.   **Principal Purpose of the Plan: 11 U.S.C. § 1129(d).** The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, thereby satisfying section 1129(d) of the Bankruptcy Code.

SS.   **Not Small Business Cases: 11 U.S.C. § 1129(e).** These Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

TT.   **Good Faith Solicitation: 11 U.S.C. § 1125(e).** Based on the record before the Court in these Chapter 11 Cases, the Debtors, the Committee, each of their respective Professionals, and each other Exculpated Party have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities arising out of, relating to, or connected with the administration of the Chapter 11 Cases, the preparation and solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the funding of the Plan, the consummation of the Plan, the administration of the Plan and the property to be distributed under the Plan, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code. Each such party has, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

UU. **Plan Implementation.** The terms of the Plan are incorporated by reference and are, except as addressed herein or in any future order of the Court contemplated by this Confirmation Order, proper in all respects, and constitute an integral part of this Confirmation Order. The Plan and this Confirmation Order have been negotiated in good faith and at arm's-length and, subject to the occurrence of the Effective Date, shall bind any Holder of a Claim or Equity Interest and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest is Impaired under the Plan, whether or not such Holder has accepted the Plan, and whether or not such Holder is entitled to a distribution under the Plan. The Plan and this Confirmation Order constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan and this Confirmation Order shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The documents and agreements are essential

15

elements of the Plan, and entry into, and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the Estates, and the Holders of Claims. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

VV.   **Executory Contracts and Unexpired Leases.** The Debtors have exercised sound business judgment in rejecting each of their remaining executory contracts and unexpired leases pursuant to Article IX.A of the Plan, as modified by this Confirmation Order.

WW.   **Exculpations, Injunctions, Releases, and Gatekeeper Provisions.** The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the exculpation, injunctions, stays, releases, and gatekeeping provisions set forth in Article XI of the Plan, as modified herein. Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and injunctions set forth in Article XI of the Plan if, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the settlement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.[3] Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, injunctions, and gatekeeping provisions set forth in the Plan and implemented by this Confirmation

---

[3]   The releases in Article XI.C of the Plan are releases by the Debtors of various third parties. They are not "third-party releases" in that no third parties are providing releases to other third parties. Similarly, the injunction in Article XI.D of the Plan merely implements the exculpations in Article XI.B of the Plan and otherwise enforces the Plan as a whole.

Order are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, creditors, and stakeholders. The releases set forth in Article XI of the Plan are fair to Holders of Claims and are necessary to the proposed reorganization. Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, injunctions, and gatekeeping provisions provided for in Article XI of the Plan, which are appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contain appropriate carve-outs for gross negligence, actual fraud, and willful misconduct. The injunction provisions set forth in Article XI of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the discharge and the release provisions of the Plan, including the release, exculpation, and gatekeeping provisions of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunctions, exculpation, and releases set forth in Article XI of the Plan are consistent with the Bankruptcy Code and applicable law.

XX. **Conditions Precedent to Confirmation.** The conditions precedent to confirmation set forth in Article X.A of the Plan have been satisfied.

YY. **Retention of Jurisdiction.** This Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

ZZ. **Objections.** All parties have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections.

17

AAA.  **Satisfaction of Confirmation Requirements.** Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. **Confirmation.** The Plan, as modified hereby, shall be, and hereby is, confirmed pursuant to section 1129 of the Bankruptcy Code.

2. **Solicitation and Notice.** Notice of the Confirmation Hearing and the solicitation of votes on the Plan: (a) complied with the terms of the Disclosure Statement Order; (b) were appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases; and (c) were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3. **Approval of Plan Modifications.** In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast votes accepting or rejecting the Plan. Accordingly, the Plan is properly before this Court, and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan, as modified.

4. **Objections.** All objections to the Plan not otherwise withdrawn at or prior to the Confirmation Hearing are overruled for the reasons articulated by the Court on the record at the Confirmation Hearing.

5. **Binding Effect.** Pursuant to section 1141(a), and except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, the

provisions of the Plan shall bind any Holder of a Claim against or Equity Interest in the Debtors and such Holder's respective successors and assigns, whether or not such Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

6. **Implementation.** The Debtors, the Creditor Trust, and the Creditor Trustee are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, or other documents created or executed in connection with the Plan. Without further order or authorization of this Court, the Debtors, the Creditor Trust, and the Creditor Trustee, and their successors are authorized and empowered to make non-material modifications to the Plan, Plan Supplement, and other related documents, or otherwise modify the same as necessary to conform to the terms of the Plan and this Confirmation Order. Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms. The Creditor Trustee shall have the authority to act on behalf of the Debtors to the extent necessary, appropriate, or desirable to effectuate the provisions of the Plan, the Creditor Trust Agreement, and this Confirmation Order.

7. **Plan Classification Controlling.** The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots submitted in connection with voting on the Plan: (a) were solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors for any purpose other than voting on the Plan.

8.      **Dissolution of the Debtors.** Upon the Effective Date pursuant to the Plan, the Debtors shall be deemed dissolved for all purposes, without the necessity for any further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith; *provided, however,* that the Creditor Trustee may, but shall not be required to, file with the appropriate state authority or authorities a certificate or certificates of dissolution, if necessary; *provided, further, however*, that this provision shall not affect the disposition or liquidation of the Debtors' remaining assets or prosecution of Causes of Action.

9.      **Creditor Trust and Creditor Trustee.** The Creditor Trust Agreement, substantially in the form filed in the Plan Supplement, is hereby approved in all respects. The appointment of Stephanie Wickouski of Pivot Management Group, LLC, as the Creditor Trustee, pursuant to the terms of the Creditor Trust Agreement, is hereby approved and the Creditor Trustee is hereby (a) authorized to execute and perform under the Creditor Trust Agreement, to appear and be heard before the Bankruptcy Court on all matters related to the Chapter 11 Cases (as a representative of the Creditor Trust and/or under section 1123(b) of the Bankruptcy Code, as applicable) and (b) vested with all of the powers and authority set forth in the Plan and Creditor Trust Agreement. On or prior to the Effective Date, the Debtors and the Creditor Trustee shall execute the Creditor Trust Agreement and shall take all steps necessary or desirable to establish the Creditor Trust and the beneficial interests therein, pursuant to, and in accordance with, the terms of the Plan and the Creditor Trust Agreement. Upon and following the Effective Date, the Debtors shall irrevocably assign, transfer, convey and deliver (and shall be deemed to have irrevocably assigned, transferred, conveyed and delivered) all of their rights, title, and interest in and to all of the Creditor Trust Assets to the Creditor Trust, free and clear of all Liens, Claims, encumbrances, charges, and other interests, and in accordance with section 1141 of the Bankruptcy

Code, and the Creditor Trust Assets shall automatically vest in the Creditor Trust without further action by any Person. The Creditor Trust Assets shall be held by the Creditor Trust upon and following the Effective Date in trust for the benefit of the Creditor Trust Beneficiaries (as defined in the Plan). In pursuing any Claim, right, or Retained Cause of Action that constitutes a Creditor Trust Asset, the Creditor Trust shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Cause of Action may be brought under the Bankruptcy Code or other applicable law. The Debtors, or anyone acting on their behalf, or any holder of a Claim against or Equity Interest in any of the Debtors, shall not be responsible for any expenses of the Creditor Trust and shall incur no liability in connection with the Creditor Trust (subject to any obligations of the Debtors or post-Effective Date Debtors, as applicable, pursuant to the Plan or Creditor Trust Agreement).

10.     **Vesting of Assets in the Creditor Trust.** As set forth in the Plan, as of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, free and clear of all Liens, Claims, encumbrances, charges, and other interests, except as otherwise provided in this Plan. For the avoidance of doubt, the Creditor Trust Assets shall include any and all utility deposits held or maintained by the Debtors pursuant to the *Order (I)(A) Approving Debtors' Proposed Form of Adequate Assurance of Payment for Future Utility Services, (B) Approving Debtors' Proposed Procedures for Resolving Additional Assurance Requests, and (C) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services; and (II) Granting Related Relief* [Docket No. 98], which, upon the Effective Date, shall be automatically released and shall vest in the Creditor Trust, free and clear of all Liens, Claims, encumbrances, charges, and other interests, in accordance with the terms of

the Plan and this Confirmation Order. On the Effective Date, the Creditor Trust shall be established and shall be authorized to implement and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan or Creditor Trust Agreement as necessary or desirable to consummate the Plan or to carry out the Creditor Trust functions. On and after the Effective Date, the Creditor Trustee shall carry out the Creditor Trust functions on behalf of the Creditor Trust as required by the Creditor Trust Agreement. The Creditor Trust shall be administered and controlled by the Creditor Trustee as set forth in the Plan and the Creditor Trust Agreement.

11.     **Transfer of Retained Causes of Action.** On the Effective Date, the Debtors shall be deemed to have transferred and assigned the Retained Causes of Action to the Creditor Trust pursuant to the Plan and the Creditor Trust Agreement, including but not limited to any and all claims or Causes of Action arising out of demands made by the Debtors as debtors-in-possession. The transfer and assignment of the Retained Causes of Action to the Creditor Trust shall be free and clear of all Liens, Claims, encumbrances, charges, and other interests except as otherwise specifically provided in the Plan. Upon the Effective Date, the Creditor Trust shall be deemed the owner of the Retained Causes of Action with full power and authority to prosecute the Retained Causes of Action.

12.     **Post-Confirmation Governance.** On and after the Effective Date, the Creditor Trustee, or its successor after the effective date of such Person's appointment as the Creditor Trustee consistent with the terms of the Creditor Trust Agreement, shall serve in such capacity through the date the Creditor Trust is dissolved in accordance with the Plan or the Creditor Trust Agreement. The Creditor Trustee shall be deemed the representative of the Estates in accordance with section 1123(b)(3)(B) of the Bankruptcy Code and shall have all powers, authority, and

responsibilities specified in the Plan and Creditor Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, to act on behalf of the Creditor Trust in the Creditor Trustee's discretion solely to implement the Plan.

13. **Distribution Under the Plan.** All distributions under the Plan shall be made in accordance with Article VII of the Plan and this Confirmation Order.

14. **Distribution of Post-Effective Date Creditor Trust Net Assets.** From and after the Effective Date, all Cash comprising Creditor Trust Net Assets and generated by the Creditor Trust from the liquidation, collection, settlement, compromise, prosecution, sale, or other monetization of the Creditor Trust Assets, including any Litigation Proceeds and any other proceeds of the Creditor Trust Assets, shall be retained by the Creditor Trust and, subject to the Plan and this Confirmation Order, distributed by the Creditor Trustee as funds become available. Except to the extent previously paid or reserved for in full in accordance with the Plan or this Confirmation Order, all such proceeds shall be distributed in accordance with the distribution waterfall set forth herein before any distribution may be made on account of any junior category of Allowed Claims. For the avoidance of doubt, to the extent Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, or Allowed Other Priority Claims remain unpaid from and after the Effective Date, such Claims shall be satisfied from the proceeds generated by the Creditor Trust's post-Effective Date monetization of the Creditor Trust Assets, as such proceeds are realized and become available for distribution, in accordance with the priority scheme set forth in the Plan and this Confirmation Order.

15. **Interim Distributions.** The Creditor Trustee may make one or more interim distributions and shall not be required to defer distributions until all of the Creditor Trust Assets

have been fully liquidated; *provided, however*, that each such interim distribution shall comply with the distribution waterfall set forth in the Plan and this Confirmation Order. In connection with any such interim distribution, the Creditor Trustee may retain such reserves from the Creditor Trust Assets as the Creditor Trustee deems reasonably necessary and appropriate for: (a) Allowed but unpaid Claims entitled to prior payment under the Plan; (b) Disputed Claims; (c) Creditor Trust Fees and Expenses; (d) taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets; and (e) contingent, unliquidated, or otherwise unresolved obligations required or permitted to be satisfied, administered, or reserved for under the Plan.

16.     **Notice of Entry of Confirmation Order and Occurrence of Effective Date.** Within five (5) Business Days after the Effective Date, the Debtors shall file with the Bankruptcy Court and serve on all parties in interest in these Chapter 11 Cases notice of: (i) entry of this Confirmation Order and occurrence of the Effective Date; and (ii) the last date to file requests for payment of Administrative Claims and Professional Fee Claims pursuant to the Plan.

17.     **Administrative Claims.** Except as otherwise provided in the Plan or this Confirmation Order, requests for payment of Administrative Claims must be filed no later than the Administrative Claim Bar Date. Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

18.     **Professional Fee Claims.** Unless otherwise excused by an order of the Bankruptcy Court, every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Court order shall file a final application

24

for payment of fees and reimbursement of expenses no later than the Administrative Claim Bar Date. Any such final fee application shall conform to and comply with all applicable rules and regulations contained in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The last date to object to any final fee application shall be the twenty-fourth (24th) day after such fee application has been filed with the Bankruptcy Court. All final fee applications shall be set for hearing on the same day, as the Court's calendar permits, after consultation with counsel to the Debtors and the Committee. Allowed Professional Fee Claims shall be paid in accordance with and pursuant to the Plan and this Confirmation Order.

19.     **Rejection of Executory Contracts and Unexpired Leases.** Pursuant to the Plan, except as otherwise provided in the Plan, this Confirmation Order, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each Debtor is hereby deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date. This Confirmation Order shall constitute approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases as described above upon the occurrence of the Effective Date. Such rejection shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases and satisfy the requirements of section 365 of the Bankruptcy Code, including, without limitation, section 365(d)(4).

20.     **General Authorization.** Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the

25

Plan involving the structure of the Debtors, and any action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any person or entity.

21. **Effectuating Documents; Further Transactions.** On and after the Effective Date, the Creditor Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors and Creditor Trust, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan and the Creditor Trust Agreement.

22. **Payment of Statutory Fees.** All fees payable under 28 U.S.C. § 1930 shall be paid on the Effective Date and thereafter, as appropriate.

23. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

24. **Filing and Recording.** This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law, including, but not limited to, the transfer of any assets of the Debtors' Estates to the Creditor Trust.

25. **Exemption from Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtors and approved by the Court on and after the Petition Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in

27

connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

26. **Exculpation, Releases, and Injunctions.** The exculpations, releases, injunctions, stay, and gatekeeping provisions contained in Article XI of the Plan are hereby approved.

27. **Conditions to the Effective Date.** The Plan shall not become effective unless and until the conditions set forth in the Plan have been satisfied or waived pursuant to the Plan.

28. **Retention of Jurisdiction.** Upon the Effective Date, the Bankruptcy Court may properly retain, and if appropriate, shall exercise jurisdiction over the matters set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

29. **Appeal of the Confirmation Order.** Except as otherwise provided herein, if any provision of this Confirmation Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or Creditor Trustee prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Confirmation Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto, and shall remain binding.

30. **Conflicts Between Confirmation Order and Plan.** The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision, it being the intent of the Court that the Plan is confirmed in its entirety and incorporated herein by this reference. The provisions of the Plan and this Confirmation

Order shall be construed in a manner consistent with each other so as to affect the purposes of each. In the event of any inconsistency between the Plan and this Confirmation Order, the Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court.

31.    **Authorization to Consummate Plan/No Stay.** Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h) and 7062, but subject to Article X of the Plan, the Debtors are authorized to consummate the Plan upon entry of this Confirmation Order, and the Confirmation Order shall take effect on the date hereof.

32.    **Texas Comptroller of Public Accounts.** Notwithstanding any term in the Plan or this Confirmation Order to the contrary, including, but not limited to, Article III, Article VII.I, and Article XI.F of the Plan, the following provisions shall govern the treatment of all Claims held by the Texas Comptroller of Public Accounts ("Texas Comptroller"): (i) nothing provided in the Plan or Confirmation Order shall impair, limit, waive, or otherwise affect any statutory or common law rights of setoff held by the Texas Comptroller in accordance with 11 U.S.C. § 553; (ii) pursuant to 11 U.S.C. § 503(b)(1)(D) of the Bankruptcy Code, the Texas Comptroller shall not be required to file a request for payment or administrative expense application for any post-petition taxes or tax obligations, including franchise taxes, that accrue prior to the Effective Date; (iii) the Texas Comptroller may amend its proofs of claim filed in these Chapter 11 Cases, without leave of court or consent of the Debtors or Creditor Trustee (but any such amendments shall be transmitted to the Debtors and the Creditor Trustee), to reflect tax returns received or any other tax liabilities owed by Debtors to the Texas Comptroller, including those resulting from audits, attributable to periods ending on or before the Effective Date; (iv) nothing provided in the Plan or Confirmation

29

Order shall be construed to preclude the payment of interest on the Texas Comptroller's administrative expense tax claims at the rate provided under applicable non-bankruptcy law, to the extent permitted by 11 U.S.C. §§ 503, 511, and 1129(a)(9); and (v) nothing in the Plan or this Confirmation Order shall affect or impair the Texas Comptroller's rights, claims, or remedies against any non-Debtor third party, including responsible persons or affiliates, under applicable state or federal law. The Debtors or the Creditor Trustee, as applicable, shall file all Texas final franchise tax return(s) (the "Final Franchise Returns") and any other outstanding required tax returns within ninety (90) days after the date of entry of the Confirmation Order or such other date required by applicable state law. Any outstanding tax liability reflected on the Final Franchise Returns filed by the Debtors or the Creditor Trustee shall constitute an Allowed Administrative Tax Claim and shall be paid in full in Cash within seven (7) days of filing or as soon as reasonably practicable, unless otherwise agreed in writing by the Texas Comptroller. For the avoidance of doubt, all Allowed Priority Tax Claims of the Texas Comptroller shall be treated in accordance with the terms set forth in 11 U.S.C. § 1129(a)(9)(C) of the Bankruptcy Code beginning on the Effective Date. In the event of any default in payment, interest on any Allowed Administrative Claim or Allowed Priority Tax Claim of the Texas Comptroller shall accrue at the statutory rate of interest pursuant to the Texas Tax Code § 111.060. The Texas Comptroller preserves all available bankruptcy and state law remedies, if any, in the event of default of payment on claims as laid out herein above.

33. **Insurance Policies.** Notwithstanding anything to the contrary in the Plan, Disclosure Statement, Plan Supplement, Creditor Trust Agreement, or this Confirmation Order, all insurance policies issued to the Debtors as insured parties shall neither be assumed nor rejected.

34.     **The Zurich and Chubb Insurance Programs.** Notwithstanding anything to the contrary in the Plan, Disclosure Statement, this Confirmation Order (except the immediately preceding paragraph number thirty-three (33)), Plan Supplement, Creditor Trust Agreement, any bar date notice or order, claim objection, or any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, or confers Bankruptcy Court jurisdiction), and as a supplement to Article IX.A of the Plan:

(a)     on the Effective Date, all of the insurance policies which have been issued by (i) Zurich American Insurance Company and any of its U.S.-based affiliates (collectively, "Zurich") to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time (collectively and together with any agreements, documents or instruments related thereto entered into by, or issued for the benefit of Zurich, as amended, modified or supplemented and including any exhibit or addenda thereto, the "Zurich Insurance Program"), and (ii) ACE American Insurance Company, Federal Insurance Company and any of their respective U.S.-based affiliates and predecessors (collectively, "Chubb") to, or which provide coverage to, any of the Debtors (or any of their predecessors) at any time (collectively and together with any agreements, documents or instruments related thereto entered into by, or issued for the benefit of Chubb, as amended, modified or supplemented and including any exhibit or addenda thereto, the "Chubb Insurance Program"), shall continue in full force and effect thereafter in accordance with their respective terms and conditions;

(b)     nothing shall alter or modify the terms and conditions of the Zurich Insurance Program or the Chubb Insurance Program, or the rights and obligations thereunder, and any such rights and obligations shall be determined in accordance with the terms and conditions of the Zurich Insurance Program or the Chubb Insurance Program no matter when such obligations arose or arise, and without the need for Zurich or Chubb to file a proof of Claim, Administrative Claim, or cure Claim, object to any cure amount, or file a motion for setoff or recoupment; provided that any and all rights of the Debtors to dispute such obligations are expressly reserved except that any payments made to Zurich or Chubb at any time shall not be subject to avoidance under the Bankruptcy Code or applicable law;

(c)     other than as set forth in subpart (a) above, nothing shall permit or otherwise effectuate a sale, assignment or other transfer of the Zurich Insurance Program or the Chubb Insurance Program and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Zurich Insurance Program or the Chubb Insurance Program, or any collateral provided on account of the Zurich Insurance Program or the Chubb Insurance Program, without the prior express

written consent of Zurich or Chubb, respectively, or Bankruptcy Court Order entered after the Confirmation Date;

(d)    the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article XI.D hereof, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation or direct action claims against Zurich or Chubb under applicable non-bankruptcy law to proceed with their claims; (ii) Zurich and Chubb to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court: (1) workers' compensation claims, (2) claims where a claimant asserts a direct claim against Zurich or Chubb, as applicable, under applicable non-bankruptcy law, (3) claims where an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article XI.D hereof to proceed with its claim; and (4) all costs in relation to each of the foregoing; and (iii) Zurich and Chubb, respectively, and in each case solely to the extent provided for under, and consistent with, each respective policy, to cancel the Zurich Insurance Program and the Chubb Insurance Program, and take other actions relating thereto, including effectuating a setoff or recoupment, in full dollars, of the Retained Amount (as defined herein);

(e)    notwithstanding anything to the contrary herein, (i) within thirty (30) calendar days of the Effective Date, Zurich shall turnover to the Creditor Trust the amount of $458,821.01 in premium audit returns owed to the Debtors under the Zurich Insurance Program (the "Returned Amounts") and shall retain (x) $120,675.11 in funds returnable to the collateral trust held by Zurich under the Zurich Insurance Program, and (y) $182,079 in premium audit funds (collectively, the "Retained Amounts"); (ii) the Zurich Companies shall release any right to or interest in the Returned Amounts, and the Debtors and the Creditor Trust shall waive and release any right to or interest in the Retained Amounts; and (iii) any liability owed by the Debtors under the Zurich Insurance Program or the Chubb Insurance Program is not transferred to and is not a liability of the Creditor Trust, and, for the avoidance of doubt, on no account shall either the Debtors or Creditor Trust have any further liability or obligation to pay any amount to either Zurich or Chubb, and neither Zurich nor Chubb shall have any further liability to pay any amount to the Debtors or the Creditor Trust on account of the Zurich Insurance Program or Chubb Insurance Program respectively; and

(f)    nothing in the Plan nor this Confirmation Order shall be construed to prevent or prohibit Chubb or Zurich from complying with applicable law with respect to claims under Chubb and Zurich Insurance Programs in accordance with and subject to the terms and conditions thereof.

35.    **Claims of Counterparties to Unexpired Leases.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the automatic disallowance provisions in Article VIII.D of the Plan shall not apply to Claims filed by counterparties to unexpired leases.

32

36.     **Setoff and Recoupment.** Notwithstanding anything to the contrary in the Plan, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of landlords as parties to unexpired leases that have been rejected, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of a landlord to assert any right of setoff or recoup as to a security deposit held pursuant to the terms of their rejected unexpired lease(s) with the Debtors, or any successors to the Debtors, including the Creditor Trustee, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by any Debtor or any successors of the Debtors, including the Creditor Trustee.

37.     **Claims of Governmental Units.** Notwithstanding anything to the contrary in the Plan or this Confirmation Order, consistent with 11 U.S.C. § 503(b)(1)(D), a Governmental Unit shall not be required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1)(B) or 11 U.S.C. § 503(b)(1)(C), as a condition of its being an Allowed Administrative Claim; *provided, however*, that the Creditor Trust shall retain all of the Debtors' defenses to such requests.

# # # **End of Order** # # #

Order submitted by:

*/s/ Holland N. O'Neil*
**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
mmoore@foley.com
sajones@foley.com
zzahn@foley.com

-and-

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

*Counsel for the Debtors*

## Exhibit A

**Debtors' First Amended Joint Chapter 11 Plan of Liquidation**

**ROPES & GRAY LLP**
Chris L. Dickerson (admitted *pro hac vice*)
Rahmon J. Brown (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

**FOLEY & LARDNER LLP**
Holland N. O'Neil (TX 14864700)
Mark C. Moore (TX 24074751)
Stephen A. Jones (TX 24101270)
Zachary C. Zahn (TX 24137675)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
honeil@foley.com
mmoore@foley.com
sajones@foley.com
zzahn@foley.com

*Counsel for the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| TGI Friday's Inc., *et al.*,[1] | Case No. 24-80069-sgj11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: TGI Friday's Inc. (7117); TGI Friday's NY, LLC (2281); TGIF Holdings, LLC (7999); TGIF Midco, Inc. (7296); TGIF Parent, Inc. (1781); Burlington Towne Crossing, Inc. (7501); T G I Friday's of Greenbelt, Inc. (5617); T G I Friday's of Towson, Inc. (5450); T G I Friday's of Wisconsin, Inc. (7600); T.G.I. Friday's Marketing Advisory Council (6527); T.G.I. Friday's of Charles County, Inc. (3516); T.G.I. Friday's of Frederick County, Inc. (2547); T.G.I. Friday's of Harford County, Inc. (0072); T.G.I. Friday's of Washington County, Inc. (6174); TGI Friday's of Annapolis, Inc. (8315); TGI Friday's of Howard County, Inc. (0119); TGI Friday's of Rockville, Inc. (2004); TGI Friday's of Texas LLC (3931); TGI Friday's of the Rockies, Inc. (7885); TGIF/DFW Manager, LLC (N/A); TGIF/DFW Partner, LLC (N/A); TGIF/JDC Restaurant Development, LLC (N/A); WEBCO Products Incorporated (3014). The Debtors' service address is 19111 North Dallas Parkway, Suite 200, Dallas, TX 75287.

## TABLE OF CONTENTS

ARTICLE I INTRODUCTION .................................................................................................... 1

ARTICLE II DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES ................................................................... 1

    **A.**    Defined Terms. ..................................................................................................... 1

    **B.**    Rules of Interpretation. ........................................................................................ 8

    **C.**    Computation of Time. .......................................................................................... 9

    **D.**    Governing Law. .................................................................................................... 9

    **E.**    References to Monetary Figures. .......................................................................... 9

    **F.**    Controlling Document. ......................................................................................... 9

ARTICLE III ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ................................................................................................................................. 9

    **A.**    Administrative Claims. ........................................................................................ 9

    **B.**    Professional Fee Claims. .................................................................................... 10

    **C.**    Priority Tax Claims. ........................................................................................... 10

    **D.**    U.S. Trustee Fees. .............................................................................................. 11

ARTICLE IV CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS ............. 11

    **A.**    Classes Entitled to Vote. .................................................................................... 12

    **B.**    Elimination of Classes. ...................................................................................... 12

    **C.**    Controversy Concerning Impairment ................................................................. 12

    **D.**    Class Acceptance Requirement .......................................................................... 12

    **E.**    Cramdown. ......................................................................................................... 12

ARTICLE V TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................................... 12

    **A.**    Class 1 – Other Secured Claims ......................................................................... 12

    **B.**    Class 2 – Prepetition Notes Claims .................................................................... 13

    **C.**    Class 3 – Other Priority Claims. ........................................................................ 13

    **D.**    Class 4 – General Unsecured Claims. ................................................................. 13

    **E.**    Class 5 – Subordinated Claims. ......................................................................... 13

    **F.**    Class 6 – Intercompany Claims. ........................................................................ 13

    **G.**    Class 7 – Equity Interests ................................................................................... 13

ARTICLE VI MEANS OF IMPLEMENTATION ....................................................................... 14

    **A.**    General Settlement of Claims and Equity Interests. ........................................... 14

    **B.**    Limited Substantive Consolidation. ................................................................... 14

    **C.**    The Creditor Trust .............................................................................................. 14

    **D.**    Dissolution of Committee and Cessation of Fee and Expense Payments. ........... 19

E.    Section 1145 Exemption. .............................................................................................20

F.    Cancellation of Existing Securities. ...........................................................................20

G.    Corporate Action. ........................................................................................................20

H.    Directors and Executive Officers. ..............................................................................20

I.    Retained Causes of Action. .........................................................................................20

J.    Effectuating Documents; Further Transactions. ........................................................21

K.    Exemption from Certain Transfer Taxes. ...................................................................21

ARTICLE VII DISTRIBUTIONS ...........................................................................................21

A.    Date of Distributions. ..................................................................................................21

B.    Sources of Cash for Plan Distributions. .....................................................................21

C.    Manner of Distributions. .............................................................................................22

D.    Record Date for Distributions. ....................................................................................22

E.    Delivery of Distributions; Unclaimed Property. ........................................................22

F.    Means of Payment. ......................................................................................................22

G.    Distributions After Effective Date. .............................................................................22

H.    Withholding and Reporting Requirements. ................................................................22

I.    No Postpetition Interest. ..............................................................................................23

J.    Time Bar to Payments. ................................................................................................23

K.    De Minimis Distributions. ...........................................................................................23

ARTICLE VIII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS .............24

A.    Objections to Claims. ..................................................................................................24

B.    No Distributions Pending Allowance. .........................................................................24

C.    Distributions After Allowance. ...................................................................................24

D.    Automatic Disallowance of Duplicate, Amended, and Late Filed Claims. ................24

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .............24

A.    Rejection of Contracts and Leases. .............................................................................24

B.    Inclusiveness. ..............................................................................................................25

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF THE
PLAN ........................................................................................................................................25

A.    Conditions to Confirmation of the Plan. .....................................................................25

B.    Conditions to the Effective Date of the Plan. .............................................................25

C.    Waiver of Conditions Precedent. ................................................................................25

D.    Effect of Failure of Conditions. ..................................................................................26

E.    Reservation of Rights. .................................................................................................26

ii

ARTICLE XI EFFECT OF CONSUMMATION .................................................................................26

    **A.**   Revesting of Assets. ..........................................................................................................26

    **B.**   Exculpation. ......................................................................................................................26

    **C.**   Releases by the Debtors. ...................................................................................................27

    **D.**   Injunction and Stay. .........................................................................................................27

    **E.**   Gate Keeping. ...................................................................................................................27

    **F.**   Setoffs and Recoupment. ..................................................................................................28

    **G.**   Compromise of Controversies. .........................................................................................28

ARTICLE XII RETENTION OF JURISDICTION ...........................................................................28

ARTICLE XIII MISCELLANEOUS ..................................................................................................29

    **A.**   Filing of Additional Documents. .....................................................................................29

    **B.**   Schedules, Exhibits, and Plan Supplement Incorporated. ...............................................29

    **C.**   Amendment or Modification of the Plan. .........................................................................30

    **D.**   Inconsistency. ...................................................................................................................30

    **E.**   Expedited Tax Determination. .........................................................................................30

    **F.**   Binding Effect. .................................................................................................................30

    **G.**   Severability. .....................................................................................................................30

    **H.**   No Payment of Attorneys' Fees. ......................................................................................30

    **I.**   Notices. ............................................................................................................................30

# ARTICLE I
# INTRODUCTION

The above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") propose this first amended joint chapter 11 plan of liquidation (the "Plan") for the resolution of the outstanding Claims against and Equity Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for the other Debtor. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Equity Interests pursuant to the Bankruptcy Code. **Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.**

Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties, and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.**

# ARTICLE II
# DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

## A.     *Defined Terms.*

1.     *Administrative Claim* means any Claim for the costs and expenses of administration of the Chapter 11 Cases pursuant to section 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the business of the Debtors, other than Professional Fee Claims.

2.     *Administrative Claim Bar Date* means the deadline to file all Administrative Claims, which shall be the first Business Day that is at least thirty (30) days after the Effective Date.

3.     *Affiliate* has the meaning ascribed in section 101(2) of the Bankruptcy Code.

4.     *Allowed* means, with respect to any Claim or Equity Interest, a Claim or an Equity Interest expressly allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

5.     *Avoidance Actions* means any and all actual or potential avoidance, recovery, subordination, or other similar Claims and Causes of Action that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, or other similar related, local, state, federal statutes and common law.

6.     *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time.

7.     *Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court of the United States having jurisdiction over the Chapter 11 Cases.

8.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended and in effect from time to time.

9.    ***Bar Date*** means the last date to file proofs of claim against the Debtors, which was March 12, 2025, for all creditors except Governmental Units, and May 1, 2025, for Governmental Units.

10.    ***Business Day*** means any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

11.    ***Cash*** means legal tender of the United States of America.

12.    ***Causes of Action*** means all of the Debtors' rights, remedies, and Claims that the Debtors have against any third party (including current and former directors and officers of the Debtors), including, without limitation and by way of example only, breach of contract, negligence, avoidance, among others, and Avoidance Actions.

13.    ***Chapter 11 Cases*** means the above-captioned jointly administered chapter 11 cases of the Debtors.

14.    ***Claim*** means a claim against a Debtor within the meaning of section 101(5) of the Bankruptcy Code.

15.    ***Class*** means any group of Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

16.    ***Collateral*** means any interest in property of the Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

17.    ***Committee*** means the official committee of unsecured creditors appointed by the Office of the United States Trustee for the Northern District of Texas in the Chapter 11 Cases on November 14, 2024 [Docket No. 148] as may be reconstituted from time to time by the U.S. Trustee.

18.    ***Confirmation*** means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

19.    ***Confirmation Date*** means the date upon which the Bankruptcy Court confirms the Plan and enters the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

20.    ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to sections 1128(a) and 1129 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

21.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.    ***Consummation*** means the occurrence of the Effective Date.

2

23.     ***Creditor Trust*** means the trust to be established on the Effective Date pursuant to the terms of a Creditor Trust Agreement and the Plan, which shall be formed pursuant to, and governed by, the provisions of the Plan and the Creditor Trust Agreement.

24.     ***Creditor Trust Agreement*** means the agreement governing the Creditor Trust dated as of the Effective Date, substantially in the form included in the Plan Supplement.

25.     ***Creditor Trust Assets*** means, in each case except as otherwise expressly excluded by the Plan or the Confirmation Order, (a) the Creditor Trust Funding Amount, (b) all Retained Causes of Action owned by the Debtors or their respective Estates on the Effective Date, including, without limitation, any Litigation Proceeds thereof, and (c) all property of the Debtors or their respective Estates on or after the Effective Date wherever located and by whomever held, including, without limitation, (i) Cash on hand as of the Effective Date (after giving effect to the funding of the Professional Fee Escrow Account) and Cash as may be received after the Effective Date; (ii) any and all receivables of the Debtors; (iii) the rights and interests that the Debtors have as insureds under any and all insurance policies, including, without limitation, insurance refunds and insurance policy proceeds; (iv) any and all proceeds (including Cash) from any and all sales or other dispositions of the property of the Debtors or their respective Estates occurring on or after the Effective Date; (v) any and all deposits, prepayments, and refunds, and (vi) any and all proceeds of the foregoing.

26.     ***Creditor Trust Beneficiaries*** means, collectively, the Holders of Allowed Claims entitled to distributions from the Creditor Trust under the terms of the Plan, including, without limitation, Holders of Allowed Professional Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Prepetition Notes Claims, and Allowed General Unsecured Claims.

27.     ***Creditor Trust Claims Reserve*** means the portion of the Creditor Trust Assets allocable to, or retained on account of, Disputed Claims, with respect to which the Creditor Trust, acting by and through the Creditor Trustee, may determine the appropriate method of United States tax reporting in its sole discretion.

28.     ***Creditor Trust Fees and Expenses*** means the reasonable expenses (including any taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets and professional fees) incurred by the Creditor Trust, any professionals retained by the Creditor Trust, and any additional amount determined to be necessary by the Creditor Trustee to adequately reserve for the operating expenses of the Creditor Trust that shall be paid out of the Creditor Trust Assets. Any claims for indemnification by the Creditor Trust or its professionals shall also be Creditor Trust Fees and Expenses pursuant to the terms of the Plan and the Creditor Trust Agreement.

29.     ***Creditor Trust Funding Amount*** means the amount of Cash transferred from the Debtors to the Creditor Trust on the Effective Date.

30.     ***Creditor Trust Interests*** means the beneficial interests in the Creditor Trust issued to Creditor Trust Beneficiaries pursuant to the Plan and the Creditor Trust Agreement.

31.     ***Creditor Trust Net Assets*** means Creditor Trust Assets less Creditor Trust Fees and Expenses.

32.     ***Creditor Trustee*** means the trustee for the Creditor Trust to be selected by the Committee, which Person shall be reasonably acceptable to the Debtors.

33.     ***Debtor*** and ***Debtors*** have the meanings given to them in the Introduction.

34.    ***Disallowed*** means any Claim, or portion thereof, that is not an Allowed Claim or a Disputed Claim.

35.    ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

36.    ***Disputed*** means, when used with respect to a Claim, such Claim, as the case may be (a) to the extent neither Allowed nor Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) with respect to which the Debtors (if prior to the Effective Date) or the Creditor Trust (if after the Effective Date) have made a timely objection, including as a contested matter, adversary proceeding, or otherwise, or request for estimation prior to the Objection Deadline in accordance with the Plan or the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the Effective Date.

37.    ***Distribution Record Date*** means the record date for purposes of receiving distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

38.    ***DOF Election*** means any tax election made by the Creditor Trust, acting by and through the Creditor Trustee at its option, to treat the Creditor Trust Claims Reserve as a "disputed ownership fund" or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for United States federal income tax purposes (and, to the extent permitted by applicable law, for United States federal, state, and local income tax purposes), rather than as part of the Creditor Trust Assets.

39.    ***DOF*** means a disputed ownership fund or other separate entity established pursuant to a DOF Election.

40.    ***Effective Date*** means the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan. For the avoidance of doubt, any action that must be taken on the Effective Date under the terms of the Plan may be taken on or as soon as reasonably practicable thereafter.

41.    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

42.    ***Equity Interests*** means any "equity security" of the Debtors, as that term is defined in section 101(16) of the Bankruptcy Code, including, but not limited to, all issued, unissued, authorized, or outstanding shares or membership interests together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

43.    ***Estates*** means the estates of the Debtors as created under section 541 of the Bankruptcy Code.

44.    ***Exculpated Party*** or ***Exculpated Parties*** means, in each case solely in their capacity as such: (a) the Debtors, (b) any independent director or manager of the Debtors, and (c) the Committee and its members, each in their capacities as such.

45.    ***Final Decree*** means the decree contemplated by Bankruptcy Rule 3022.

4

46.     ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for *certiorari*, or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari*, or move for a stay, new trial, reargument or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

47.     ***First Day Declaration*** means the *Declaration of Kyle Richter, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Moti*ons [Docket Nos. 28, 30].

48.     ***General Unsecured Claim*** means any Claim against a Debtor that is not a (a) Secured Claim or Other Secured Claim; (b) Prepetition Notes Claim; (c) Administrative Claim; (d) Priority Tax Claim; (e) Other Priority Claim; (f) Professional Fee Claim; (g) Subordinated Claim; (h) Intercompany Claim; or (i) Equity Interest; *provided, however*, for the avoidance of doubt, the definition of General Unsecured Claim includes the Securitization Entities' GUC Claim.

49.     ***Governmental Unit*** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

50.     ***Holder*** means a Person holding a Claim against, or an Equity Interest in, any Debtor, as applicable.

51.     ***Impaired*** means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

52.     ***Indemnified Parties*** have the meaning set forth in <u>Article VI.C.18</u> of the Plan.

53.     ***Insider*** means any Person who is an "insider" as such term is defined in section 101(31) of the Bankruptcy Code, or who may otherwise be determined to be an "insider" under section 101(31) of the Bankruptcy Code by a court of competent jurisdiction.

54.     ***Intercompany Claim*** means a Claim held by one Debtor against another Debtor.

55.     ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

56.     ***Litigation Proceeds*** means any Cash proceeds received by the Creditor Trust on account of the prosecution, settlement, or other disposition of the Retained Causes of Action.

57.     ***Local Rules*** means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas, as the same may be amended or modified from time to time.

58.     ***Objection Deadline*** means the later of (i) with respect to Secured, Administrative, or Priority Claims (a) one hundred eighty (180) days after the Effective Date or (b) such later date as may be

ordered by the Bankruptcy Court prior to the expiration of such one hundred eighty (180) day period, upon motion; and (ii) with respect to Unsecured Claims, (a) three hundred sixty five (365) days after the Effective Date or (b) such later date as may be ordered by the Bankruptcy Court prior to the expiration of such three hundred sixty-five (365) day period, upon motion.

59.     *Other Priority Claim* means any Claim other than an Administrative Claim, Priority Tax Claim, or Professional Fee Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

60.     *Other Secured Claim* means a Secured Claim against the Debtors that is not a Prepetition Notes Claim.

61.     *Person* means an Entity, individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government, agency, or political subdivision thereof, or any other form of legal entity.

62.     *Petition Date* means November 2, 2024.

63.     *Plan* means this Plan, as the same may be amended, supplemented, or otherwise modified from time to time, including any exhibits and schedules hereto.

64.     *Plan Supplement* means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be filed with the Bankruptcy Court on or before the Effective Date, including, but not limited to, the Creditor Trust Agreement and the disclosure of the Professional Fee Funding Amount, and any additional documents filed as amendments to the Plan Supplement. The Plan Supplement shall be deemed incorporated into and part of the Plan as if set forth herein in full; *provided, however*, in the event of a conflict between the Plan and the Plan Supplement, the Plan shall control.

65.     *Prepetition Noteholder* means a Holder of a Prepetition Notes Claim.

66.     *Prepetition Notes Claim* means any Claim arising under, based upon, relating to, or in connection with the Debtors' funded principal debt and interest obligations evidenced by or arising from (i) that certain Yadav Kids Note, (ii) that certain Table Turn Note, and (iii) that certain Freebird Note, each as defined in the First Day Declaration.

67.     *Priority Tax Claim* means any Claim of a Governmental Unit against the Debtors entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code or as specified in section 502(i) of the Bankruptcy Code.

68.     *Pro Rata* means the proportion that the amount of an Allowed Claim or Allowed Equity Interest in a particular Class or group of Claims bears to the aggregate amount of all Allowed Claims or Allowed Equity Interests in such Class or group of Claims.

69.     *Professional* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

70. ***Professional Fee Claim*** means any Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

71. ***Professional Fee Escrow Account*** means the escrow account established by the Debtors and funded by the Debtors with Cash in an amount equal to the Professional Fee Funding Amount on or prior to the Effective Date on account of certain Professional Fee Claims incurred between the Petition Date and the Effective Date in connection with the Plan.

72. ***Professional Fee Funding Amount*** means the aggregate amount of Professional Fee Claims incurred by the Debtors, the Committee, and their Professionals in connection with the drafting, filing, solicitation, and Consummation of the Plan and related transactions, as agreed among the Debtors, the Committee, and their Professionals, and as set forth in the Plan Supplement, including the Wind-Down Budget; *provided, however*, such Professionals covered by the Professional Fee Funding Amount shall be limited to Foley & Lardner, LLP, Berkeley Research Group, LLC, Pachulski Stang Ziehl & Jones, LLP, and Province.

73. ***Professional Fee Remaining Balance*** means the aggregate total sum of all Allowed Professional Fee Claims incurred by the Professionals in rendering services to the Debtors, the Committee, and the Estates from the Petition Date through the Effective Date (less the Professional Fee Funding Amount and any amounts paid prior to the Effective Date).

74. ***Released Party*** or ***Released Parties*** has the meaning set forth in Article XI.C of the Plan.

75. ***Retained Causes of Action*** means all of the Debtors' Causes of Action, including, but not limited to, Avoidance Actions, which, as of the Effective Date have not been sold, transferred, settled, waived, or released pursuant to the Plan, upon order of the Bankruptcy Court or otherwise, all of which shall be reserved, retained, assigned, and transferred to the Creditor Trust.

76. ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, if any, as such schedules may be amended, modified, or supplemented from time to time.

77. ***Secured Claim*** means a Claim, other than a Prepetition Notes Claim, secured by a Lien that is valid, perfected and enforceable, and not avoidable, upon property in which a Debtor has an interest, to the extent of the value, as of the Effective Date, of such interest or Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed to in writing by the Debtor in question and the Holder of such Claim. To the extent a Claim exceeds the value of the Collateral securing such Claim, such deficiency shall constitute a General Unsecured Claim.

78. ***Securitization Entities*** means TGIF SPV Guarantor, LLC, TGIF Funding, LLC, and TGI Fridays Franchisor, LLC.

79. ***Securitization Entities' GUC Claim*** means the General Unsecured Claim of the Securitization Entities in the amount of $36,907,375.11, as reflected in Claim Nos. 522, 523, and 584, which, on the Effective Date, shall be Allowed in full, collectively, as an Allowed General Unsecured Claim.

7

80. **_Subordinated Claim_** means any Claim (i) arising from: (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim or (ii) subject to subordination in accordance with section 510(c) of the Bankruptcy Code or otherwise.

81. **_U.S. Trustee Fees_** means all fees payable under section 1930 of title 28 of the United States Code.

82. **_U.S. Trustee_** means the Office of the United States Trustee.

83. **_Unimpaired_** means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

84. **_Wind-Down Budget_** means the budget, schedule, or other summary to be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time in accordance with the Plan, setting forth, among other things, (i) the amount of the Professional Fee Funding Amount, (ii) the projected amount of Cash on hand as of the Effective Date (after giving effect to all Effective Date payments and fundings required under the Plan), (iii) the anticipated funding amount of the Creditor Trust and the composition of the Creditor Trust Assets (to the extent applicable), and (iv) the projected distribution waterfall to Holders of Allowed Claims in accordance with the priorities established by the Plan.

## B. *Rules of Interpretation.*

For purposes of the Plan, except as otherwise provided in the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (4) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (5) any effectuating provisions may be interpreted by the Debtors or the Creditor Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Equity Interests," "Disputed Equity Interests," and the like as applicable; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (13) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

8

### C.      Computation of Time.

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.      Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate governance matters relating to the Debtors shall be governed by the laws of the state of incorporation or formation of the relevant Debtor.

### E.      References to Monetary Figures.

All references in the Plan to monetary figures refer to the currency of the United States of America, unless otherwise expressly provided herein.

### F.      Controlling Document.

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of any inconsistency between or among the Disclosure Statement, the Plan, the Plan Supplement, and the Confirmation Order, the Confirmation Order shall control.

### <u>ARTICLE III</u>
### ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, the following Claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in <u>Article IV</u>.

### A.      Administrative Claims.

All Holders of Administrative Claims shall file with the Bankruptcy Court a request for payment of such Claims on or before the Administrative Claim Bar Date. Any such request must be served on the Debtors and their counsel, and must, at a minimum, set forth (i) the name of the Holder of the Administrative Claim; (ii) the amount of the Administrative Claim; and (iii) the legal and factual bases for the Administrative Claim. A failure to file any such request in a timely fashion will result in the Administrative Claim in question being discharged and its Holder forever barred from asserting such Administrative Claim against the Debtors or any other Person.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a different treatment of such Claim or objects in writing to its treatment hereunder, each Holder of an Allowed Administrative Claim shall receive, on account of and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Administrative Claim, an amount equal to the Allowed amount of such Administrative Claim on (or as soon as reasonably practicable after) the later of (A) the Effective Date or (B) the date that entry of an order by the Bankruptcy Court allowing such Administrative Claim becomes a Final Order. For the avoidance of doubt, the Creditor Trustee shall be tasked with making distributions to

9

Holders of Allowed Administrative Claims in accordance with the terms of the Plan and Creditor Trust Agreement from Creditor Trust Net Assets.

### B.      *Professional Fee Claims.*

Every Professional holding a Professional Fee Claim that has not previously been the subject of a final fee application shall file a final application for payment of fees and reimbursement of expenses no later than forty-five (45) days after the Effective Date. Any such final fee application shall conform to and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

Professional Fee Claims covered by the Professional Fee Funding Amount shall be paid by the Creditor Trustee from the Professional Fee Escrow Account. To the extent there are insufficient funds on hand in the Professional Fee Escrow Account to pay in full all of the Professional Fee Claims covered by the Professional Fee Funding Amount, such Professional Fee Claims shall be paid in full in Cash by the Creditor Trust from Creditor Trust Net Assets.

Prior to the funding of the Creditor Trust as provided in the Plan, the Debtors shall establish the Professional Fee Escrow Account, which shall be funded by the Debtors in the Professional Fee Funding Amount from available Cash on or prior to the Effective Date, in accordance with the Wind-Down Budget. Following the Effective Date, the Creditor Trustee shall pay Allowed Professional Fee Claims covered by the Professional Fee Funding Amount from the Professional Fee Escrow Account as such Professional Fee Claims are Allowed, up to the amounts available in the Professional Fee Escrow Account, after application of any retainers.

Notwithstanding anything to the contrary in the Plan, any Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance shall be subordinate to, and shall only be paid after, all Allowed Administrative Claims and all Allowed Priority Tax Claims have been satisfied in full in accordance with the Plan. Following such satisfaction in full of all Allowed Administrative Claims and all Allowed Priority Tax Claims in accordance with the Plan, the Creditor Trustee shall distribute Pro Rata to Professionals holding Allowed Professional Fee Claims included in the Professional Fee Remaining Balance (i) all available Creditor Trust Net Assets and (ii) any other Cash designated for satisfying the Professional Fee Remaining Balance in the Plan or Plan Supplement, in each case, until all such Allowed Professional Fee Claims have been paid in full.

### C.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim has agreed or agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive on (or as soon as reasonably practicable after) the Effective Date, at the Creditor Trustee's option and upon the payment in full of all other Allowed Administrative Claims: (i) Cash in an amount equal to the Allowed amount of such Allowed Priority Tax Claim; (ii) a lesser amount in one Cash payment as may be agreed in writing by such Holder; or (iii) regular installment payments of Cash (a) having a total value, as of the Effective Date, equal to the Allowed amount of the Allowed Priority Tax Claim, (b) over a period ending not later than five (5) years after the Petition Date and (c) in a manner not less favorable than the most favored nonpriority Allowed General Unsecured Claims provided for by the Plan. For the avoidance of doubt, Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance shall not be paid until all Allowed Priority Tax Claims have been satisfied in full in accordance with the Plan.

10

To the extent interest is required to be paid on any Allowed Priority Tax Claim, the rate of such interest shall be the rate determined under applicable non-bankruptcy law, as set forth in section 511 of the Bankruptcy Code. Notwithstanding the foregoing, any penalty arising with respect to or in connection with an Allowed Priority Tax Claim shall be treated as a General Unsecured Claim. The Debtors and the Creditor Trustee, as applicable, reserve the right to setoff against or recoup from any Allowed Priority Tax Claim any right to payment that any of the Debtors may have against the Holder of an Allowed Priority Tax Claim due to levies assessed against the Debtors, the Estates, or otherwise.

### D.      U.S. Trustee Fees.

All U.S. Trustee Fees shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Cases shall be paid by the Creditor Trustee, *provided*, *however*, that the Creditor Trust shall not be required to pay U.S. Trustee Fees on account of the disbursement of Creditor Trust Assets on which U.S. Trustee Fees were already paid in connection with their transfer to the Creditor Trust.

## <u>ARTICLE IV</u>
## CLASSIFICATION AND VOTING OF CLAIMS AND EQUITY INTERESTS

This Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims and Equity Interests addressed elsewhere in the Plan, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or an Equity Interest is also classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Equity Interests against each Debtor (as applicable) pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Equity Interests set forth herein shall apply separately to each of the Debtors, each as applicable. All of the potential Classes for the Debtors are set forth herein. Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and all Debtors will continue to exist as separate legal Entities after the Effective Date.

| Class | Claim or Interest | Impairment | Entitled to Vote |
|:---:|---|:---:|:---:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Prepetition Notes Claims | Impaired | Entitled to Vote |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

| Class | Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| 6 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### A. Classes Entitled to Vote.

The Holders of Claims in Classes 1 and 3 are Unimpaired, as they will be paid in full or, if applicable, entitled to retain their Collateral. As a result, all Holders of Claims in Classes 1 and 3 are conclusively deemed to have accepted the Plan. The Holders of Claims in Classes 2 and 4 are Impaired and are entitled to vote to accept or reject the Plan. The Holders of Claims and Equity Interests in Classes 5, 6, and 7 are Impaired and are conclusively deemed to reject the Plan and are therefore not entitled to vote to accept or reject the Plan.

### B. Elimination of Classes.

Any Class that does not contain any Allowed Claims or any Claims temporarily Allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed not included in the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

### C. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests, or any Class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### D. Class Acceptance Requirement.

A Class of impaired Claims entitled to vote on the Plan shall have accepted the Plan if the Holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Claims in such Class who have voted on the Plan have voted to accept the Plan.

### E. Cramdown.

To the extent that any Class is impaired under the Plan and such Class fails to accept the Plan in accordance with section 1126(c) or (d) of the Bankruptcy Code, the Debtors hereby request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE V
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. Class 1 – Other Secured Claims.

Except to the extent a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive: (i) Cash payment in full of its Allowed Other Secured Claims; (ii) the Collateral securing such Allowed Other Secured Claim and

12

payment of any interest required under section 506(b) of the Bankruptcy Code; or (iii) such other treatment that renders such Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

**B.      Class 2 – Prepetition Notes Claims.**

Except to the extent a Holder of an Allowed Prepetition Notes Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Prepetition Notes Claim, each Holder of an Allowed Prepetition Notes Claim shall receive the amount of such Prepetition Notes Claim as an Allowed General Unsecured Claim to be paid Pro Rata with the other General Unsecured Claims from the Creditor Trust Net Assets.

**C.      Class 3 – Other Priority Claims.**

Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive (a) Cash on (or as soon as reasonably practicable after) the Effective Date in an amount equal to such Allowed Other Priority Claim or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

**D.      Class 4 – General Unsecured Claims.**

Except to the extent that a Holder of an Allowed General Unsecured Claim against a Debtor agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed General Unsecured Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by the Debtors prior to the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata share of the Creditor Trust Net Assets remaining after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Professional Fee Claims (including, for the avoidance of doubt, all Allowed Professional Fee Claims constituting the Professional Fee Remaining Balance), Allowed Other Secured Claims, and Allowed Other Priority Claims.

**E.      Class 5 – Subordinated Claims.**

On the Effective Date, all Holders of Allowed Subordinated Claims shall be entitled to no recovery under the Plan.

**F.      Class 6 – Intercompany Claims.**

On the Effective Date, all Intercompany Claims shall be settled, canceled, released, and discharged without payment or distribution of any Cash or other property. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan and are not entitled to vote.

**G.      Class 7 – Equity Interests.**

On the Effective Date, all Equity Interests, other than Equity Interests in TGIF SPV Guarantor, LLC, shall be canceled, released, and extinguished and shall be of no further force and effect, and Holders of Equity Interests shall not receive any distribution on account thereof and no recovery under the Plan.

### ARTICLE VI
### MEANS OF IMPLEMENTATION

**A.      *General Settlement of Claims and Equity Interests.***

Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and is within the range of reasonableness. Subject to the terms of the Plan, all distributions made to Holders of Allowed Claims and Allowed Equity Interests in any Class are intended to be and shall be final.

**B.      *Limited Substantive Consolidation.***

The Plan provides for potential recoveries on account of Allowed Claims, regardless of the Debtor entity against which such Allowed Claims are asserted. For purposes of voting, distributions, and all other purposes under the Plan, all assets and liabilities of the Debtors shall be treated as if they were substantively consolidated, and all Claims against any Debtor or Debtors based upon any guarantee, joint and several liability, co-obligation, or other similar theory shall be treated as a single Claim against the consolidated Estates, and any duplicative Claims shall be disallowed. The Debtors shall not be consolidated for any other purpose. To the extent necessary, the Plan shall serve as a motion seeking, and entry of the Confirmation Order shall constitute, the approval, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, effective as of the Effective Date, of such limited substantive consolidation for voting and distribution on account of Allowed Claims. The limited substantive consolidation provided for herein shall not (a) affect the legal or corporate structure of any of the Debtors, (b) cause the merger or consolidation of any legal entities, or (c) affect the mutuality requirement for purposes of setoff under section 553 of the Bankruptcy Code.

**C.      *The Creditor Trust.***

**1.      Establishment of the Creditor Trust.**

The Creditor Trust shall be established on the Effective Date pursuant to the terms of the Creditor Trust Agreement and the Plan, and shall initially be funded with the Creditor Trust Assets.

**2.      Purpose of the Creditor Trust.**

The Creditor Trust shall be established for the primary purpose of (a) liquidating, holding, managing, and distributing the Creditor Trust Assets in accordance with the terms of the Plan and the Creditor Trust Agreement, (b) winding down and administering the Debtors' Estates, including, without limitation, objecting to, resolving, reconciling, and paying or otherwise treating Claims against the Debtors in the order of priority set forth in the Plan, (c) managing any remaining activities necessary to complete final transfer of sold assets, and (d) prosecuting, settling, abandoning, or otherwise resolving the Retained Causes of Action and distributing the Litigation Proceeds thereof in accordance with the Plan. For the avoidance of doubt, distributions of Creditor Trust Assets shall be made by the Creditor Trustee to Holders of Allowed

14

Claims in accordance with the priorities and other terms set forth in the Plan and the Creditor Trust Agreement.

### 3. The Creditor Trustee.

The Creditor Trustee shall be selected by the Committee, in consultation with the Debtors, subject only to Bankruptcy Court approval at the Confirmation Hearing. The Creditor Trust, acting by and through the Creditor Trustee, shall be a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Creditor Trustee may prosecute, settle, liquidate, and otherwise administer the Creditor Trust Assets on behalf of the Creditor Trust, without the need for Bankruptcy Court approval or any other notice or approval, except as set forth in the Creditor Trust Agreement, and shall also be responsible for, among other things, objecting to and otherwise resolving Claims. The Creditor Trust and the Creditor Trustee shall be exempt from giving any bond or other security in any jurisdiction.

### 4. Execution of Creditor Trust Agreement.

On the Effective Date, the Creditor Trust Agreement shall be executed, and all other necessary steps shall be taken to establish the Creditor Trust and the Creditor Trust Interests with respect thereto. The form of the Creditor Trust Agreement and related ancillary documents shall be mutually acceptable to the Debtors and the Committee, subject only to Bankruptcy Court approval at the Confirmation Hearing.

### 5. Creditor Trust Assets.

The Creditor Trust shall consist of the Creditor Trust Assets. On the Effective Date, the Debtors shall, and shall be deemed to, irrevocably grant, assign, transfer, and convey to the Creditor Trust all rights, title, and interests in and to all of the Creditor Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Creditor Trust Assets shall automatically vest in the Creditor Trust, free and clear of all Liens, Claims, and encumbrances, except with respect to any proceeds to the extent that any valid prepetition liens attach to such proceeds or as otherwise provided in the Plan. The Creditor Trust, acting by and through the Creditor Trustee, may abandon or otherwise not accept any Creditor Trust Assets that the Creditor Trust believes, in good faith, to have no value to, or will be unduly burdensome to, the Creditor Trust. Any Creditor Trust Assets that the Creditor Trust abandons or otherwise does not accept shall not be property of the Creditor Trust.

### 6. Governance and Powers and Duties of the Creditor Trust.

The Creditor Trust shall be governed by the Creditor Trustee in accordance with the Creditor Trust Agreement and in a manner consistent with the Plan. The Creditor Trustee shall have the power and authority to perform the acts described in the Creditor Trust Agreement. The powers, rights, and responsibilities of the Creditor Trustee shall be specified in the Creditor Trust Agreement and shall include, among other things, the authority, power, and responsibility to cause the Creditor Trust to: (a) receive, manage, invest, supervise, and protect Creditor Trust Assets; (b) pay taxes or other obligations incurred by the Creditor Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, independent contractors, professionals, and consultants to advise and assist in the administration, prosecution and distribution of Creditor Trust Assets; (d) calculate and implement distributions of Creditor Trust Assets; (e) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Creditor Trust Agreement and without further order of the Bankruptcy Court, except as otherwise provided therein, Retained Causes of Action; (f) resolve issues involving Claims in accordance with the Plan, including the power to object to, or settle, resolve, or compromise objections or disputes with respect to, Claims, and to subordinate and recharacterize Claims

15

by objection, motion, or adversary proceeding; (g) undertake all administrative functions of the Chapter 11 Cases, including the payment of statutory fees and the ultimate closing of the Chapter 11 Cases; (h) enter into contingency fee agreements or litigation funding agreements as may be necessary in order to pursue the Creditor Trust's interests in the prosecution of Retained Causes of Action; and (i) take action pursuant to such other powers as may be vested in or assumed by the Creditor Trustee pursuant to the Plan, the Creditor Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan.

### 7. Books and Records.

The Creditor Trust shall: (a) take possession of all copies of books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with any sale(s) during the pendency of the Chapter 11 Cases; and (b) provide for the retention and storage of such books, records, and files until such time as the Creditor Trust determines, in accordance with the Creditor Trust Agreement, that retention of same is no longer necessary or beneficial to the Creditor Trust. No further Order of the Court shall be required prior to destroying or abandoning such books and records. The Creditor Trust through the Creditor Trustee shall be deemed to stand in the shoes of the Debtors for purposes of accessing any books and records or information sold to any third-party buyer.

### 8. Cash.

The Creditor Trustee may invest Creditor Trust Assets only in Cash, money market funds, and government securities (as defined in section 2(a)(16) of the Investment Company Act of 1940, as amended); *provided, however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

### 9. Costs and Expenses of the Creditor Trustee.

The Creditor Trust Fees and Expenses shall be paid only out of the Creditor Trust Assets (or from proceeds of Creditor Trust Assets as set forth herein and in the Creditor Trust Agreement). All such costs and expenses must be satisfied or reserved for in full before distributions may be made to Creditor Trust Beneficiaries.

### 10. Compensation of the Trustee.

The Creditor Trustee shall be entitled to reasonable compensation paid exclusively from the Creditor Trust Assets.

### 11. Retention of Professionals by the Creditor Trust.

The Creditor Trust, acting by and through the Creditor Trustee, may retain and reasonably compensate counsel and other professionals out of the Creditor Trust Assets or proceeds of litigation recoveries to assist in its duties on such terms as the Creditor Trust deems appropriate without Bankruptcy Court approval. The Creditor Trust may retain any professional who represented parties in interest (including the Debtors or the Committee) in the Chapter 11 Cases.

### 12. Distribution of Creditor Trust Assets.

The Creditor Trust shall distribute Cash to the Creditor Trust Beneficiaries in accordance with the Plan and the Creditor Trust Agreement. The Creditor Trust shall not make any distributions to Holders of Disputed

16

Claims unless and until such Claims are Allowed. The Creditor Trust shall ensure that sufficient funds are reserved, as determined by the Creditor Trust in its sole discretion, to pay Disputed Claims upon Allowance. The Creditor Trust shall be permitted to reserve and satisfy amounts that (i) are reasonably necessary to meet contingent liabilities and to maintain the value of the Creditor Trust Assets, (ii) are necessary to pay reasonable expenses, including, but not limited to, any taxes imposed on the Creditor Trust or in respect of the Creditor Trust Assets, and (iii) are required to satisfy other liabilities incurred by the Creditor Trust in accordance with the Plan or the Creditor Trust Agreement.

### 13.    Creditor Trust Interests.

Creditor Trust Interests in the Creditor Trust shall not be represented by certificates, receipts, or in any other form or manner, except as maintained in the books and records of the Creditor Trust by the Creditor Trustee, as set forth in the Creditor Trust Agreement. All of the Creditor Trust Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. All Creditor Trust Interests to be issued shall be deemed issued as of the Effective Date. For the avoidance of doubt, ownership of a Creditor Trust Interest will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except the book entry system maintained by the Creditor Trust. The Creditor Trust Interests shall be non-transferable and non-assignable during the term of the Creditor Trust Agreement except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof are submitted to the Creditor Trust, and the Creditor Trust may continue to pay all amounts to or for the benefit of the assigning Creditor Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Creditor Trust may rely upon such proof without the requirement of any further investigation.

### 14.    Federal Income Tax Treatment of the Creditor Trust.

For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditor Trustee, and the Holders of Creditor Trust Interests in the Creditor Trust) shall treat the transfer of the Creditor Trust Assets to the Creditor Trust Beneficiaries, whether Allowed on or after the Effective Date, as (A) a transfer of the Creditor Trust Assets directly to the Holders in satisfaction of General Unsecured Claims, followed by (B) the transfer by such Holders to the Creditor Trust of the Creditor Trust Assets in exchange for, Creditor Trust Interests in the Creditor Trust. Accordingly, the Holders of such Creditor Trust Interests in the Creditor Trust shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Creditor Trust Assets.

### 15.    Tax Reporting.

The Creditor Trust, acting by and through the Creditor Trustee, shall file income tax returns for the Creditor Trust as a grantor trust pursuant to Treasury Regulation section l.671-4(a) and in accordance with this section of the Plan. To the extent required, or if desired by the Creditor Trust, the Creditor Trust shall annually send to each record holder of a Creditor Trust Interest a separate statement setting forth the holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Creditor Trust's taxable income, gain, loss, deduction, or credit will be allocated among the beneficial holders of a Creditor Trust Interest in accordance with each holder's relative beneficial Creditor Trust Interest.

The Creditor Trust, acting by and through the Creditor Trustee, shall have the authority, in its sole discretion, to determine and implement the appropriate method for reporting the Creditor Trust Claims Reserve for United States federal, state, and local income tax purposes, including whether to make a DOF Election. Any such determination, including any DOF Election, shall be binding on the Debtors, the

17

Creditor Trust Beneficiaries, and all Holders of Claims for all tax purposes, and such parties shall cooperate with the Creditor Trustee and shall not take any position inconsistent therewith, except as may be required by a Final Order or other applicable law. All taxes, costs, and expenses associated with the establishment, administration, and tax reporting of the Creditor Trust Claims Reserve, including any DOF established pursuant to a DOF Election, shall be paid from the Creditor Trust Claims Reserve (or, to the extent insufficient, from other Creditor Trust Assets), and the Creditor Trustee shall have no personal liability for any tax consequences to any party in interest arising from the implementation of this section of the Plan. If a DOF Election is made, the Creditor Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for the DOF or other separate entity and the payment of federal and/or state income tax due.

The Creditor Trust shall be responsible for payments, out of the Creditor Trust Assets, of any taxes imposed on the Creditor Trust or the Creditor Trust Assets, including the Creditor Trust Claims Reserve. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Creditor Trust Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Creditor Trustee as a result of the resolutions of such Disputed Claims.

The Creditor Trust may request an expedited determination of taxes of the Creditor Trust, including the Creditor Trust Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

## 16. Dissolution.

The Creditor Trust shall be dissolved and the Creditor Trustee shall be discharged no later than the fifth (5th) anniversary of the Effective Date; *provided, however*, that, the Bankruptcy Court, upon motion by a party in interest, including the Creditor Trust, may extend the term of the Creditor Trust if it is necessary to the liquidation and/or distribution of the Creditor Trust Assets, without prejudice to further extensions, so long as Bankruptcy Court approval of such extension is obtained in conformity with IRS Revenue Procedure 94-45, 1994-2 C.B. 684; *provided, further*, that in no event shall the term of the Creditor Trust extend past the tenth (10th) anniversary of the Effective Date; *provided, further* that neither the Creditor Trust Agreement nor the continued existence of the Creditor Trust shall prevent the Debtors or the Creditor Trustee from closing the Chapter 11 Cases pursuant to section 350 of the Bankruptcy Code and obtaining a Final Decree pursuant to Bankruptcy Rule 3022. The Creditor Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Order closing all of or the last of the Chapter 11 Cases pursuant to section 350(a) of the Bankruptcy Code and (ii) the Creditor Trustee has administered all Creditor Trust Assets and performed all other duties required by the Plan, the Confirmation Order, the Creditor Trust Agreement and the Creditor Trust. The Creditor Trustee shall not unduly prolong the duration of the Creditor Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all Creditor Trust Assets and to affect the distribution of the Creditor Trust Assets to the Creditor Trust Beneficiaries in accordance with the terms of the Plan and Creditor Trust Agreement and terminate the Creditor Trust as soon as practicable. Prior to and upon termination of the Creditor Trust, the Creditor Trust Assets will be distributed to the Creditor Trust Beneficiaries, pursuant to the provisions set forth in the Plan and Creditor Trust Agreement.

If at any time the Creditor Trustee determines that the expense of administering the Creditor Trust is likely to exceed the value of the Creditor Trust Assets, the Creditor Trustee shall have the authority to (i) distribute to the Creditor Trust Beneficiaries any Cash remaining with the Creditor Trust in excess of necessary costs

18

to pay outstanding expenses of the Creditor Trust, including any fees and expenses of the Creditor Trustee and his/her professionals, (ii) donate any Creditor Trust Assets remaining in the Creditor Trust to a non-religious charitable organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code that is unrelated to the Debtors and any Insider of the Debtors and (iii) dissolve the Creditor Trust.

### 17.     Preservation of Privileges.

The actions taken by the Debtors or the Committee shall not be (or be deemed to be) a waiver of any privilege, including any attorney-client privilege or work-product privilege attaching to any document or communications (whether written or oral). Notwithstanding the Debtors or the Committee providing any privileged information to the Creditor Trust, Creditor Trustee, or any party or person associated with the Creditor Trust, such privileged information shall be without waiver of any privilege of the Debtors or the Committee, including any attorney-client privilege or work-product privilege. The transfer to and vesting in the Creditor Trust of the Creditor Trust Assets on the Effective Date shall not affect a waiver of any privilege of the Debtors or the Committee, and upon such transfer, the Creditor Trust, acting by and through the Creditor Trustee, shall hold all rights with respect to such privileges, including the right to waive such privileges in its discretion.

### 18.     Indemnification.

The Creditor Trust shall indemnify the Creditor Trustee and professionals retained by the Creditor Trust (the "Indemnified Parties") from Creditor Trust Assets for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Indemnified Parties (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of the Creditor Trust's duties under the Plan, Confirmation Order, or the Creditor Trust Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence, or willful misconduct. In addition, the Creditor Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditor Trust or the implementation or administration of the Plan, if the Indemnified Parties acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Creditor Trust.

### D.     *Dissolution of Committee and Cessation of Fee and Expense Payments.*

The Committee shall be dissolved on the Effective Date and the members of the Committee (solely in their capacities as such) and the Committee's Professionals (solely in their capacity as such) shall be released from all their duties relating to the Chapter 11 Cases, except with respect to (a) any applications for Professional Fee Claims or expense reimbursements for members of the Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same; and (b) any motions or other actions seeking enforcement or implementation of (i) the Plan or (ii) the Confirmation Order or (iii) appeal thereof. The Debtors shall not be responsible for paying any fees or expenses incurred by the Committee (or any other committee that may be appointed in these Chapter 11 Cases) after the Effective Date except if incurred in furtherance of the functions of the Committee set forth in (a) or (b) of this paragraph, subject to the rights of parties in interest to object thereto.

19

### E. Section 1145 Exemption.

Section 1145 of the Bankruptcy Code shall be applicable to the issuance of the Creditor Trust Interests, if any. To the maximum extent permitted by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, if appropriate, the Creditor Trust Interests, issued pursuant to the Plan and their transfer, will be exempt from registration under the Securities Act and all rules and regulations promulgated thereunder, and any and all applicable state and local laws, rules, and regulations.

### F. Cancellation of Existing Securities.

On the Effective Date, except as otherwise provided for herein or any other document incorporated in the Plan, all Equity Interests, including, but not limited to, any other certificate, security, share, note, bond, indenture, purchase right, option, warrant, certificates of designation or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest, to the extent not already canceled, shall be deemed canceled and of no further force or effect, without the requirement for any further action on the part of the Bankruptcy Court or any other Person.

### G. Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by or in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by any Equity Interest Holders, or directors or officers of the Debtors. The authorizations and approvals contemplated by this section shall be effective notwithstanding any requirements under non-bankruptcy law.

### H. Directors and Executive Officers.

On the Effective Date, the term of each member of each Debtor's current board of directors or board of managers, as applicable, shall automatically expire, and all officers of each Debtor shall be deemed to have resigned from their respective positions without any further action or order of the Bankruptcy Court being required. From and after the Effective Date, the Creditor Trustee may exercise all power and authority that may be exercised by any officer, director, or manager of, or Holder of an Equity Interest in, the Debtors with like effect as if authorized, exercised and taken by unanimous consent of such officers, directors, managers or Holders of Equity Interests; *provided, however*, the Creditor Trustee shall have no duties other than as expressly set forth in the Confirmation Order, the Plan, and the Creditor Trust Agreement and shall have no personal liability for any pre-Effective Date actions, obligations, or omissions of the Debtors.

### I. Retained Causes of Action.

Except as otherwise provided in the Plan, an agreement or document entered into in connection with the Plan, or in a Final Order of the Bankruptcy Court, pursuant to sections 363(b) and 1123(b)(3) of the Bankruptcy Code, the Debtors reserve and, as of the Effective Date, grant, release, assign, transfer, and convey to the Creditor Trust the Retained Causes of Action. The Creditor Trust, acting by and through the Creditor Trustee, shall be the exclusive representative of the Estates pursuant to section 1123(b)(3) of the Bankruptcy Code on account of such Retained Causes of Action. On and after the Effective Date, the Creditor Trustee, on behalf of the Creditor Trust, may pursue Retained Causes of Action for the benefit of the Holders of Creditor Trust Interests.

20

No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Creditor Trustee will not pursue any and all available Retained Causes of Action. Unless any Retained Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Debtors expressly reserve all Retained Causes of Action for later adjudication by the Creditor Trust, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of Plan Confirmation or occurrence of the Effective Date.

### J.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Creditor Trust, acting by and through the Creditor Trustee, is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### K.    *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, the following will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment: (a) the creation of any mortgage, deed of trust, lien or other security interest under or pursuant to the Plan; (b) the release or assignment of liens; (c) the transfer of any assets of the Debtors' Estates to the Creditor Trust or the issuance of Creditor Trust Interests; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, in connection with or pursuant to the Plan, including any restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing.

### <u>ARTICLE VII</u>
### <u>DISTRIBUTIONS</u>

### A.    *Date of Distributions.*

Distributions under the Plan shall be made as set forth herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act shall be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### B.    *Sources of Cash for Plan Distributions.*

Except as otherwise provided in the Plan or the Confirmation Order, all Cash required for the payments to be made under the Plan shall come from the Creditor Trust Assets.

### C. Manner of Distributions.

All distributions under the Plan shall be made by the Debtors, their designee, or by the Creditor Trustee. Neither the Debtors, their designee, the Creditor Trust, nor the Creditor Trustee shall be required to post any bond, surety, or other security for the performance of its duties hereunder unless otherwise ordered by the Bankruptcy Court.

### D. Record Date for Distributions.

At the close of business on the Distribution Record Date, the transfer ledgers or registers for Claims against the Debtors shall be closed, and there shall be no further changes in the record Holders of such Claims. Neither the Debtors nor the Creditor Trust shall have any obligation to recognize any transfer of any of the foregoing occurring after the Distribution Record Date and shall be entitled instead to recognize for all purposes hereunder, including to effect distributions hereunder, only those record Holders stated on the transfer ledgers or registers maintained by the Debtors as of the close of business on the Distribution Record Date. All distributions to Holders of Allowed Claims under the Plan shall be made to the Holder of the Allowed Claim as of the Distribution Record Date.

### E. Delivery of Distributions; Unclaimed Property.

Subject to Bankruptcy Rule 9010, all distributions under the Plan shall be made at the address of each Holder of an Allowed Claim (1) at the address set forth in the underlying proof of claim, if filed, (2) at the address set forth on the Debtors' Schedules, if no proof of claim is filed, or (3) pursuant to a written change of address filed with the Bankruptcy Court and delivered to the Creditor Trust. If any distribution to the Holder of an Allowed Claim is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors or the Creditor Trust, as applicable, are notified of such Holder's then-current address, at which time all missed distributions shall be made to such Holder without interest. All such distributions, as well as any distributions by check or other means that have not been negotiated, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of sixty (60) days after the date of the distribution in question. After such 60th day, and notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, (i) all unclaimed property or interest in property in respect of the distribution in question shall revert to the Creditor Trust, and (ii) the Claim of any Holder with respect to such unclaimed property or interest in property shall be discharged and forever barred.

### F. Means of Payment.

All distributions made pursuant to the Plan shall be in Cash.

### G. Distributions After Effective Date.

The Creditor Trust, by and through the Creditor Trustee, shall make interim distributions to Holders of Allowed Claims in accordance with the priority set forth in the Plan and at such time as the Creditor Trust may deem appropriate, in accordance with the terms of the Plan and Creditor Trust Agreement.

### H. Withholding and Reporting Requirements.

Any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is entitled to receive a distribution under

22

the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any applicable tax obligations, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan to any Holder of any Allowed Claim has the right, but not the obligation, to not issue such instrument or make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

The Creditor Trust shall be authorized to require each Holder of a Claim to provide it with an executed Form W-9, Form W-8, or any other tax form, documentation, or certification as may be requested by the Creditor Trust as a condition precedent to being sent a distribution under the Plan. If a Holder of a Claim does not provide the Creditor Trust with an executed Form W-9, Form W-8 or other requested tax form within sixty (60) days after the date of the initial request, the Creditor Trust may, in its sole discretion: (1) make such distribution under the Plan net of applicable withholding; (2) reserve such distribution under the Plan, in which case (i) such Holder shall be deemed to have forfeited the right to receive any current, reserved or future distribution under the Plan, (ii) any such distribution under the Plan shall revert to the Creditor Trust for all purposes, including but not limited to, for distribution to other Allowed Claims, and (iii) the Claim of the Holder originally entitled to such distribution under the Plan shall be irrevocably waived and forever barred without further order of the Bankruptcy Court, all notwithstanding any federal, state or provincial escheat, unclaimed or abandoned property law to the contrary; or (3) establish any other mechanisms it believes are reasonable and appropriate. The Creditor Trust reserves the right to allocate and distribute all distributions under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and similar encumbrances.

### I.       No Postpetition Interest.

Unless otherwise specifically provided for in the Plan or in the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### J.       Time Bar to Payments.

Checks issued under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Requests for reissuance of any check shall be made in writing directly to the Creditor Trust by the Person to whom such check was originally issued. Any request for re-issuance of a voided check must be made on or before the end of the 60-day period referenced in this section. After such 60-day period, if no request for re-issuance of a voided check was timely made, such amounts shall constitute unclaimed property and be treated in accordance with the Plan, and all Claims in respect of such void checks shall be discharged and forever barred.

### K.       De Minimis Distributions.

Neither the Debtors nor the Creditor Trust shall have any obligation to make a distribution that is less than One Hundred Dollars ($100) in Cash in the aggregate to any holder of an Allowed Claim. If an interim distribution to the Holder of an Allowed Claim is less than $100, such distribution shall be held for future distributions. If the final distribution to any Holder of an Allowed Claim is less than $100, such amount shall become and constitute unclaimed property and be treated in accordance with the Plan.

23

## ARTICLE VIII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### A.  *Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan or pursuant to a Final Order of the Bankruptcy Court, only the Debtors prior to the Effective Date and the Creditor Trust after the Effective Date shall be entitled to object to Claims. Any objections to Claims shall be served and filed by the Objection Deadline. Any Claim to which an objection is timely filed shall be a Disputed Claim.

### B.  *No Distributions Pending Allowance.*

If a timely objection is made with respect to any Claim, no payment or distribution under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes Allowed.

### C.  *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Debtors shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest.

### D.  *Automatic Disallowance of Duplicate, Amended, and Late Filed Claims.*

Unless otherwise provided in a Final Order of the Bankruptcy Court, any Claim for which a proof of claim is (i) filed after the applicable Bar Date; (ii) duplicative of another Claim filed by the same creditor against the same or multiple Debtors, or (iii) amended and superseded by a subsequently filed Claim, shall be deemed automatically Disallowed. The Holder of a Claim that is Disallowed pursuant to this section shall not receive any distribution on account of such Claim, and neither the Debtors nor the Creditor Trust shall have any obligation to take any affirmative action for such Claim to be deemed Disallowed.

## ARTICLE IX
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  *Rejection of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors on or before the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease rejections described above, as of the Effective Date. The rejections set forth in this section shall include rejecting any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, or other organizational documents and agreements to indemnify any officers or directors of the Debtors for any prepetition actions or failures to act.

24

Notwithstanding anything to the contrary contained herein, neither the Plan nor entry of the Confirmation Order shall reject, discharge, impair or otherwise modify (a) any insurance policies maintained by the Debtors as of the Confirmation Date or (b) any obligations owed to the Debtors or any other parties, including any additional insureds, by non-Debtor parties to any insurance policies maintained by the Debtors as of the Confirmation Date. For the avoidance of doubt, the Debtors reserve all rights, claims, offsets, setoffs, defenses, counterclaims, and all other interests relating to any and all of their insurance policies.

### B. *Inclusiveness.*

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

### ARTICLE X
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND EFFECTIVENESS OF THE PLAN

### A. *Conditions to Confirmation of the Plan.*

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent has been satisfied or waived: (i) an order, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code, shall have been entered; and (ii) the Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtors and the Committee.

### B. *Conditions to the Effective Date of the Plan.*

The Effective Date of the Plan shall not occur until each of the following conditions precedent has been satisfied or waived: (i) the clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Chapter 11 Cases, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto; (ii) the Confirmation Order shall have become a Final Order; (iii) the Creditor Trust Agreement shall have been fully executed, the Creditor Trust shall have been formed, the Creditor Trustee shall have been appointed and accepted such appointment, and the Creditor Trust Assets have been transferred to the Creditor Trust, and all other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein; (iv) the Professional Fee Escrow Account shall have been established and funded in Cash in an amount equal to the Professional Fee Funding Amount; and (v) the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such alteration, or modification is prior to substantial Consummation and has been consented to by the Committee and meets the requirements of sections 1122, 1123, and 1127 of the Bankruptcy Code. Within five (5) Business Days of the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date and serve the same on all creditors and parties in interest.

### C. *Waiver of Conditions Precedent.*

Except as otherwise provided in the Plan, any of the foregoing conditions to the Effective Date may be waived by agreement of the Debtors and the Committee without notice to or order of the Bankruptcy Court. The failure to satisfy or waive any condition may be asserted by the Debtors and the Committee regardless

of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors or the Committee). The failure of the Debtors and the Committee to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

### D. Effect of Failure of Conditions.

If the foregoing conditions have not been satisfied or waived, then (i) the Confirmation Order shall be of no further force or effect; (ii) no distributions under the Plan or Creditor Trust shall be made; (iii) the Debtors and all Holders of Claims against and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (iv) all of the Debtors' obligations with respect to Claims and Equity Interests shall remain unaffected by the Plan; (v) nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (vi) the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it on the parties appearing on the master service list maintained in the Chapter 11 Cases.

### E. Reservation of Rights.

The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any of the Debtors or any other party with respect to any Claims or Equity Interests or any other matter.

## ARTICLE XI
## EFFECT OF CONSUMMATION

### A. Revesting of Assets.

Upon the Confirmation Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, the Creditor Trust Assets shall vest in the Creditor Trust, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan.

### B. Exculpation.

**Upon the Effective Date, to the fullest extent permissible under applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Claim or Equity Interest, or any other party in interest, for any Claim or Cause of Action arising from, relating to, or connected with the administration of the Chapter 11 Cases, the Disclosure Statement, the preparation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the occurrence of the Effective Date, or the administration of the Plan or property to be distributed under the Plan, except for claims related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. The Exculpated Parties shall be deemed to have participated in good faith in connection with the above and entitled to the protection of section 1125(e) of the Bankruptcy Code. Each Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to the Plan.**

*C.*     ***Releases by the Debtors.***

On the Effective Date, unless expressly preserved by the Plan, the Debtors shall fully and forever release, acquit, discharge, and dismiss any and all Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, and liabilities of any nature, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or non-contingent, existing or hereafter arising, in law, equity, or otherwise, including any Avoidance Actions or other applicable law solely to the extent arising after the Petition Date and prior to the Effective Date which they have or may have against any of the Exculpated Parties, and each of their Professionals (individually, a "Released Party" and collectively, the "Released Parties"). Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article XI.C of the Plan do not release any Released Party from any Causes of Action arising from or related to any act or omission by such Released Party that constitutes actual fraud, willful misconduct, criminal acts, or gross negligence.

*D.*     ***Injunction and Stay.***

Upon the Effective Date, and except as otherwise expressly provided in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtors, the Released Parties, or the Exculpated Parties, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Debtors' Estates with respect to any such Claim or Equity Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the Debtors, or against the property or interests in property of any of the Debtors, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Debtors, or against the property or interests in property of any of the Debtors with respect to any such Claim or Equity Interest, or (v) pursuing any Claim released or exculpated under the Plan.

Each Holder of a Claim or Equity Interest shall be bound by the injunction provisions set forth in this section. The Debtors, the Released Parties, or the Exculpated Parties shall be entitled to seek sanctions by motion for contempt or other appropriate proceeding for any violations of the Confirmation Order or the Plan, including the Exculpation, Injunction and Stay, and gate keeping provisions set forth in the Plan.

Unless otherwise provided, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect at least until the Effective Date.

*E.*     ***Gate Keeping.***

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors or the Exculpated Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor or Exculpated Party, as applicable. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Exculpated Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity

27

**seeking to commence or pursue such Claim or Cause of Action file a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including, but not limited to, Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law. Notwithstanding anything to the contrary herein, the Creditor Trustee is not subject to the requirements set forth in Article XI.E of the Plan.**

### F.     Setoffs and Recoupment.

The Debtors or the Creditor Trust, as appropriate, may, but shall not be required to, setoff against or recoup from any Claim any rights to payment that any of the Debtors may have against the Holder of such Claim. Neither the failure of the Debtors to setoff or recoup, nor the Allowance of any Claim, shall constitute a waiver or release by any of the Debtors or the Creditor Trust, as appropriate, of any right to payment, or right of setoff or recoupment.

### G.     Compromise of Controversies.

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

## ARTICLE XII
## RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Debtors' Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)     To hear and determine pending applications for the assumption, assignment, or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(ii)    To determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Cases and grant or deny any application involving the Debtors that may be pending on the Effective Date or that are retained and preserved by the Debtors herein;

(iii)   To ensure that distributions to Holders of Allowed Claims are affected as provided in the Plan;

(iv)    To hear and determine any timely objections to Administrative Claims or to proofs of Claim, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(v)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

28

(vi)     To take any action and issue such orders, after the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate the Plan or any prior order of the Bankruptcy Court, or to maintain the integrity of the Plan, or any prior order entered by the Bankruptcy Court during these Chapter 11 Cases;

(vii)    To consider any amendments to or modifications of the Plan, or to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(viii)   To hear and determine all requests for payment of Professional Fee Claims;

(ix)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Creditor Trust Agreement, the documents that are ancillary to and aid in effectuating the Plan or any agreement, instrument, or other document governing or relating to any of the foregoing;

(x)      To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(xi)     To hear any other matter not inconsistent with the Bankruptcy Code;

(xii)    To hear and determine all disputes involving the existence, scope, and nature of the exculpations and releases granted hereunder, including the matters set forth in Article XI hereof;

(xiii)   To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any entity with the Consummation or implementation of the Plan;

(xiv)    To hear and determine all requests to extend the Objection Deadline, the term of the Creditor Trust, or any other deadlines established by the Plan; and

(xv)     To enter a Final Decree(s) closing the Chapter 11 Cases.

The Bankruptcy Court's jurisdiction to adjudicate, decide, or resolve any and all matters related to the Retained Causes of Action shall be non-exclusive.

**ARTICLE XIII**
**MISCELLANEOUS**

### A.     *Filing of Additional Documents.*

The Debtors or the Creditor Trust may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### B.     *Schedules, Exhibits, and Plan Supplement Incorporated.*

All exhibits and schedules to the Plan, if any, and the documents contained in the Plan Supplement, if any, are incorporated into and are a part of the Plan as if fully set forth herein.

### C.        *Amendment or Modification of the Plan.*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time prior to or after the entry of the Confirmation Order, but prior to the Effective Date, upon the written consent of the Committee. Holders of Claims and Equity Interests that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified; *provided*, *however*, that any Holders of Claims and Equity Interests who were deemed to accept the Plan because such Claims and Equity Interests were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Equity Interests continue to be unimpaired.

### D.        *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, and any exhibit or schedule to the Disclosure Statement or the Plan, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

### E.        *Expedited Tax Determination.*

The Debtors or the Creditor Trust may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

### F.        *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

### G.        *Severability.*

If the Bankruptcy Court determines that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest, the Debtors may modify the Plan in accordance with the terms of the Plan so that such provision shall not be applicable to the Holder of any Claim or Equity Interest. Any determination of unenforceability shall not (i) limit or affect the enforceability and operative effect of any other provisions of the Plan; or (ii) require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

### H.        *No Payment of Attorneys' Fees.*

Except for Professional Fee Claims, no attorneys' fees shall be paid by the Debtors with respect to any Claim or Equity Interest unless otherwise specified in the Plan or a Final Order of the Bankruptcy Court.

### I.        *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly

30

given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**COUNSEL FOR THE DEBTORS:**

**ROPES & GRAY LLP**
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Attn: Chris L. Dickerson and Rahmon J. Brown
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
Email: chris.dickerson@ropesgray.com
rahmon.brown@ropesgray.com

-and-

**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Ste. 1600
Dallas, TX 75201
Attn: Holland N. O'Neil, Mark C. Moore, Stephen A. Jones, and Zachary C. Zahn
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
Email: honeil@foley.com
mmoore@foley.com
sajones@foley.com
zzahn@foley.com

**COUNSEL FOR THE COMMITTEE:**

**PACHULSKI STANG ZIEHL & JONES LLP**
Attn: Michael D. Warner, Esq. and Theodore S. Heckel, Esq. (admitted pro hac vice)
700 Louisiana Street, Suite 4500
Houston, Texas 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
Email: mwarner@pszjlaw.com
theckel@pszjlaw.com

- and –

**PACHULSKI STANG ZIEHL & JONES LLP**
Attn: Bradford J. Sandler, Esq. and Robert J. Feinstein, Esq.
1700 Broadway, 36th Floor
New York, New York 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: bsandler@pszjlaw.com
rfeinstein@pszjlaw.com

Dated: July 17, 2026

/s/ Kyle Richter
Kyle Richter
Chief Restructuring Officer

32